George Hofmann (10005)
Steven C. Strong (6340)
Adam H. Reiser (13339)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300

Proposed Attorneys for III Exploration II LP

---

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>III EXPLORATION II LP,<br><br>Debtor. | Bankruptcy No. 16-26471<br><br>Chapter 11 |

### DEBTOR'S APPLICATION TO EMPLOY COHNE KINGHORN, P.C. AS GENERAL BANKRUPTCY COUNSEL, AND DECLARATION OF PROPOSED ATTORNEY

III Exploration II LP (the "Debtor") respectfully moves the Court for an order authorizing the Debtor to employ Cohne Kinghorn, P.C. ("CK") as its general bankruptcy counsel pursuant to 11 U.S.C. §§ 327 and 329.  In support of this application, the Debtor represents as follows:

1.  The Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code petition on July 26, 2016.  The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.  No trustee or examiner has been appointed in the Debtor's case.

3.  No official committees have been appointed in the Debtor's case.

4. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The Debtor selected CK to serve as its counsel in this case because CK attorneys have extensive experience and knowledge of bankruptcy, business reorganization, business transactions, and debtor/creditor matters. In particular, CK has successfully represented dozens of business entities who have been debtors in Chapter 11 cases within the past few years, and CK is well-qualified to present the Debtor in this case in an efficient, effective, and timely manner. The Debtor believes that CK's retention is necessary and in the best interests of the Debtor and its creditors.

6. The services of attorneys are necessary to enable the Debtor to reorganize and restructure its business in these proceedings. CK may be required to render all or some of the following services to the Debtor:

   A. Preparing on behalf of the Debtor any necessary motions, applications, answers, orders, reports and papers as required by applicable bankruptcy or non-bankruptcy law, dictated by the demands of the case, or required by the Court, and to represent the Debtor in proceedings or hearings related thereto;

   B. Assisting the Debtor in analyzing and pursuing possible reorganization possibilities;

   C. Assisting the Debtor in analyzing and pursuing any proposed dispositions of assets of the Debtor's estate;

      D.      Reviewing, analyzing and advising the Debtor regarding claims or causes of action to be pursued on behalf of its estate;

      E.      Assisting the Debtor in providing information to creditors and equity holders;

      F.      Reviewing, analyzing and advising the Debtor regarding any fee applications or other issues involving professional compensation in the Debtor's case;

      G.      Preparing and advising the Debtor regarding any Chapter 11 plan filed by the Debtor and advise the Debtor regarding Chapter 11 plans that might be filed by other constituents in the Debtor's case;

      H.      Assisting the Debtor in negotiations with various creditor constituencies regarding treatment, resolution and payment of the creditors' claims in this case;

      I.      Reviewing and analyzing the validity of claims filed in this case and advising the Debtor as to the filing of objections to claims, if necessary; and

      J.      Performing all other necessary legal services as may be required by the needs of the Debtor in the above-captioned case.

6.      For the foregoing and all other necessary and proper purposes, the Debtor desires to retain general bankruptcy counsel to represent it, and seeks to employ CK as its counsel.

7.      To the best of the Debtor's knowledge, neither CK nor any individual shareholder or associate of CK has any undisclosed connections with the Debtor, its creditors or other parties in interest, or their respective attorneys or accountants, and

CK does not have or represent any interest adverse to the estate. Any connections to the Debtor, its creditors or other parties in interest are set forth in the annexed Declaration of George Hofmann (the "Hofmann Declaration"), which is incorporated herein.

8. To the best of the Debtor's knowledge, CK and its attorneys are disinterested persons as provided in Bankruptcy Code §§ 101(14) and 327 and do not represent or hold any interest adverse to the interest of the Debtor or its estate.

9. The Debtor desires to employ CK with reasonable compensation to be based upon CK's normal hourly rates in matters of this type, subject to all necessary approvals of this Court. CK presently holds a retainer balance of $94,560.74 which CK received from the Debtor as described in the Hofmann Declaration. The Debtor understands that CK will apply to the Court for the allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules and orders of this Court for all services performed and expenses incurred.

10. CK's customary hourly rates in matters of this type are subject to change annually in accordance with the firm's general billing procedures. The range of current hourly billing rates for attorneys and paralegals are as follows:

| | |
|---|---|
| Shareholders: | $195-$400 |
| Associates: | $150-$185 |
| Paralegals: | $75-125 |

11. CK maintains detailed records of any actual and necessary expenses for which it may seek reimbursement. The professionals rendering services will also keep

detailed records in connection with such services as required by the Bankruptcy Code. Time will be recorded in increments of 1/10 of an hour, and all attorneys and paralegals will be required to keep detailed time records in connection with services rendered herein.

12.     The Debtor believes the hourly rates and terms of engagement of CK for this case are fair and reasonable, comparable to the rates and terms CK charges for non-bankruptcy work, and comparable to the rates and terms of other firms for comparably skilled professionals, as set forth in more detail in the Verified Statement of Michael E. Rich, Chief Financial Officer of Petroglyph Energy, Inc., the General Partner of III Exploration II, LP Regarding Debtor's Employment of Cohne Kinghorn Firm which has been filed contemporaneously.

13.     CK has not entered into any agreement to share compensation as may be awarded to it for services in these cases except as permitted under Bankruptcy Code § 504(b).

14.     The Debtor believes that it is in its best interest and that of the bankruptcy estate that CK be retained as its counsel. The Debtor is satisfied from the Hofmann Declaration that CK does not represent any other entity having an adverse interest to the Debtor, its estate or unsecured creditors in this case and is otherwise disinterested.

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2016, I caused to be served a true and correct copy of the foregoing **DEBTOR'S APPLICATION TO EMPLOY COHNE KINGHORN, P.C. AS GENERAL BANKRUPTCY COUNSEL, AND DECLARATION OF PROPOSED ATTORNEY**, as follows:

**By Electronic Service to the following:**

Office of the United States Trustee
USTPRegion19.sk.ecf@usdoj.gov

/s/ Jessica Thorsen

# DECLARATION OF GEORGE HOFMANN

I, George Hofmann, declare:

1.  I am an attorney duly admitted to practice before all state courts in Utah, New York, and Massachusetts, as well as this Court.

2.  I am a shareholder of Cohne Kinghorn, P.C. ("CK"), the law firm that III Exploration II LP (the "Debtor") is seeking to employ generally for its bankruptcy case pursuant to the application (the "Application") to which this Declaration is attached. All shareholders and associates of CK are duly admitted to practice in all state and federal courts in Utah, including this Court.

3.  CK has extensive experience in bankruptcy, insolvency corporate reorganization, business transactions, and debtor/creditor law. The firm is well qualified to represent the Debtor generally herein, and is willing to accept employment on the basis set forth in the Application.

4.  CK began providing pre-bankruptcy services to the Debtor in December 2015 pursuant to the terms of an engagement letter agreement between the Debtor and CK, a copy of which is attached hereto as Exhibit A (the "Agreement"). The Agreement sets for the the material financial terms of the engagement, including my standard billing rate at that time ($310) and the range of standard billing rates for CK professionals at that time. As disclosed in the Agreement, CK customarily adjusts upward the hourly rates charged to its clients effective January 1 of each calendar year, and the Agreement specifically provides that my hourly rate would increase from $310 to $320 per year effective January 1, 2016. I personally performed most of the pre-bankruptcy

services provided to the Debtor.  Other than standard calendar-year adjustments in billing rates effective January 1, 2016 for certain of CK's professionals, there have been no changes in the material terms of the engagement since its inception.

    5.    On or about December 4, 2015, CK received a wire transfer from the Debtor in the amount of $75,000 to be held as a legal retainer against which CK would bill for its services.  CK issued its first invoice to the Debtor in early January 2016 for pre-bankruptcy services provided during December 2015 in the amount of $2,695.00, and received payment in that amount on January 19, 2016 by applying that amount from the retainer.  In April 2016 CK issued invoices to the Debtor for services provided from January 1 through April 27, 2016, and received payments in the amount of $96.00 on April 7, 2016 and $10,564.00 on April 27, 2016 by applying those amounts from the retainer.  In early June 2016 CK issued its invoice to the Debtor for services rendered from April 27, 2016 through May 31, 2016, in the amount of $16,459,20, and received payment in that amount on June 10, 2016 by applying that amount from the retainer.  CK requested and received an additional retainer payment of $100,000 on June 17, 2016.  On July 14, 2016, CK issued its invoice for services provided from June 1, 2016 through June 31, 2016, and received payment in the amount of $30,941.86 by applying that amount from the retainer.  On July 21, 2016, CK requested and received an additional retainer payment of $25,000.  On July 26, 2016, CK issued its final invoice for pre-bankruptcy services rendered from July 1, 2016 through July 26, 2016 in the amount of $42,965.70 (which included advancement of the case filing fee of $1,717.00), and received payment in that amount on July 26, 2016 by applying that amount from the retainer.  Thus, as of July 26, 2016 (the bankruptcy petition date), CK has received

payment in full from the retainer for all pre-petition services, and is holding $94,560.74 (the unapplied balance of the retainer) in its attorney trust account.

6.  As of the date of the filing of the bankruptcy petition in this case, CK is not a creditor of the Debtor.

7.  On or about June 10, 2016, CK provided to the Debtor a prospective budget and staffing plan for the period June 17, 2016 through November 30, 2016, and the Debtor has approved this budget and staffing plan.

8.  CK and its shareholders and associates do not hold any interest adverse to the Debtor's bankruptcy estate and CK is a disinterested person as defined in 11 U.S.C. § 101.

9.  Neither CK nor any attorney or employee of CK has a pre-petition or other claim against the Debtor's bankruptcy estate.

10.  Except as disclosed below, CK does not have any connections with any creditors or parties in interest in this case. CK has not in the past, and does not plan in the future, to represent any principal of the Debtor.

11.  Except as disclosed above, CK has not received a retainer or other payment from the Debtor, the estate, a principal of the debtor or a third party.

12.  Neither I nor any attorney employed by CK has agreed to share, nor will share, any portion of the compensation received from the Debtor with any other person other than the attorneys and regular employees of the firm.

13.  To the best of my knowledge, CK has no material connections with the U.S. Trustee for this region, employees of the Office of the U.S. Trustee, nor the U.S. Bankruptcy Judges of this district, although CK attorneys, including myself and others,

have participated in continuing education panels and discussions, and attended social functions with the U.S. Trustee for this region, employees of the Office of the U.S. Trustee, U.S. Bankruptcy Judges of this district and employees of the U.S. Bankruptcy Court for this district. In addition, the Honorable R. Kimball Mosier was formerly a member of CK.

14. In seeking compensation in this case, CK will comply with all applicable provisions of the Bankruptcy Code, the Federal Bankruptcy Rules, the Local Bankruptcy Rules, any orders of this Court establishing procedures for compensation of professionals, and guidelines of the Office of the United States Trustee.

15. CK and the Debtor did not agree to any variations from or alternatives to its standard and customary billing arrangements for this engagement.

16. The professionals included in this engagement do not vary their rate based on the geographic location of the bankruptcy case.

17. Certain CK attorneys have connections with parties in interest that should be disclosed to the Court. However, I do not believe that any of these connections constitute a conflict of interest or preclude the firm or any of the firm's attorneys from qualifying as disinterested persons. These connections are as follows:

 A. CK attorneys formerly represented Weatherford International, Inc. ("Weatherford") in mechanics' lien foreclosure matters adverse to the Debtor. CK attorneys last provided legal services to Weatherford in 2009. Weatherford does not appear to be a creditor in the Debtor's bankruptcy case. CK has not and will not undertake to represent Weatherford in any matter related to the Debtor or the Debtor's bankruptcy estate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of July, 2016.

_____
George Hofmann