# EXHIBIT 1

**PURCHASE AND SALE AGREEMENT**


**Dated as of November __, 2016**


**between**


**III EXPLORATION II LP**

**as Seller, and**


**CRESCENT POINT ENERGY U.S. CORP.**

**as Buyer**

**Error! Unknown document property name.**

# Table of Contents

Page

1.  Purchased Property ......................................................................................................... 2
2.  Assumption and Rejection of Contracts ........................................................................ 2
3.  Exclusions from Property ............................................................................................... 3
4.  Purchase Price and Performance Deposit ...................................................................... 3
5.  Title Defects .................................................................................................................... 3
6.  Representations of Seller ................................................................................................ 5
7.  Representations of Buyer ................................................................................................ 9
8.  Due Diligence Review .................................................................................................. 11
9.  Operations Pending Closing ........................................................................................ 11
10. Conditions to Obligations of Both Parties ................................................................. 12
11. Conditions of Closing by Seller .................................................................................. 12
12. Conditions of Closing by Buyer .................................................................................. 13
13. Purchase Price Adjustments ........................................................................................ 13
14. Closing .......................................................................................................................... 16
15. Transactions at Closing ................................................................................................ 17
16. Post-Closing Adjustments; Delivery of Records ....................................................... 17
17. Taxes and Suspended Funds ........................................................................................ 19
18. Overhead Expenses ...................................................................................................... 20
19. Assumption of Obligations and Indemnities of Buyer .............................................. 21
20. DISCLAIMERS AND WAIVERS ............................................................................... 22
21. Confidentiality .............................................................................................................. 24
22. Further Assurances ....................................................................................................... 24
23. Failure to Close ............................................................................................................ 24
24. Use of Seller Names ..................................................................................................... 24
25. Reserved ........................................................................................................................ 24
26. Recording Documents Notices .................................................................................... 25
27. Entire Agreement .......................................................................................................... 26
28. Counterparts .................................................................................................................. 26
29. Time of Essence ............................................................................................................ 26
30. Announcements; Disclosures ....................................................................................... 26

*Purchase and Sale Agreement*

31.    Waiver ........................................................................................................................... 26

32.    Governing Law .............................................................................................................. 26

33.    Venue and Jurisdiction ................................................................................................. 27

34.    Legal Fees ...................................................................................................................... 27

35.    Interpretation of Agreement ........................................................................................ 28

36.    Agreement for the Parties' Benefit Only ..................................................................... 28

37.    Severability ................................................................................................................... 28

38.    Assignment and Binding Effect ................................................................................... 28

39.    Bonds ............................................................................................................................. 28

40.    Exclusive Remedy ......................................................................................................... 29

41.    Survival of Representations and Warranties ............................................................... 30

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated November __ 2016 (the "Execution Date"), is between III Exploration II LP, an Idaho limited partnership, debtor and debtor in possession ("Seller"), with offices at 960 Broadway Ave., Suite 500, Boise, Idaho 83706, and Crescent Point Energy U.S. Corp., a Delaware corporation ("Buyer"), with offices at 555 17th Street, Suite 1800, Denver, Colorado 80202.

### Recitals:

A.      Seller is a debtor in possession under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") as a result of filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016 in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), where Seller's bankruptcy case is administered under Case No. 16-26471 (the "Bankruptcy Case").

B.      Buyer desires to purchase Seller's interests in the Property (as defined herein) Free and Clear (as defined herein) (except for Permitted Encumbrances (as defined herein) and Buyer's Assumed Obligations (as defined herein)) and Seller desires to sell its interests in the Property to Buyer, all subject to and according to the terms and conditions set forth below (such purchase and sale, the "Sale Transaction").

C.      Buyer and Seller (each, a "Party" and, collectively, the "Parties") have agreed to seek an Order of the Bankruptcy Court authorizing and approving the Sale Transaction Free and Clear (except for Permitted Encumbrances and Buyer's Assumed Obligations), including the assumption and assignment of certain executory contracts and unexpired leases, pursuant to sections 105, 363 and 365 of the Bankruptcy Code.

D.      The Sale Transaction is conditioned on Bankruptcy Court approval as set forth herein.

E.      The Parties acknowledge and agree that the terms of the Sale Transaction are the result of arm's length negotiations.

F.      Seller has solicited bids for the Property to obtain the highest and best offer.

G.      Seller has determined that Buyer's offer to purchase the Property is the highest and best offer received for the Property and constitutes a fair and adequate purchase price for the Property.

H.      Capitalized terms used in this Agreement, and in the schedules and exhibits attached hereto, shall have the meanings given to such terms in Exhibit A.

NOW, THEREFORE, the Parties agree to the sale and assignment of Seller's interests in the Property to Buyer on the terms and conditions set forth in this Agreement, effective for the purposes set forth in this Agreement as of December 1, 2016, 7:00 a.m., Mountain Time (the "Effective Date").

**Agreements:**

NOW, THEREFORE, in consideration of the above recitals and of the covenants and agreements herein contained, Seller and Buyer agree as follows:

**1.** <u>**Purchased Property**</u>.  Subject to and upon the terms and conditions herein set forth, Seller shall sell, transfer, assign, convey, and deliver to Buyer, and Buyer shall purchase, receive, pay for, and accept all of Seller's right and title to, and interest in, and all privileges and obligations appurtenant to, the following described property rights, interests, privileges and obligations (such property rights, interest, privileges and obligations, SAVE and EXCEPT the Excluded Assets described in <u>Section 3</u>, are hereafter referred to collectively as the "<u>Property</u>") Free and Clear (except for Permitted Encumbrances and Buyer's Assumed Obligations):

    (a)    All of the Oil and Gas Interests; and

    (b)    All Contracts, including Contracts with Cure Costs, set forth on <u>Exhibit I</u> (the Contracts set forth on such Schedule as may be amended pursuant to <u>Section 2</u>, collectively, the "<u>Assumed Contracts</u>"), including all rights, obligations and interests in all such Assumed Contracts and applicable to the other rights, titles and interests included in this definition of the term "Property."

**2.** <u>**Assumption and Rejection of Contracts**</u>.

    (a)    Subject to approval of the Bankruptcy Court by the entry of a Final Order, the Assumed Contracts will be assumed by Seller and assigned to Buyer on the Closing Date in accordance with section 365 of the Bankruptcy Code.  The final determination of which Contracts shall be Assumed Contracts shall be within the sole discretion of Buyer.  The Purchase Price shall be adjusted downward by the amount of the Cure Costs to be paid by Buyer with respect to the Assumed Contracts, in accordance with the provisions herein.

    (b)    In absence of a dispute regarding the actions necessary with respect to an Assumed Contract, Buyer shall pay the Cure Costs (which payments shall be a downward adjustment to the Purchase Price) with respect to the Assumed Contracts on the Closing Date (or as soon thereafter as reasonably practicable), or upon such other terms as Seller (with the consent of Buyer) and the non-debtor party to an Assumed Contract may otherwise agree.  In the event of a dispute regarding (i) the Cure Costs, or (ii) the ability of the Buyer or Seller to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under any Contract to be assumed, the Buyer's assumption thereof shall be conditioned upon resolution of such dispute by the Bankruptcy Court.  Seller (with the consent of Buyer) or Buyer, as applicable, reserves the right either to reject or nullify the assumption of any Contract no later than the day that is one (1) Business Day after entry of a Final Order determining Cure Costs or any request for adequate assurance of future performance.

    (c)    Notwithstanding anything in this Agreement to the contrary, a Contract that is validly rejected or otherwise not assumed and assigned to Buyer pursuant to this <u>Section 2</u> shall constitute an Excluded Asset.

*Purchase and Sale Agreement*

3.      **Exclusions from Property**. The Property to be conveyed and assigned under this Agreement does not include the following, which are reserved by Seller:

(a)      The Excluded Assets;

(b)      All Contracts to which Seller is a party that are not Assumed Contracts; and

(c)      Any and all Claims and Actions in which Seller has an interest, including any Actions arising under Chapter 5 of the Bankruptcy Code.

4.      **Purchase Price and Performance Deposit**.

(a)      Base Purchase Price.  The aggregate consideration for the Property (the "Base Purchase Price" will be:

(i)      Three Million and Five Hundred Thousand Dollars ($3,500,000.00); and

(ii)      the assumption of the Buyer's Assumed Obligations (defined below).

(b)      Purchase Price.  The Base Purchase Price shall be adjusted as provided herein and as adjusted is referred to herein as the "Purchase Price."

(c)      Deposit.  The Parties acknowledge that on October 28, 2016, Buyer delivered to the Escrow Agent Four Million Five Hundred Thousand Dollars ($4,500,000.00) (the "Escrow Funds").  Of the Escrow Funds, Three Hundred and Fifty Thousand Dollars ($350,000.00) shall be considered a performance deposit to assure Buyer's performance of its obligations hereunder (such portion of the Escrow Funds is referred to herein as the "Performance Deposit"). No interest shall be paid (or deemed earned) on the Escrow Funds. At Closing, the Escrow Funds (including the Performance Deposit) shall be a Buyer's credit against the payment of the Purchase Price and the Escrow Agent shall deliver (i) the Performance Deposit and the portion of the Escrow Funds equal to the Purchase Price, less the Performance Deposit, to Seller pursuant to Section 15(g) and (ii) an amount equal to the Escrow Funds less the Purchase Price to Buyer pursuant to Section 15(g). If this Agreement is terminated without a Closing, then the distribution of the Performance Deposit shall be governed by the provisions of Section 23.

(d)      Allocation.  Seller and Buyer agree that the Base Purchase Price shall be allocated among the Leases and Wells as set forth on Exhibit E for the purposes of Section 5 (Title Defects), Section 13(i) (Preferential Purchase Rights), and Section 13(j) (Consents).  Seller and Buyer agree that they shall allocate the Purchase Price, as adjusted hereunder, among the Property for Tax purposes in a manner consistent with Section 1060 of the Internal Revenue Code of 1986, as amended, based upon the fair market value of the Property.

5.      **Title Defects**. An Oil and Gas Interest shall be deemed to have a "Title Defect" if Seller has less than Defensible Title to such Oil and Gas Interest.

*Purchase and Sale Agreement*

(a)     Defects Notice.  Buyer may, by delivery of written notice to Seller of the existence of an alleged Title Defect, request reduction of the portion of the Base Purchase Price allocated to the affected Oil and Gas Interest.  The Title Defect notice shall clearly indicate the nature of the Title Defect, the Oil and Gas Interest to which it relates, an explanation of the Title Defect, including the supporting legal theories, the allocated value of the Oil and Gas Interest as to which all or some portion of which is affected by the Title Defect, and the amount by which Buyer believes the value of the affected Oil and Gas Interest has been reduced because of the Title Defect, with the computation and information upon which Buyer's belief is based. If the value properly allocated to a Title Defect cannot be determined directly from Exhibit E because the Title Defect is included within, but does not totally comprise, the Oil and Gas Interest to which the allocated value relates, Buyer and Seller shall attempt, where feasible, to proportionately reduce the allocated value in Exhibit E.

(b)     Limitations.  The value of any Title Defect will not exceed the allocated value of the affected Oil and Gas Interest as shown in Exhibit E.

(c)     Notice and Cure of Title Defects.  The Title Defect notice by Buyer shall be delivered to Seller on or before the earlier of the date that is thirty (30) days after the Execution Date or the date that is five (5) Business Days before the Closing Date.  If such notice is not timely delivered, all Title Defects shall be deemed waived for all purposes and Buyer shall thereafter have no right to claim Title Defects.  If the Title Defect notice is timely delivered, all Title Defects not claimed in such notice shall be deemed waived for all purposes.  Seller shall have the right, but not the obligation, to attempt to cure any alleged Title Defect prior to Closing. If Seller is unable or unwilling to cure an alleged Title Defect, Buyer and Seller shall confer and use commercially reasonable efforts to agree on the validity of the claim of Title Defect and the amount of any required adjustment to the portion of the Base Purchase Price allocated to the affected Oil and Gas Interest.

(d)     No Agreement.  If the Parties cannot mutually agree on the existence of a Title Defect or on the adjustment amount for an alleged Title Defect, Buyer shall proceed to Closing and accept the Oil and Gas Interest with the alleged Title Defect, the Base Purchase Price shall be adjusted downward by the adjustment amount of such Title Defect as asserted by Buyer in good faith, and the matter shall be handled in accordance with Section 5(f) below.

(e)     Individual Losses and Deductible.  There shall be no adjustments for any individual Title Defect with a value of less than twenty thousand dollars ($20,000.00) ("Individual Title Defect Deductible") and there shall be no adjustment for all Title Defects unless the aggregate total of all adjustments for all Title Defects exceeds four percent (4%) of the Base Purchase Price ("Aggregate Title Defect Deductible"), and then only to the extent the total of such adjustments exceeds the Aggregate Title Defect Deductible.

(f)     Title Dispute Resolution.  Seller and Buyer shall attempt to agree on all Title Defects and the appropriate adjustment amounts for such Title Defects ("Title Dispute") prior to the Closing Date.  If Seller and Buyer are unable to agree by the Closing Date, the Title Dispute shall be exclusively and finally resolved pursuant to this Section 5(f). The Parties shall select a single arbitrator, who shall be a licensed attorney with at least ten (10) years' experience in oil and gas title matters in the Uintah Basin selected by mutual agreement of Seller and Buyer

within ten (10) days after the Closing Date (the "Title Arbitrator"), to finally decide a Title Dispute.  If the Parties are unable to mutually agree upon the Title Arbitrator, the Salt Lake City, Utah office of the American Arbitration Association ("AAA") shall appoint the Title Arbitrator under such conditions as the AAA in its discretion deems necessary or advisable.  The place of arbitration shall be Salt Lake City, Utah, and the arbitration shall be conducted in accordance with the AAA rules, to the extent such rules do not conflict with the terms of this Section 5(f).  The Title Arbitrator's determination shall be made within thirty (30) days after submission of a Title Dispute and shall be final and binding upon both Parties, without right of appeal.  In making his or her determination with respect to any Title Dispute, the Title Arbitrator shall be bound by the rules set forth in this Section 5(f) and, subject to the foregoing, may consider such other matters as in the opinion of the Title Arbitrator are necessary to make a proper determination.  The Title Arbitrator, however, may not award Buyer a greater Title Defect adjustment amount than the allocated value of the affected Oil and Gas Interest.  The Title Arbitrator may not award damages, interest, or penalties to either Party with respect to any Title Dispute.  Seller and Buyer shall each bear its own legal fees and other costs of presenting its case to the Title Arbitrator.  Each of Seller and Buyer shall bear one-half of the costs and expenses of the Title Arbitrator.  If the Title Arbitrator determines that no Title Defect exists on an Oil and Gas Interest and/or that the Title Defect adjustment amount for such Title Defect does not exceed the Individual Title Defect Deductible or the Aggregate Title Defect Deductible when considered with all other Title Defects, then after the Title Arbitrator delivers written notice to Seller and Buyer of his or her award with respect to such Title Defect, the matter shall be deemed resolved and no adjustment shall be made to the Base Purchase Price on account of such asserted defect.  If the Title Arbitrator determines that a Title Defect exists on an Oil and Gas Interest and that the Title Defect adjustment amount for such Title Defect exceeds the Individual Title Defect Deductible and the Aggregate Title Defect Deductible when considered with all other Title Defects, then the Title Arbitrator will deliver written notice to Seller and Buyer of his or her award with respect to such Title Defect, and such award (after application of the Individual Title Defect Deductible and the Aggregate Title Defect Deductible) shall appear as an adjustment on the Final Closing Statement.

     **6.**     <u>**Representations of Seller**</u>.  As of the date hereof and as of the Closing Date, Seller represents and warrants to Buyer as follows:

     (a)     <u>Qualification</u>.  Seller is a limited partnership validly existing and in good standing under the Laws of the State of Idaho and is duly qualified to own its properties and the Property and to carry on its business as now being conducted.

     (b)     <u>Authority</u>.  Seller has the requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby, subject to entry of the Sale Order.

     (c)     <u>Validity of Obligation</u>.  This Agreement and all other transaction documents Seller is to execute and deliver on or before the Closing Date (i) have been or shall have been duly executed by its authorized representatives; (ii) constitute its valid and legally binding obligations; and (iii) are enforceable against it in accordance with their respective terms, in each case subject to entry of the Sale Order.

(d)      No Violation of Contractual Restrictions.  Except filings with, notices to, consents or approvals of Governmental Authorities customarily obtained subsequent to a sale or transfer and subject to the receipt of all consents or approvals applicable to the transactions contemplated hereunder, including those in Schedule 6(d) (the "Scheduled Consents"), this Agreement, and the execution and delivery hereof by Seller, subject to the entry of the Sale Order, do not and the consummation of the transactions contemplated hereby will not (i) conflict with or result in a breach of the charter or bylaws of Seller or any other governing documents of Seller, (ii) violate, conflict with, or constitute a default under, or result in the creation or imposition of any security interest, lien, or encumbrance upon any property or assets of Seller under any mortgage, deed of trust, indenture, or agreement to which it is a party or by which the Property is bound, which violation, conflict, or default might adversely affect the ability of Seller to perform its obligations under this Agreement, or (iii) violate any statute or law or any judgment, decree, Order, writ, injunction, regulation, or rule of any court or Governmental Authority, which violation might adversely affect the ability of Seller to perform its obligations under this Agreement.

(e)      No Restraining Litigation. There is no Action by any Person pending or, to Seller's Knowledge, threatened against it before any Governmental Authority that seeks damages in connection with, or seeks to restrain, enjoin, impair or prohibit the consummation of all or part of the transaction contemplated in this Agreement.

(f)      Contracts.  Solely as of the Execution Date, the list of Contracts set forth in Exhibit J, as such Exhibit exists on the Execution Date, includes all of the following Contracts to which Seller is a party and that pertain to the Oil and Gas Interests: (a) all farmout, farmin, participation, development and other similar agreements with remaining drilling, carry, participation or assignment rights or obligations on the part of Seller or any other party, (b) all Contracts that would obligate Buyer to drill additional wells or conduct other material development operations after the Closing, (c) all Contracts that provide for an area of mutual interest, (d) all Contracts that contain a non-compete agreement that would restrict, limit or prohibit the manner in which, or the locations in which, Buyer may conduct its business, (e) all Contracts involving the gathering, compression, treating, storage, transportation, processing, marketing or purchase of Hydrocarbons that would not be cancelable by Buyer after Closing upon notice of sixty (60) days or less without liability for further payment other than nominal penalty (including those providing for volumetric or monetary commitments or indemnification therefor or for dedication of future Hydrocarbon production), (f) all Contracts providing for any call upon, option to purchase or similar rights with respect to the Property or to the Hydrocarbon production therefrom or the processing thereof, (g) all Contracts that provide for the supply, transportation, delivery, injection or disposal of water associated with or produced from the Leases, the Wells or the Units, (h) all Contracts that can reasonably be expected to result in aggregate payments by or revenues to Seller or Buyer with respect to the Property of more than One Hundred Thousand Dollars ($100,000.00), net to the interest of Seller during the current or any future fiscal year, (i) all Contracts that constitutes a joint or unit operating agreement, (j) all Contracts between Seller and any Affiliate of Seller; and (k) all Contracts where the primary and principal purpose thereof is to provide a guarantee or indemnity.  Seller has not received written notice of any termination or unresolved breach under any of the Contracts set forth in Exhibit J that has not been rescinded or resolved.  To Seller's Knowledge, prior to the Execution Date

*Purchase and Sale Agreement*

Seller has made available to Buyer complete and accurate copies of all of the Contracts set forth in Exhibit J, and any and all amendments, schedules and/or exhibits thereto.

(g)    No Brokers' Fees.    Seller has incurred no liability, contingent, or otherwise, for brokers' or finders' fees relating to the transactions contemplated by this Agreement for which Buyer would be liable.

(h)    Tax Matters.    Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended and in any regulations promulgated thereunder (the "Code").  All material Tax returns required to be filed by Seller on or before the Closing Date with respect to Taxes payable in respect of the Property have been, or will be, timely filed with the appropriate Governmental Authority and all Taxes shown on such returns have been or will be paid.  There are no material Tax liens (other than liens that are not yet due or are not yet delinquent) on the Property.  There is no claim pending or threatened in writing by any taxing authority in connection with any Tax related to the Property.  None of the Property is subject to a tax partnership agreement or arrangement for federal income tax purposes.

(i)    Actions.    Except as set forth on Schedule 6(i), there are no claims, actions, suits, or proceedings (including condemnation or similar proceedings) filed, or to Seller's Knowledge, threatened, against the Property or any portion thereof.

(j)    Production Matters.    Except as set forth on Schedule 6(j), none of the Oil and Gas Interests are encumbered by take-or-pay arrangements with purchasers of oil or gas whereby Seller is obligated (i) to deliver Hydrocarbons without receiving payment therefor or (ii) to repay monies received for Hydrocarbons paid for but not taken.

(k)    No Violation of Laws.    To Seller's Knowledge, Seller has not violated any Laws (excluding Environmental Laws, which have been handled exclusively in Section 6(m)) applicable to any of the Property or the operation thereof which violation (i) would have a material effect on the value or operation of the affected Property or (ii) has not been remedied.  Seller has not received written notice from any Governmental Authority or other third party alleging non-compliance with any Laws (excluding Environment Laws, which have been handled exclusively in Section 6(m)) that has not been resolved or remains outstanding.

(l)    Definition of Seller's Knowledge.    In those instances where Seller's representations are made on the basis of "Seller's Knowledge," such representations are made by Seller on the basis of the actual knowledge, without any duty of inquiry, of Seller's personnel listed on Schedule 6(l).

(m)    Certain Environmental Matters.    Seller has not received any written communication from: (i) any Governmental Authority alleging the violation of or liability under any Environmental Law with respect to the Property or requesting, with respect to the Property, information with respect to an investigation pursuant to any Environmental Law; or (ii) any landowner or surface owner of any tract upon which any of the Property is located alleging material violation of or material liability under any Environmental Law, in each case, which has not been fully remediated in accordance with applicable Environmental Laws (to the extent

remediation was required, if at all).   To Seller's Knowledge, the Property is in material compliance with all applicable Environmental Laws.

(n)   <u>Permits</u>.   Seller has all material permits, licenses, authorizations certificates, approvals and related instruments or rights from any Governmental Authority (collectively, "<u>Permits</u>") pertaining to the ownership of the Property.   Seller has not received written notice of default under any Permit that remains outstanding, and, to Seller's Knowledge, no material violation exists in respect of such Permits.

(o)   <u>Wells; Plug and Abandon Notice</u>.   Except as set forth on Schedule 6(o), there are no Wells (a) for which Seller has received an Order from any Governmental Authority or other thirty party requiring that such Well be plugged and abandoned, or (b) to Seller's Knowledge, that are neither (i) in use for purposes of production or injection nor (ii) temporarily abandoned in accordance with applicable Law and Lease and/or Contract requirements, in either case, that have not been plugged and abandoned in accordance with applicable Law and Lease and/or Contract requirements.

(p)   <u>Imbalances</u>.   To Seller's Knowledge, there are no Imbalances pertaining to the Property.

(q)   <u>AFEs</u>.   Except as set forth on Schedule 6(q), there are no outstanding AFEs, cash calls, elections or proposals with respect to the Property which Seller reasonably anticipates will require expenditures in excess of Fifty Thousand Dollars ($50,000.00), net to Seller's interest, that have been proposed by any Person having authority to do so (including internal AFEs of Seller not delivered to third parties).

(r)   <u>Hedging</u>.   There are no futures, options, swaps or other derivatives with respect to the sale of Hydrocarbons from the Property or interest rate swaps or other derivatives that are or will be binding on Buyer or the Property at any time after the Closing Date.

(s)   <u>Consents and Preferential Rights</u>.   Except as set forth in <u>Schedule 6(d)</u>, there are no consents required to assign the Property, or any portion thereof (other than consents and approvals of transfer of the Leases, Units, Permits, Easements and Surface Rights as are customarily obtained from Governmental Authorities subsequent to a sale or transfer).   Except as set forth in <u>Schedule 6(s)</u>, there are no Preferential Purchase Rights exercisable in connection with, the assignment of the Property by Seller to Buyer hereunder.

(t)   <u>Non-Consent Operations</u>.   Seller has not declined to participate in any operation proposed with respect to the Property that could result in Seller's interest in any portion of the Property becoming subject to a penalty or forfeiture as a result of such election not to participate in such operation or activity, except as set forth on <u>Schedule 6(t)</u> or reflected in the before payout and after payout Net Revenue Interest and Working Interest in the respective Well as set forth <u>Exhibit B-2</u>.

(u)   <u>Payment of Expenses/Pay Status</u>.   Except as set forth in <u>Schedule 6(u)</u>, Seller has (i) paid its Working Interest share (as set forth on <u>Exhibit B-2</u>) of all Property Costs invoiced to Seller on or before the Effective Date in the ordinary course of business, including but not limited to, all payments authorized to be paid pursuant to the Critical Mineral Interest

*Purchase and Sale Agreement*

Payments Order and (ii) has not received written notice that any revenue attributable to Seller's interest in any portion of the Property is being held in suspense.

(v)    <u>Suspended Funds</u>.  <u>Schedule 6(v)</u> sets forth a list, true and correct as of the date set forth therein, of all Suspended Funds and the name or names of the parties to whom such funds are owed.

(w)    <u>Payments</u>.  Excluding the Suspended Funds, to Seller's Knowledge, all delay rentals, royalties, shut-in royalties, overriding royalties, net profits interests, production payments, compensatory royalties and other payments due with respect to the Property, in each case, to the extent attributable to the period of time prior to the Closing Date, have been properly and fully paid, including but not limited to, all such payments authorized to be paid pursuant to the Critical Mineral Interest Payments Orders.

**7.**    **<u>Representations of Buyer</u>**.  As of the date hereof, Buyer represents and warrants to Seller as follows:

(a)    <u>Qualifications</u>.    Buyer is a corporation validly existing and in good standing under the laws of the State of Delaware and is duly qualified to own its properties and assets and to carry on its business as now being conducted.

(b)    <u>Authority</u>.  Buyer has the requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby, subject to entry of the Sale Order.

(c)    <u>Validity of Obligation</u>.    This Agreement and all other transaction documents Buyer is to execute and deliver on or before the Closing Date (i) have been or shall have been duly executed by its authorized representatives; (ii) constitute its valid and legally binding obligations; and (iii) are enforceable against it in accordance with their respective terms, in each case subject to entry of the Sale Order.

(d)    <u>No Violation</u>.    Buyer's execution, delivery and performance of this Agreement do not conflict with or violate any Contract or instrument to which it is a party or by which it is bound.

(e)    <u>No Brokers' Fees</u>.    Buyer has incurred no liability, contingent or otherwise, for brokers' or finders' fees relating to the transactions contemplated by this Agreement for which Seller would be liable.

(f)    <u>No Restraining Litigation</u>. There is no Action by any Person pending, or to Buyer's Knowledge threatened, against Buyer before any Governmental Authority that seeks substantial damages in connection with, or seeks to restrain, enjoin, materially impair or prohibit the consummation of all or part of the transaction contemplated in this Agreement.

(g)    <u>No Projections</u>. Buyer acknowledges that neither Seller nor any of its Affiliates has made any warranty, express or implied, as to the performance, utility or prospects, financial or otherwise, or the profitability of the Property for Buyer, or with respect to any forecasts, projections or business plans prepared by or on behalf of Seller and delivered to Buyer

in connection with Buyer's review of the Property and the negotiation and the execution of this Agreement.

(h)     <u>Permits</u>.  Buyer is now or at Closing will be, and thereafter will continue to be, qualified to own and, as applicable, operate any federal, state or tribal oil, gas and mineral leases, and any oil, gas and mineral leases covering lands in the State of Utah, including meeting all bonding requirements. Consummating the transaction contemplated in this Agreement will not cause Buyer to be disqualified or to exceed any acreage limitation imposed by applicable Law.

(i)     <u>Sufficient Funds</u>.  Buyer has, and will have on the Closing Date, sufficient cash to enable it to make payment in immediately available funds of the Purchase Price and any other amounts to be paid by it hereunder.

(j)     <u>Knowledgeable Investor</u>.  Buyer is an experienced and knowledgeable investor in the oil and gas business and is sophisticated in the evaluation, purchase, ownership, and operation of oil and gas properties and related facilities.  Buyer is not acquiring the Property in connection with a distribution or resale thereof in violation of federal or state securities Laws and the rules and regulations thereunder.

(k)     <u>No Reliance</u>.  Prior to Closing, Buyer has been afforded an opportunity to (i) examine the Property and such documents, instruments, and other materials as it has requested to be provided to it by Seller, (ii) discuss with representatives of Seller such documents, instruments, and other materials and the nature, condition, and operation of the Property, and (iii) investigate the condition, including the surface and subsurface condition, of the Property.  In entering into this Agreement, Buyer (x) has relied solely on the express representations and covenants of Seller in this Agreement, the Sale Order, the instruments to be executed by Seller and delivered to Buyer at Closing, Buyer's independent investigation of, and judgment with respect to, the Property, and the advice of its own legal, Tax, economic, environmental, engineering, geological, and geophysical advisors, and not on any comments or statements of Seller or Seller's Affiliates, or any representatives or agents of, or consultants or advisors engaged by, Seller or Seller's Affiliates and (y) has satisfied itself, or shall satisfy itself through its own due diligence, of the environmental and physical condition and contractual arrangements of the Property.

(l)     <u>Governmental Approval</u>.  To Buyer's Knowledge, no fact or circumstance exists which would preclude or inhibit approval of Seller's assignment(s) of that portion of the Property which constitutes state or federal oil, gas and mineral leases to Buyer, by any Governmental Authority having jurisdiction, including meeting existing or increased state and federal bonding or supplemental security requirements of such authority.

(m)     <u>Definition of Buyer's Knowledge</u>.  In those instances where Buyer's representations are made on the basis of "Buyer's Knowledge," such representations are made by Buyer on the basis of the actual knowledge, without any duty of inquiry, of Buyer's personnel listed on <u>Schedule 7(m)</u>.

*Purchase and Sale Agreement*

8.      **Due Diligence Review**.

(a)      <u>Records</u>.  Prior to the Execution Date, Seller has made available or, and will continue to make available, to Buyer, and Buyer's authorized representatives, through the Closing Date, for examination as Buyer may reasonably request, electronic copies of all Lease files, land files, right-of-way files, well files, product purchase and sale, gathering, and processing Contracts, division order files, abstracts, drilling and division order title opinions, engineering and geological data, reports, maps, logs, and well records contained in Seller's files relating to the Property, other than (i) any geophysical data, (ii) any information subject to third party confidentiality agreements for which a consent or waiver cannot be secured by Seller after reasonable efforts, (iii) any information subject to an attorney/client, work product, or similar privilege (other than title opinions), (iv) any proprietary evaluations or projections of Seller related to the Property, and (v) other information related solely to the Excluded Assets (collectively, the "Records").

(b)      <u>Inspections</u>.      Seller shall permit Buyer and Buyer's authorized representatives to consult with Seller's employees during reasonable business hours with respect to matters concerning the Property.  Buyer recognizes that the Property is operated by parties other than Seller and that Seller's ability to obtain access to the Property, and the manner and extent of such access, is subject to such third parties' facilitation.  Seller shall use reasonable commercial efforts to facilitate, at Buyer's sole risk and expense, on-site inspections and inventories of the Property.  Seller shall have the right to send a designated representative to accompany Buyer for the duration of such access.  The scope of the work comprising such inspections shall be limited to conducting a review of the compliance status of the Property with respect to Environmental Laws and a Phase I review of the Property.  During such inspections, Buyer shall have the right to evaluate the Property to determine the condition of the Property, but Buyer shall have no right to, and shall not, conduct any soil testing, groundwater testing, or other invasive or destructive testing of the Property or take samples from the Property, without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed.  To the extent Buyer desires similar access to Seller's non-operated Property, Seller shall assist Buyer in obtaining such access.  Buyer shall not contact the operator of any non-operated Oil and Gas Interests directly.  If Buyer or any of its representatives accesses any of the Property or Seller's offices, **BUYER AGREES TO PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS** the Seller Parties from and against any and all Claims occurring on or arising out of access to the Property or Seller's offices, as the case may be, by Buyer and its representatives**, EVEN IF SUCH CLAIMS ARE CAUSED BY THE SOLE, JOINT, AND/OR CONCURRENT NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT (BUT EXCLUDING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) OF THE SELLER PARTIES**.  Buyer agrees to comply fully with all rules, regulations, and instructions issued by Seller regarding Buyer's actions while upon, entering, or leaving the Property and Seller's offices.

9.      **Operations Pending Closing**.  During the period from the Execution Date through and including the completion of the Closing, Seller shall (i) consult with Buyer with respect to, and shall not commence, propose, or agree to participate in without the prior written consent of Buyer (which consent shall not be unreasonably withheld, conditioned or delayed), any AFE over Fifty Thousand Dollars ($50,000.00), net to the interest of Seller with respect to

any Oil and Gas Interest included in the Property, and consult with Buyer with respect to all material decisions to be made with respect to the Property, including the incurring of costs for discretionary expenditures for operations in excess of Fifty Thousand Dollars ($50,000.00), net to the interest of Seller for which AFEs are not prepared, except as to the operations described in Schedule 9, which Seller may conduct without consulting with Buyer, (ii) not transfer, sell, hypothecate, encumber, abandon, or otherwise dispose of any material portion of the Oil and Gas Interests (other than the sale of Hydrocarbons in the ordinary course of business or as required in connection with the exercise by third parties of Preferential Purchase Rights applicable to any of the Oil and Gas Interests) without the written consent of Buyer, (iv) not (A) terminate, cancel, materially amend, extend or modify any Contract with respect to the Property or any Oil and Gas Interest, or (B) enter into any agreement that would be required to be set forth on Exhibit J; (v) not fail to maintain insurance with respect to the Property in a manner consistent with Seller's current insurance policies; or (vi) not (A) commence, settle or compromise any Claim or indebtedness or (B) waive or release any right of Seller that, in either case, would reasonably be expected to adversely affect Buyer's ownership or use of the Property after the Closing.

**10.** **Conditions to Obligations of Both Parties**. The obligations of each Party to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions:

(a) Neither the Bankruptcy Court nor any other Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Order, decree or ruling or taken any other action which is in effect and has the effect of making the transactions contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of such transactions or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(b) Except for such consents and approvals of transfer of the Leases, Units, Permits, Easements and Surface Rights as are customarily obtained from Governmental Authorities subsequent to a sale or transfer, the Parties shall have received all consents, authorizations, Orders and approvals from Governmental Authorities that are required in connection with the consummation of the transactions contemplated by this Agreement, in each case, in form and substance reasonably satisfactory to the Buyer and the Seller, and no such consent, authorization, Order and approval shall have been revoked.

(c) The Bankruptcy Court shall have entered the Sale Order in form and substance satisfactory to the Seller and Buyer and the Sale Order shall be in full force and effect and shall have become a Final Order or (ii) the Sale Order shall expressly permit the immediate Closing of the transactions contemplated by this Agreement in accordance with Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d).

**11.** **Conditions of Closing by Seller**. The obligation of Seller to consummate the transaction contemplated hereunder is subject to the satisfaction of the following conditions:

(a) the representations and warranties of Buyer contained in <u>Section 7</u> are true and correct in all material respects (except those representations and warranties of Buyer contained in <u>Section 7</u> that are qualified by materiality, which shall be true and correct in all

respects) on and as of the Closing Date, and all covenants and agreements hereunder to be performed by Buyer at or prior to the Closing have been performed and satisfied in all material respects;

(b)     adjustments to the Base Purchase Price under Section 13(b)(iv) shall not have exceeded ten percent (10%) of the Base Purchase Price;

(c)     no event has occurred that will prevent Seller from Closing on, or will cause Seller to be unable to close and convey, all of the Property at one Closing and to receive at such Closing the entire Purchase Price, as adjusted in accordance with the terms of this Agreement and to be paid pursuant to Section 14(g);

(d)     as of the Closing Date, no Action is pending or threatened before any Governmental Authority seeking to restrain, prohibit, or declare illegal, or seeking substantial damages in connection with, the transaction that is the subject of this Agreement; and

(e)     as of the Closing Date, Buyer shall have obtained and filed with applicable Governmental Authority in the name of Buyer, replacements for Seller's and or its Affiliates, bonds, letters of credit and guarantees relating to the Property posted by Seller or its Affiliates with such Governmental Authority.

**12.     Conditions of Closing by Buyer**.  The obligation of Buyer to consummate the transaction contemplated hereunder is subject to the satisfaction of the following conditions:

(a)     the representations and warranties of Seller contained in Section 6 are true and correct in all material respects (except those representations and warranties of Seller contained in Section 6 that are qualified by materiality, which shall be true and correct in all respects) on and as of the Closing Date and all covenants and agreements hereunder to be performed by Seller at or prior to the Closing have been performed and satisfied in all material respects; and

(b)     as of the Closing Date, no Action is pending or threatened before any Governmental Authority seeking to restrain, prohibit, or declare illegal, or seeking substantial damages in connection with, the transaction that is the subject of this Agreement.

**13.     Purchase Price Adjustments**.

(a)     Upward Adjustments.  The Base Purchase Price shall be increased by the following (without duplication): (i) an amount equal to the value of all merchantable allowable oil or other liquid Hydrocarbons in storage owned by Seller above a custody transfer point on the Effective Date that is credited to the Property, such value to be the current market price or the price paid, less Taxes and gravity adjustments deducted by the purchaser of such oil or other liquid Hydrocarbons; and (ii) the aggregate amount of all Property Costs which are paid by or on behalf of Seller, are not subject to reimbursement to Seller pursuant to a joint interest billing and are attributable to the period on or after the Effective Date (including any pre-paid charges);

(b)     Downward Adjustments.  The Base Purchase Price shall be decreased by the following (without duplication): (i) the amount of any proceeds received by Seller from the

sale of Hydrocarbons, produced from and after the Effective Date, from the Property (net of royalties and other burdens on Buyer's share of the proceeds from the production of Hydrocarbons not otherwise accounted for hereunder) actually received by Seller; (ii) the amount of the Suspended Funds; (iii) the aggregate amount of all Property Costs which are paid by or on behalf of Buyer, are not subject to reimbursement to Buyer pursuant to a joint interest billing and are attributable to the period prior to the Effective Date; (iv) in the event of any Casualty Loss or Government Taking, the amount determined pursuant to <u>Section 13(e),</u> (v) in the event any Preferential Purchase Right is exercised prior to Closing, the amount allocated to the affected Oil and Gas Interests in <u>Exhibit E,</u> pursuant to <u>Section 13(i),</u> (vi) in the event any Hard Consent is not obtained or waived prior to Closing, the amount allocated to the affected Oil and Gas Interests in <u>Exhibit E</u> pursuant to <u>Section 13(j),</u>  (vii) the amount of the Cure Costs to be paid by Buyer with respect to the Assumed Contracts, (viii) the amount of any adjustments on account of any Title Defects pursuant to <u>Sections 5(c)</u> through <u>5(e),</u> and (ix) any other amount agreed upon in writing by Buyer and Seller.

(c)      <u>Imbalance Adjustments</u>.  The Base Purchase Price will be adjusted upward or downward, as applicable, by (i) the net Mcf and barrel of oil amount of the aggregate Imbalances attributable to Seller's Net Revenue Interest in the Wells as of the Effective Date multiplied by the contract price per Mcf of gas and per barrel of oil for such Well for sales of production during the calendar month in which the Effective Date occurs (upward for underage and downward for overage); and (ii) the MMBtu amount of any pipeline Imbalances or unsatisfied throughput obligations attributable to Seller or the Property for Seller's ownership prior to the Effective Date multiplied by the actual settlement price per MMBtu (upward for over deliveries and downward for under deliveries).

(d)      <u>Initial Adjustment at Closing</u>.  At least five (5) Business Days before the Closing Date, Seller shall provide to Buyer a statement, in the form of <u>Exhibit G</u>, showing its computations, calculated in good faith, of the amount of the adjustments provided for in <u>Sections 13(a)</u> through <u>13(c)</u> above.  Buyer and Seller shall attempt to agree upon such adjustments prior to Closing; *provided* that if agreement is not reached, Seller's computation shall be used at Closing, subject to further adjustment under <u>Section 16(a)</u> below.

(e)      <u>Notice of Casualty Losses and Government Takings</u>.  If, prior to the Closing Date, all or part of the Property is damaged or destroyed by fire, flood, storm, or other accident ("<u>Casualty Loss</u>"), or is taken in condemnation or under the right of eminent domain, or if proceedings for such purposes shall be pending or threatened ("<u>Government Taking</u>"), Seller must promptly notify Buyer in writing of the nature and extent of the Casualty Loss or Government Taking and Seller's estimate of the cost required to repair or replace that portion of the Property affected by the Casualty Loss or value of the Property taken by the Government Taking.  Notwithstanding the foregoing, no individual matter described above shall be deemed to be or constitute a Casualty Loss or a Government Taking unless the estimate of the cost required to repair or replace that portion of the Property affected by the Casualty Loss or value of the Property taken by the Government Taking for such matter exceeds TEN THOUSAND DOLLARS ($10,000.00), net to Seller's interest in the affected portion of the Property.

(f)      <u>Remedies for Casualty Losses and Government Takings</u>.  With respect to each Casualty Loss to or Government Taking of the Property, Seller and Buyer will have the following rights and remedies:

(i)      If the agreed cost to repair or replace the portion of the Property affected by the Casualty Loss or the agreed value of the Property taken in any Government Taking is less than FIVE HUNDRED THOUSAND DOLLARS ($500,000), the Purchase Price will be adjusted downward by the agreed cost of the Casualty Loss or the agreed value of the Property taken by the Government Taking, and the Parties will proceed with Closing.

(ii)      If the agreed cost to repair or replace the portion of the Property affected by the Casualty Loss or the agreed value of the Property taken in any Government Taking equals or exceeds FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), the Parties will proceed with Closing and Seller shall elect by written notice to Buyer prior to Closing either (A) to adjust the Purchase Price downward by the agreed cost of the Casualty Loss or the agreed value of the Property taken in any Government Taking, or (B) to cause the portion of the Property affected by the Casualty Loss to be repaired or replaced, to Buyer's reasonable satisfaction and at Seller's cost, as promptly as reasonably practicable (which work may extend after the Closing Date). The Parties understand that if Seller elects to proceed with Closing pursuant to (ii)(B) of this subsection, Buyer shall deposit an amount equal to the agreed cost to repair or replace the portion of the Property affected by the Casualty Loss or the agreed value of the Property taken in any Government Taking (the "<u>Retained Purchase Price</u>") with the Escrow Agent. The Parties shall execute and deliver to the Escrow Agent a joint written instruction instructing the Escrow Agent to release the Retained Purchase Price to Seller when the Property subject to the Casualty Loss has been repaired or replaced to Buyer's reasonable satisfaction.

(g)      <u>Insurance Proceeds and Settlement Payments</u>.  In each case under subparts (i) and (ii) of <u>Section 13(b),</u> Seller will be entitled to (i) all insurance proceeds with respect to any such Casualty Loss, (ii) all sums paid to Seller or Buyer by third parties by reason of any such Casualty Loss, and (iii) all compensation paid to Seller or Buyer with respect to any such Government Taking.

(h)      <u>Change in Condition</u>.  Buyer will assume all risk and loss with respect to, and any change in the condition of the Property occurring after the Execution Date, including production of Hydrocarbons through normal depletion, the watering-out, casing collapse or sand infiltration of any Well, the depreciation of personal property through ordinary wear and tear, and changes arising from operations conducted by Seller pursuant to Section 9.  None of the events or conditions set forth in this Section 13(h) will be considered a Casualty Loss with respect to the Property, nor will they be cause for any other reduction in the Base Purchase Price, or give rise to any right to terminate this Agreement.

(i)      <u>Preferential Purchase Rights</u>.  Seller shall promptly, but in any event, within five (5) Business Days after the Execution Date, give notices reasonably satisfactory to

*Purchase and Sale Agreement*

Buyer to third parties holding any Preferential Purchase Right as set forth on Schedule 6(s) or identified to Seller by Buyer prior to Closing.  Seller shall use all reasonable efforts, but without obligation to incur any unreasonable cost or expense, to obtain waivers of, or to comply with, any such Preferential Purchase Right prior to Closing.  If a Preferential Purchase Right is exercised prior to Closing, the Base Purchase Price shall be reduced by the amount allocated to the affected Oil and Gas Interests in Exhibit E, and Seller shall convey the affected Oil and Gas Interests to the holder of such right and be entitled to all amounts paid by such holder.  If, as of the Closing, there is a Preferential Purchase Right for which the time to exercise has not expired and the third-party holder thereof has neither exercised nor waived its right, then the affected Oil and Gas Interest shall be conveyed to Buyer at Closing without adjustment to the Base Purchase Price, and if such Preferential Purchase Right is exercised after Closing, Buyer shall convey the affected Oil and Gas Interests to the holder of such right and be entitled to all amounts paid by such holder.

(j)    Consents.  Seller shall promptly, but in any event, within five (5) Business Days after the Execution Date, give notices to all third parties holding any Scheduled Consents or any other consent identified to Seller by Buyer prior to Closing.  Seller shall use all reasonable efforts, but without obligation to incur any unreasonable cost or expense, to obtain any such consents.  Upon Seller's request, Buyer will provide such information regarding Buyer and its operations and financial condition as Seller reasonably believes to be necessary or appropriate to obtain any such consents.  Any such consent waived by Buyer shall be deemed a Permitted Encumbrance.  Unless waived by Buyer, if Seller fails to receive prior to Closing any consent (other than consents of Governmental Authorities customarily obtained subsequent to a sale or transfer) containing terms that expressly provide that an assignment without consent will terminate the Lease or render the assignment void or voidable (each a "Hard Consent") the Oil and Gas Interests affected by such third party Hard Consent shall be held back from the Property conveyed at Closing and the Base Purchase Price shall be reduced by the amount allocated to such excluded Oil and Gas Interests on Exhibit E.  After Closing, Seller shall use all reasonable efforts, but without obligation to incur any unreasonable cost or expense, to obtain any such Hard Consent.  If a Hard Consent is obtained within 90 days following Closing, the respective Oil and Gas Interests so held back at the Closing will be conveyed to Buyer within ten (10) Business Days after such Hard Consent has been obtained, waived or otherwise satisfied.  At such subsequent closing, Seller shall contribute, assign, transfer and convey to Buyer, and Buyer shall acquire, pay for and accept from Seller, such Property pursuant to the terms of this Agreement.  Except for Hard Consents, if any consents to the assignment of any Asset are not obtained prior to Closing, then with respect to each affected Asset, the affected Assets shall nevertheless be sold and conveyed to Buyer at the Closing and Buyer shall pay for the affected Asset(s) at Closing in accordance with this Agreement as though the consent had been obtained.

**14.    Closing**.  Subject to the satisfaction or waiver of the conditions to Closing set forth in Sections 11 and 12 above, the Closing shall be held on or before the later of (a) December 22, 2016, or (b) three (3) Business Days after the Sale Order has been entered by the Bankruptcy Court at the offices of Cohne Kinghorn, P.C., 11 East Broadway, 11th Floor, Salt Lake City, Utah 84111 or at such other time and place as Seller and Buyer may mutually agree in writing (the "Closing" or "Closing Date").  Notwithstanding anything in this Agreement to the contrary, neither Party will be obligated to close the transactions contemplated by this

*Purchase and Sale Agreement*

Agreement if, as of the Closing Date, the Sale Order shall not have been entered by the Bankruptcy Court.

**15.** **Transactions at Closing**. The following actions shall occur at Closing:

(a)    Seller shall execute, acknowledge, and deliver to Buyer the instrument of conveyance in the form as set forth in Exhibit F conveying the Property, together with all necessary tribal, state and federal counterpart assignments of the Property;

(b)    Seller and Buyer shall execute and deliver a preliminary Closing Statement that shall set forth the Base Purchase Price, each adjustment to Base Purchase Price under this Agreement, and the calculation of such adjustments used to determine such amount under this Agreement, and the final Purchase Price, in the form as set forth in Exhibit G;

(c)    Seller and Buyer shall execute, acknowledge, and deliver mutually agreeable transfer orders or letters-in-lieu prepared by the Buyer, directing all purchasers of Hydrocarbon production to make future payments of proceeds attributable to Hydrocarbon production from the Property to Buyer;

(d)    Seller shall deliver to Buyer a "non-foreign person" affidavit that complies with Section 1445 of the Code in the form as set forth in Exhibit H;

(e)    Buyer shall deliver to Seller a certificate stating that the representations and warranties of Buyer contained in Section 7 are true and correct, in all material respects, as of the Closing Date, and that Buyer has performed, in all material aspects, all covenants and agreements to be performed by Buyer hereunder at or prior to Closing;

(f)    Seller shall deliver to Buyer possession of the Property, subject to the Assumed Contracts;

(g)    Buyer and Seller shall execute and deliver joint written instructions instructing the Escrow Agent to deliver to Seller, out of the Escrow Funds (i) fifty percent (50%) of the Performance Deposit by wire transfer to an account designated in writing by Seller, whereupon the remaining fifty percent (50%) of the Performance Deposit shall be retained by the Escrow Agent (such retained amount, the "Adjustment Escrow Amount"), and released to Seller or Buyer, as applicable, pursuant to Section 16(h); (ii) a sum equal to the Purchase Price, less the amount of the Performance Deposit, in each case, by wire transfer to an account designated in writing by Seller; and (iii) a sum equal to the Escrow Funds less the Purchase Price, by wire transfer to an account designated in writing by Buyer; and

(h)    Seller shall deliver to Buyer releases executed by Wilmington Trust, National Association, as administrative agent, in recordable form, of the mortgages and liens encumbering the Assets.

**16.** **Post-Closing Adjustments; Delivery of Records**.

(a)    On or before one-hundred twenty (120) days after Closing, Buyer and Seller shall review any information which may then be available pertaining to the adjustments

*Purchase and Sale Agreement*

provided for in Sections 13(a) through 13(c), shall determine if any additional adjustments should be made beyond those made at Closing (whether the same be made to account for expenses or revenues not considered in making the adjustments made at Closing, or to correct errors made in the adjustments made at Closing), and shall make any such adjustments by appropriate payments from Seller to Buyer or from Buyer to Seller.

(b)     If the Parties fail to agree on final adjustments within such one-hundred twenty (120) day period, either Party may, within thirty (30) days after the end of such period, submit the disputed items to Deloitte LLP or another nationally-recognized, United States-based independent public accounting firm on which the Parties mutually agree in writing (the "Accounting Referee"); *provided, however*, that the Accounting Referee shall not have performed any material work for any Party or their respective Affiliates within three (3) years before the Execution Date.

(c)     If Deloitte LLP is unable or unwilling to serve as the Accounting Referee and the Parties are unable to agree upon the designation of a Person or entity as substitute Accounting Referee, then Seller or Buyer, or either of them, may in writing request the Bankruptcy Court to appoint a substitute Accounting Referee; *provided* that such Person or entity so appointed shall be a national or regional accounting firm with no prior material relationships with Seller or Buyer or their respective Affiliates and shall have experience in auditing companies engaged in oil and gas exploration and development activities.

(d)     Any unresolved matters described in this Section 16(a-g) that are not submitted to the Accounting Referee within such thirty (30) day period shall be deemed waived by the Parties, which waiver shall be final and binding on the Parties and the subject matter thereof shall not be subject to further review or audit.

(e)     The Parties shall direct the Accounting Referee to resolve the disputes within thirty (30) days after submission of the matters in dispute. The Accounting Referee shall act as an expert for the limited purpose of determining the specific disputed matters submitted by either Party and may not award damages or penalties to either Party with respect to any matter. Seller and Buyer shall share equally the Accounting Referee's costs, fees and expenses (including attorneys' fees). The final settlement statement, whether as agreed between the Parties or as determined by a decision of the Accounting Referee (the "Final Settlement Statement"), shall be binding on, and non-appealable by, the Parties and not subject to further review or audit.

(f)     The Purchase Price as provided in the Final Settlement Statement is the "Final Purchase Price."  During the period between Closing and the point in time when the Final Settlement Statement has been agreed to by the Parties, or determined by a decision of the Accounting Referee, each Party shall, on a monthly basis, (i) pay over to the other Party any revenue received by it (net of related expenses) with respect to the Property which is owed to the other Party as set forth in Sections 13(a) through 13(c) above, and (ii) deliver any cash, checks with appropriate endorsements (using their best efforts not to convert such checks into cash) or other property that it may receive on or after the Closing which properly belongs to the other Party, and such payments and deliveries shall be considered in determining the Final Settlement Statement.

(g)　　Notwithstanding anything to the contrary herein, as of the date that the Final Settlement Statement is agreed to by the Parties, or determined by a decision of the Accounting Referee, the Final Settlement Statement shall be final and binding on the Parties and not subject to further review or audit, and neither Party shall have any further rights or obligations regarding further adjustments, payment of money or delivery of property.

(h)　　Within five (5) Business Days after the date on which all disputes in respect of the Final Settlement Statement are finally resolved (whether by agreement of the Parties or pursuant to the Accounting Referee's decision):

(i)　　If the Final Purchase Price equals or exceeds the Purchase Price, then the Parties shall execute and deliver to the Escrow Agent a joint written instruction instructing the Escrow Agent to release the entire Adjustment Escrow Amount to Seller by wire transfer to an account designated in writing by the Seller, and if the amount of such excess is greater than the Adjustment Escrow Amount, the Buyer shall Pay to Seller by wire transfer to an account designated in writing by Seller the amount by which the excess is greater than the Adjustment Escrow Amount.

(ii)　　If the Purchase Price exceeds the Final Purchase Price, and the amount of such excess is less than the Adjustment Escrow Amount, then the Parties shall execute and deliver to the Escrow Agent a joint written instruction instructing the Escrow Agent to (A) release the portion of the Adjustment Escrow Amount by which the Purchase Price exceeds the Final Purchase Price to Buyer by wire transfer to an account designated in writing by the Buyer, and (B) release the remainder of the Adjustment Escrow Amount to Seller by wire transfer to an account designated in writing by Seller.

(iii)　　If the Purchase Price exceeds the Final Purchase Price, and the amount of such excess is equal to or greater than the Adjustment Escrow Amount, then the Parties shall execute and deliver to the Escrow Agent a joint written instruction instructing the Escrow Agent to release the entire Adjustment Escrow Amount to Buyers by wire transfer to an account designated in writing by Buyer (it being understood and agreed that the Buyer's receipt of such amount shall be in full satisfaction of any such excess, notwithstanding the fact that such excess was greater than the Adjustment Escrow Amount, and Seller shall have no further obligations or liabilities to Buyer in respect of such excess).

(i)　　<u>Delivery of Records</u>.  No later than five (5) Business Days after Closing, Seller shall deliver to Buyer the Records (and Seller shall retain copies of the Records).

**17.　　<u>Taxes and Suspended Funds</u>.**

(a)　　<u>Taxes</u>.  All Taxes, other than Transfer Taxes,  and similar obligations with respect to the Tax period in which the Effective Date occurs (the "<u>Current Tax Period</u>") shall be apportioned between Seller and Buyer as of the Effective Date based on an estimate of the immediately preceding Tax period assessment and prorating such Taxes on a per diem basis, and

the Base Purchase Price shall be reduced at Closing by the amount of such estimated Taxes owed by Seller for that portion of the Current Tax Period prior to the Effective Date. Buyer shall be liable and shall indemnify Seller for all Taxes attributable to the Property, other than Transfer Taxes, for the portion of the Current Tax Period after the Effective Date as well as any and all tax periods beginning on or after the Effective Date.

(b)     Transfer Taxes. It is the reasonable anticipation of the Parties that the transactions to occur pursuant to this Agreement, including the transfer of the Property, shall not give rise to any transfer, documentary, sales, use, stamp, registration and other similar Taxes and fees arising out of or in connection with the transactions effected pursuant to this Agreement (the "Transfer Taxes"), but to the extent there are any Transfer Taxes attributable to the consummation of the transactions under this Agreement, such Transfer Taxes shall be paid by the Buyer.  Any Transfer Tax inclusive of any penalty and interest, assessed at a future date against the Parties with respect to the transactions covered herein shall be paid by the Buyer, or if paid by the Seller shall be promptly reimbursed by the Buyer.  The Parties shall reasonably cooperate to mitigate, reduce or eliminate any Taxes referred to in this Section 17(b), and to use reasonable efforts to obtain any certificate or other documents from any Governmental Authority as may be possible to mitigate, reduce or eliminate any such Transfer Taxes.  For the avoidance of doubt, "Transfer Taxes" shall not include any federal, state and local income and gain Taxes resulting from the transactions hereunder.

(c)     Suspense Accounts.   At Closing, the Base Purchase Price shall be decreased by an amount equal to all funds held in suspense by Seller related to proceeds of Hydrocarbon production and attributable to the interests of third parties in the Leases or lands pooled or unitized therewith, including funds suspended awaiting minimum disbursement requirements, funds suspended under division orders, and funds suspended for title and other defects (the "Suspended Funds").  After Closing, Buyer shall administer all such accounts and assume all payment obligations to the proper parties with respect to the Suspended Funds in accordance with the terms of the Leases and all applicable Laws, rules, and regulations.

**18.     Overhead Expenses**.

(a)     Proceeds Prior to Effective Date.  Subject to Section 13(a) through (d) and Section 16(a) through 16(h), all proceeds, including proceeds held in suspense or escrow and proceeds received after the Effective Date for oil produced and held in storage on the Leases but not sold as of the Effective Date, attributable to the Property and accruing to the period prior to the Effective Date (including outstanding accounts receivable attributable to the period prior to the Effective Date) shall belong to Seller.

(b)     Proceeds On and After Effective Date.   Subject to Section 13(a) through (d) and Section 16(a):

(i)     All proceeds attributable to the Property and accruing to the period on and after the Effective Date shall belong to Buyer.  If Seller has received proceeds belonging to Buyer after the Effective Date, Seller will account to Buyer for such proceeds at the same price Seller received for the production in accordance with its existing product purchase and sale Contracts.

(ii)    There is excepted, reserved, and excluded from the Property any and all rights and claims for reimbursement, recovery, or recoupment by any lawful means of payments for any royalties, overriding royalties, or other payments from production arising from or attributable to the Property prior to the Effective Date that were tendered by Seller or any of its Affiliates to and accepted by any lessor, mineral owner, or other party (collectively, "<u>Royalty Owners</u>") that are in excess of the amount of royalties, overriding royalties, or other payments from production, if any, actually due or owing to such Royalty Owners prior to the Effective Date.  If Buyer becomes aware of any such payments, Buyer shall promptly notify Seller and shall cooperate with Seller in Seller's efforts in respect of such payments.

(c)    <u>Expenses</u>.  Subject to <u>Section 13(a)</u> through <u>(d)</u> and <u>Section 16(a)</u>, and solely with regard to calculating the Closing Statement, and not otherwise, (i) Seller shall be entitled to be reimbursed by Buyer for any costs and expenses paid by Seller with respect to the Property for any period after the Effective Date and attributable to the ownership or operation of the Property on or after the Effective Date, and (ii) Buyer shall be entitled to be reimbursed by Seller for any costs and expenses paid by Buyer with respect to the Property for any period prior to the Effective Date and attributable to the ownership or operation of the Property prior to the Effective Date.

## 19.    <u>Assumption of Obligations by Buyer</u>.

(a)    <u>Assumption by Buyer</u>.  Except to the extent discharged by the Sale Order and Seller's conveyance of the Property to Buyer thereunder Free and Clear (except for Permitted Encumbrances and Buyer's Assumed Obligations), upon and after Closing, Buyer will assume, perform, pay, and perform only the following Liabilities (collectively, the "<u>Buyer's Assumed Obligations</u>") (i) all Liabilities with respect to ownership and (if applicable) operation of the Property arising on or after the Effective Date, (ii) all Liabilities arising under the Assumed Contracts, (iii) all Liabilities to pay and deliver royalties, overriding royalties, non-participating royalties, and other burdens on Hydrocarbon production produced and marketed on or after the Effective Date, (iv) all Liabilities necessary to comply with all Laws with respect to the Property that arise after the Effective Date, including the lawful plugging and abandonment of oil and gas Wells and the restoration of the surface of the land, or any governmental request or other requirement to abandon any pipeline or facility or take any clean-up, remedial, or other action with respect to the Property, but in each case, only to the extent such Liabilities arise after the Effective Date, (v) all Liabilities relating to Taxes attributable to the Property, other than Transfer Taxes, for the portion of the Current Tax Period after the Effective Date as well as any and all Tax periods beginning on or after the Effective Date, and (vi) all Liabilities related to administration and payment of the Suspended Funds.

(b)    <u>Seller Retained Obligations</u>.  Notwithstanding any provision in this Agreement to the contrary, Buyer shall not assume and shall not be obligated to assume or be obliged to pay, perform or otherwise discharge, and Seller shall be solely and exclusively liable with respect to all Liabilities of Seller other than the Buyer's Assumed Liabilities (such Liabilities other than Buyer's Assumed Liabilities, collectively, the "<u>Seller Retained Obligations</u>").  Without limiting the generality of the foregoing, the Seller Retained Obligations

*Purchase and Sale Agreement*

shall include each of the following Liabilities of Seller: (i) Liabilities arising out of or pertaining to all Claims asserted in litigation against Seller or any Affiliate thereof and any Claims under sections 503 and 507 of the Bankruptcy Code; (ii) Liabilities associated with any indebtedness of the Seller for borrowed money; (iii) Liabilities associated with any guarantees of third party obligations by Seller and reimbursement obligations to guarantors of Seller's obligations or under letters of credit; (iv) all Liabilities relating to Taxes attributable to the Property for the portion of the Current Tax Period prior to the Effective Date as well as any and all Tax periods ending prior to the Effective Date; (v) any Liabilities associated with the Excluded Assets; (vi) all Liabilities with respect to ownership and (if applicable) operation of the Property arising prior to the Effective Date; (vii) all Liabilities to pay and deliver royalties, overriding royalties, non-participating royalties, and other burdens on Hydrocarbon production produced and marketed prior to the Effective Date; (viii) all Liabilities arising out of or resulting from layoffs or termination of employees by Seller at or prior to Closing (including without limitation all accrued and unpaid vacation, payroll Taxes, related expenses, and/or any required notice under the WARN Act; (ix) all Liabilities with respect to any employee or other benefit plans of Seller; and (x) all Liabilities associated with obligations under any futures Contracts, options on futures, swap agreements or forward sale agreements entered into by Seller.

## 20.   **DISCLAIMERS AND WAIVERS**.

(a)   <u>Title Waiver</u>.   AT CLOSING, THE PROPERTY SHALL BE CONVEYED AND TRANSFERRED WITHOUT ANY REPRESENTATION, WARRANTY, OR COVENANT OF TITLE OF ANY KIND OR NATURE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

(b)   <u>No Reliance</u>.   Buyer has reviewed and has access to all Contracts, documents, records, and information which it has desired to review in connection with its decision to enter this Agreement, and to consummate the transactions contemplated hereby. Buyer has not relied upon any representation, warranty, statement, advice, document, projection, or other information of any type provided by Seller, or its Affiliates, or any of their representatives, except for those expressly set forth in this Agreement. In deciding to enter into this Agreement, and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own knowledge, investigation, and analysis (and that of its representatives and advisors) and not on any disclosure or representation made by, or any duty to disclose on the part of, Seller or its Affiliates, or any of their representatives or advisors, other than the representations and warranties of Seller expressly set forth in this Agreement.

(c)   <u>Limited Duties</u>.   Any and all duties and obligations which either Party may have to the other Party with respect to or in connection with the Property, this Agreement, or the transactions contemplated hereby are limited to those in this Agreement. The Parties do not intend (i) that the duties or obligations of either Party, or the rights of either Party, shall be expanded beyond the terms of this Agreement on the basis of any legal or equitable principle or on any other basis whatsoever or (ii) that any equitable or legal principle or any implied obligation of good faith or fair dealing or any other matter requires either Party to incur, suffer, or perform any act, condition, or obligation contrary to the terms of this Agreement and that it would be unfair, and that they do not intend, to increase any of the obligations of any Party under this Agreement on the basis of any implied obligation or otherwise.

*Purchase and Sale Agreement*

(d)  Defects.  AT CLOSING, THE PROPERTY SHALL BE CONVEYED AND ASSIGNED TO AND ACCEPTED BY BUYER IN ITS "AS IS, WHERE IS" CONDITION AND STATE OF REPAIR, AND WITH ALL FAULTS AND DEFECTS, WITHOUT ANY REPRESENTATION, WARRANTY, OR COVENANT OF ANY KIND OR NATURE, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MARKETABILITY, QUALITY, CONDITION, CONFORMITY TO SAMPLES, MERCHANTABILITY, AND/OR FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE EXPRESSLY DISCLAIMED BY SELLER AND WAIVED BY BUYER.  BUYER RECOGNIZES THAT THE PROPERTY HAS BEEN USED FOR OIL AND GAS DRILLING, PRODUCTION, GATHERING, PIPELINE, TRANSPORTATION, STORAGE, AND RELATED OPERATIONS.  PHYSICAL CHANGES IN THE PROPERTY AND IN THE LANDS BURDENED THEREBY MAY HAVE OCCURRED AS A RESULT OF SUCH USES.  THE PROPERTY ALSO MAY INCLUDE BURIED PIPELINES AND OTHER EQUIPMENT, THE LOCATIONS OF WHICH MAY NOT BE KNOWN BY SELLER OR READILY APPARENT BY A PHYSICAL INSPECTION OF THE PROPERTY.  IT IS UNDERSTOOD AND AGREED THAT BUYER SHALL HAVE INSPECTED PRIOR TO CLOSING (OR SHALL BE DEEMED TO HAVE WAIVED ITS RIGHT TO INSPECT) THE LEASES, EQUIPMENT, PIPELINES, AND THE ASSOCIATED PREMISES AND SATISFIED ITSELF AS TO THEIR PHYSICAL AND ENVIRONMENTAL CONDITION, BOTH SURFACE AND SUBSURFACE, AND THAT BUYER SHALL ACCEPT ALL OF THE SAME IN THEIR "AS IS, WHERE IS" CONDITION AND STATE OF REPAIR, AND WITH ALL FAULTS AND DEFECTS, INCLUDING, BUT NOT LIMITED TO, THE PRESENCE OF NATURALLY OCCURRING RADIOACTIVE MATERIAL AND MAN-MADE MATERIAL FIBERS.

(e)  Records Disclaimer.  Seller makes no representation, covenant, or warranty, express, implied, or statutory, as to the accuracy or completeness of any data or records delivered to Buyer with respect to the Property, or concerning the quality or quantity of Hydrocarbon reserves, if any, attributable to the Property, or the ability of the Property to produce Hydrocarbons, or the product prices which Buyer is or will be entitled to receive from the sale of any such Hydrocarbons.

(f)  Environmental Waiver and Release.  From and after Closing, Buyer does hereby agree, warrant, and covenant to release, acquit, and forever discharge Seller and all Seller Parties from any and all Claims, including all claims, demands, and causes of action for contribution and indemnity under statute or common law, which could be asserted now or in the future relating to or arising out of environmental matters or liabilities and related to the Property, including any and all Claims attributable to or arising out of a violation of any Environmental Law.  From and after Closing, Buyer warrants, agrees, and covenants not to sue or institute arbitration against Seller or any Seller Parties upon any claim, demand, or cause of action for indemnity and contribution that have been asserted or could be asserted for any such environmental matters or liabilities.

(g)  Consequential Damages Waiver.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY EXEMPLARY, PUNITIVE, SPECIAL, INDIRECT, CONSEQUENTIAL, REMOTE, OR SPECULATIVE DAMAGES ARISING OUT OF OR

RELATING TO, IN ANY MANNER, THIS AGREEMENT, THE TRANSACTION CONTEMPLATED HEREUNDER, OR THE PROPERTY, EVEN IF SUCH DAMAGES ARE CAUSED BY THE SOLE, JOINT, OR CONCURRENT NEGLIGENCE, STRICT LIABILITY, OR OTHER FAULT OF THE PARTY WHOSE LIABILITY IS BEING WAIVED HEREBY; PROVIDED, HOWEVER, THAT THIS WAIVER SHALL NOT APPLY WITH REGARD TO CLAIMS BY THIRD PARTIES FOR WHICH ONE PARTY HAS AGREED TO INDEMNIFY THE OTHER UNDER THE TERMS OF THIS AGREEMENT.

      **21.**    <u>**Confidentiality**</u>.  All Records, and all other confidential data provided to Buyer, whether before or after the date of this Agreement shall be subject to the Confidentiality Agreement.

      **22.**    <u>**Further Assurances**</u>.  Incidental and subsequent to Closing, each of the Parties shall execute, acknowledge, and deliver to the other Party such further instruments, and take such other actions, as may be reasonably necessary to carry out the provisions of this Agreement.

      **23.**    <u>**Failure to Close**</u>.  Subject to the other provisions of this <u>Section 23</u>, if all of the conditions to Closing set forth in <u>Sections 11</u> and <u>12</u> hereof have not been satisfied or waived by the Parties, or if the Sale Order (a) shall not have been entered by the Bankruptcy Court or (b) if entered by the Bankruptcy Court, shall not have become a Final Order or shall not expressly permit the immediate Closing of the transactions contemplated by this Agreement in accordance with Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), on or before December 28, 2016 (or such later date as hereafter may be mutually agreed upon by the Parties in writing) (the "<u>Outside Date</u>"), this Agreement shall terminate automatically, and neither Party hereto shall have any further obligations or any liability to the other Party under this Agreement.  If (i) the conditions to Buyer's obligations to close as set forth in <u>Section 12</u> have not been satisfied or waived by the Outside Date, or (ii) the Sale Transaction is not consummated on or before the Outside Date due to the conditions of Closing contained in <u>Section 11(c)</u> or <u>Section 11(d)</u>, the Performance Deposit shall be returned by the Escrow Agent to Buyer.  If the Sale Transaction is not consummated by Buyer on or before the Outside Date for any other reason, Escrow Agent shall deliver the Performance Deposit to Seller and Seller may retain the Performance Deposit as its sole remedy, AS AGREED LIQUIDATED DAMAGES AND NOT AS A PENALTY, IT BEING AGREED THAT ACTUAL DAMAGES WOULD BE DIFFICULT TO ASCERTAIN AND THAT THE AMOUNT OF THE PERFORMANCE DEPOSIT IS REASONABLE.  Upon any termination of this Agreement, Seller shall be free immediately to enjoy all rights of ownership of the Property and to sell, transfer, encumber, or otherwise dispose of the Property to any party without any restriction under this Agreement.

      **24.**    <u>**Use of Seller Names**</u>.  Buyer agrees that, as soon as practicable after Closing, it will remove or cause to be removed the names and marks of III Exploration II LP and the fictitious name "Petroglyph," or any form or derivative thereof, where and if they exist, and all variations and derivatives thereof and logos relating thereto from the Property and will not thereafter make any use whatsoever of such names, marks, and logos.

      **25.**    <u>**Reserved**</u>.

      **26.**    <u>**Recording Documents Notices**</u>.  Buyer shall pay all documentary, filing, and recording fees incurred in connection with the filing and recording of the instruments of conveyance.  Within sixty (60) days after Closing, Buyer shall provide Seller with recorded copies of all documents conveying the Property to Buyer.

      All notices hereunder shall be sufficiently given for all purposes hereunder if in writing and delivered personally, or to the extent receipt is confirmed by the Party charged with notice, sent by documented overnight delivery service, by United States Mail, or email (with a copy to follow the next Business Day by overnight courier) to the appropriate address or number as set forth below.  Notices to Seller or Buyer shall be addressed to:

<u>SELLER</u>

III Exploration II LP
960 Broadway Avenue,
Suite 500,
Boise, Idaho 83706
Attn:  Paul R. Powell
Phone: 208-685-7685
Email: ppowell@pegi.com

With a copy to:

Cohne Kinghorn, P.C.
George Hofmann
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Phone: 801-363-4300
E-mail: ghofmann@cohnekinghorn.com

<u>BUYER</u>

Crescent Point Energy U.S. Corp.
555 17th Street, Suite 1800
Denver, Colorado 80202
Attn:  Anthony Baldwin
Manager Land & Business Development
Phone: (720) 880-3610
Email:  abaldwin@crescentpointenergy.com

With a copy (which shall not constitute
notice) to:

Davis Graham & Stubbs, LLP
1550 17th Street, Suite 500
Denver, CO 80202
Attn: Lamont C. Larsen
Phone: (303) 892-7473
E-mail: Lamont.Larsen@dgslaw.com

**27.    Entire Agreement**.  This instrument states the entire agreement and supersedes all prior agreements (except the Confidentiality Agreement) between the Parties concerning the subject matter hereof.  This Agreement may be supplemented, altered, amended, modified, or revoked only by a writing signed by both Parties.

**28.    Counterparts**.  This Agreement may be executed by Buyer and Seller in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute one and the same instrument. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be executed and delivered by facsimile transmission or other electronic copy, and a facsimile or electronic copy of this Agreement or of a signature of a Party will be effective as an original.

**29.    Time of Essence**.  Time is of the essence in this Agreement.

**30.    Announcements; Disclosures**.  Except as may be required or contemplated by applicable Laws, rules, regulations and Orders (including those of any Governmental Authority having jurisdiction over Seller or Buyer, as the case may be) or the applicable rules and regulations of any Governmental Authority or stock exchange, neither Buyer nor Seller shall issue any press release or other publicity with respect to this Sale Transaction at any time without the prior written consent of the other Party, which consent, may be withheld in the sole discretion of the other Party.  The opinion of counsel of either Party shall be conclusive evidence of such requirement or contemplation of applicable Laws, rules, regulations, and Orders.  Without limitation of the foregoing, Buyer shall not disclose the terms or existence of this Agreement to any person or entity without the prior written consent of Seller.

**31.    Waiver**.  Any of the terms, provisions, covenants, representations, warranties, or conditions hereof may be waived only by a written instrument executed by the Party waiving compliance.  The failure of any Party at any time or times to require performance of any provisions hereof shall in no manner affect such Party's right to enforce the same.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

**32.    Governing Law**.  THIS AGREEMENT SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR PRINCIPLE THAT

*Purchase and Sale Agreement*

MIGHT APPLY THE LAW OF ANOTHER JURISDICTION.   THE ASSIGNMENT
DOCUMENTS, AND ANY OTHER INSTRUMENTS OF CONVEYANCE EXECUTED
UNDER THIS AGREEMENT, WILL BE GOVERNED BY AND MUST BE CONSTRUED
ACCORDING TO THE LAWS OF THE STATE WHERE THE PROPERTY TO WHICH
THEY PERTAIN IS LOCATED, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR
PRINCIPLE THAT MIGHT APPLY THE LAW OF ANOTHER JURISDICTION.

**33.** **Venue and Jurisdiction**.

(a)     Without limiting any Party's right to appeal any Order of the Bankruptcy
Court, the Parties expressly consent to (a) exclusive jurisdiction of the Bankruptcy Court over
any dispute (i) arising out of or relating to this Agreement, or (ii) in connection with the Sale
Transaction, and (b) the authority of the Bankruptcy Court to adjudicate any dispute (i) arising
out of or relating to this Agreement, or (ii) in connection with the Sale Transaction.  In the event
the Bankruptcy Court does not have jurisdiction over a dispute that arises under this Agreement,
or for whatever reason fails or refuses to take jurisdiction over any other dispute arising
hereunder or in connection with the Sale Transaction then, except as otherwise expressly set
forth in this Agreement and to the fullest extent permitted by applicable Law, the Parties hereby
agree to submit all Actions arising hereunder and not otherwise resolved by the Parties in writing
to the exclusive jurisdiction of the appropriate State of Utah court located in Salt Lake County,
Utah or, to the extent permitted by Law, the federal courts in the District of Utah (to whose
jurisdiction the Parties hereby irrevocably, unqualifiedly and unconditionally submit), and to any
appellate court from any therefrom, in any dispute arising out of or relating to this Agreement,
and each Party hereby irrevocably, unqualifiedly and unconditionally agrees that all Actions in
respect of any such dispute may be heard and determined in such State of Utah court, or to the
extent permitted by law, in such federal court. Each of the Parties hereby irrevocably,
unqualifiedly and unconditionally waives, to the fullest extent it may effectively do so, any
defense of any inconvenient forum or improper venue to the maintenance of any such dispute in
any such court and any right of jurisdiction on account of its place of residence or domicile.
Each of the Parties irrevocably, unqualifiedly and unconditionally consents to the service of any
and all process in any such dispute in such State of Utah or federal court by the sending of such
process to each of the applicable Parties at the addresses and in the manner specified in Section
26, or as otherwise may be permitted or required by Law. The Parties shall be bound by a Final
Order in any such dispute, following exhaustion of all remedies by appeal, which Final Order
shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any
other manner provided by applicable law.

(b)     EACH OF THE PARTIES HEREBY WAIVES ITS RIGHT TO TRIAL
BY JURY IN ANY DISPUTE ARISING HEREUNDER AND CONSENTS TO TRIAL
WITHOUT A JURY, AS EVIDENCED BY ITS EXECUTION AND DELIVERY OF THIS
AGREEMENT.

**34.** **Legal Fees**.  The prevailing Party in any legal proceeding brought under or to
enforce this Agreement shall be additionally entitled to recover court costs and reasonable
attorneys' fees from the non-prevailing Party.

35. **Interpretation of Agreement**. In construing this Agreement, the following principles shall be followed:

(a) no consideration shall be given to the fact or presumption that one Party had a greater or lesser hand in drafting this Agreement;

(b) examples shall not be construed to limit, expressly or by implication, the matter they illustrate;

(c) the word "includes" and its syntactical variants mean "includes, but is not limited to" and corresponding syntactical variant expressions;

(d) a defined term has its defined meaning throughout this Agreement, regardless of whether it appears before or after the place in this Agreement where it is defined;

(e) unless otherwise specified, the plural shall be deemed to include the singular, and vice versa; and

(f) each gender shall be deemed to include the other genders.

36. **Agreement for the Parties' Benefit Only**. This Agreement is not intended to confer upon any person not a party hereto any rights or remedies hereunder, and no person other than the Parties hereto is entitled to rely on any representation, covenant, or agreement contained herein.

37. **Severability**. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any rule of Law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner to any Party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

38. **Assignment and Binding Effect**. This Agreement or any portion thereof and the rights and obligations hereunder shall not be assignable or delegable by either Party without the prior written consent of the other Party. Except as provided in the preceding sentence, the terms, provisions, covenants, representations, and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties hereto and their successors.

39. **Bonds**. Prior to Closing, Buyer shall take such actions as may be necessary or appropriate so that all surety bonds, guaranties, and cash collateral listed on Schedule 39 will be released and replaced immediately after Closing with comparable surety bonds, guaranties, and cash collateral from Buyer or an Affiliate of Buyer. Buyer shall promptly reimburse Seller for any losses or costs incurred by Seller in connection with such surety bonds, guaranties, or cash collateral after Closing.

*Purchase and Sale Agreement*

**40.**   <u>**Exclusive Remedy**</u>.   THE PARTIES HAVE VOLUNTARILY AGREED TO DEFINE THEIR RIGHTS, LIABILITIES AND OBLIGATIONS RESPECTING THE SUBJECT MATTER OF THIS AGREEMENT EXCLUSIVELY IN CONTRACT PURSUANT TO THE EXPRESS TERMS AND PROVISIONS OF THIS AGREEMENT, AND, WITHOUT LIMITING THE RIGHT OF ANY PARTY TO RELY ON THE REPRESENTATIONS AND WARRANTIES MADE TO SUCH PARTY IN <u>SECTION 6</u> OR <u>SECTION 7</u>, AS APPLICABLE (SUBJECT TO THE EXPRESS TERMS OF THIS AGREEMENT AS TO THE SURVIVAL THEREOF), THE PARTIES EXPRESSLY DISCLAIM THAT THEY ARE OWED ANY DUTIES OR ARE ENTITLED TO ANY REMEDIES NOT EXPRESSLY SET FORTH IN THIS AGREEMENT.   FURTHERMORE, THE PARTIES EACH HEREBY ACKNOWLEDGE THAT THIS AGREEMENT EMBODIES THE JUSTIFIABLE EXPECTATION OF SOPHISTICATED PARTIES DERIVED FROM ARM'S LENGTH NEGOTIATIONS, AND ALL PARTIES TO THIS AGREEMENT SPECIFICALLY ACKNOWLEDGE THAT NO PARTY HAS ANY SPECIAL RELATIONSHIP WITH ANOTHER PARTY THAT WOULD JUSTIFY ANY EXPECTATION BEYOND THAT OF AN ORDINARY BUYER AND AN ORDINARY SELLER IN AN ARM'S LENGTH TRANSACTION.   THE SOLE AND EXCLUSIVE REMEDY FOR ANY BREACH OF THE TERMS AND PROVISIONS OF THIS AGREEMENT (INCLUDING ANY REPRESENTATIONS AND WARRANTIES SET FORTH HEREIN, SUBJECT TO THE EXPRESS TERMS OF THIS AGREEMENT AS TO THE SURVIVAL THEREOF) SHALL BE THOSE RIGHTS TO INDEMNIFICATION AND THOSE REMEDIES PROVIDED IN THIS AGREEMENT (AS SUCH RIGHTS TO INDEMNIFICATION AND REMEDIES MAY BE FURTHER LIMITED OR EXCLUDED PURSUANT TO THE EXPRESS TERMS OF THIS AGREEMENT), AND, WITHOUT LIMITING THE RIGHT OF ANY PARTY TO RELY ON THE REPRESENTATIONS AND WARRANTIES MADE TO SUCH PARTY IN <u>SECTION 6</u> OR <u>SECTION 7</u> HEREIN (SUBJECT TO THE EXPRESS TERMS OF THIS AGREEMENT AS TO THE SURVIVAL THEREOF), THE PARTIES HEREBY WAIVE AND RELEASE ANY AND ALL TORT CLAIMS AND CAUSES OF ACTION THAT MAY BE BASED UPON, ARISE OUT OF OR RELATE TO THIS AGREEMENT, OR THE NEGOTIATION, EXECUTION OR PERFORMANCE OF THIS AGREEMENT (INCLUDING ANY TORT CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO ANY REPRESENTATION OR WARRANTY MADE IN OR IN CONNECTION WITH THIS AGREEMENT OR AS AN INDUCEMENT TO ENTER INTO THIS AGREEMENT). WITHOUT LIMITATION OF THE FOREGOING, FROM AND AFTER THE CLOSING, THE SOLE AND EXCLUSIVE REMEDY OF BUYER FOR ANY AND ALL (A) CLAIMS RELATING TO ANY REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS CONTAINED IN THIS AGREEMENT (SUBJECT TO THE EXPRESS TERMS OF THIS AGREEMENT AS TO THE SURVIVAL THEREOF), (B) OTHER CLAIMS PURSUANT TO OR IN CONNECTION WITH THIS AGREEMENT AND (C) OTHER CLAIMS RELATING TO THE PROPERTY AND THE PURCHASE AND SALE THEREOF SHALL BE (1) ANY RIGHT TO INDEMNIFICATION FROM SUCH CLAIMS OR REMEDIES THAT ARE EXPRESSLY PROVIDED IN THIS AGREEMENT (AS SUCH RIGHT TO INDEMNIFICATION OR REMEDIES MAY BE FURTHER LIMITED OR EXCLUDED PURSUANT TO THE EXPRESS TERMS OF THIS AGREEMENT), AND IF NO SUCH RIGHT TO INDEMNIFICATION OR REMEDY IS EXPRESSLY PROVIDED HEREIN, THEN SUBJECT TO THE FOLLOWING SUB-CLAUSE (2), SUCH CLAIMS ARE

HEREBY WAIVED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AND (2) THE RIGHT TO SEEK AN INJUNCTION OR INJUNCTIONS TO PREVENT BREACHES OF THE TERMS OF THIS AGREEMENT OR SPECIFIC PERFORMANCE OF THE TERMS HEREOF, IN EACH CASE, FROM A COURT OF COMPETENT JURISDICTION.

**41.** <u>**Survival of Representations and Warranties**</u>. The representations and warranties of Seller in this Agreement, other than <u>Sections 6(b)</u> and <u>6(c)</u> of this Agreement, shall not survive the Closing.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

"Seller"

III EXPLORATION II LP
By: Petroglyph Energy, Inc., its general partner


By:_____
Name: Paul R. Powell
Title: President


"Buyer"

CRESCENT POINT ENERGY U.S. CORP.


By: _____
Name: _____
Title: _____

## LIST OF SCHEDULES AND EXHIBITS

**Schedules:**

Schedule 6(d)  Scheduled Consents
Schedule 6(i)   Description of Claims
Schedule 6(j)   Production Matters
Schedule 6(l)   Seller's Knowledge Personnel
Schedule 6(o)  Received Orders
Schedule 6(q)  Outstanding AFEs, Cash Calls, Elections or Proposals
Schedule 6(s)  Preferential Purchase Rights
Schedule 6(t)   Non-Consent Operations
Schedule 6(u)  Unpaid Working Interest and Notice of Suspense
Schedule 6(v)  Suspended Funds
Schedule 7(m) Buyer's Knowledge Personnel
Schedule 9      Pre-Closing Operations
Schedule 39     Bonds


**Exhibits:**

A        Definitions
B-1     Oil and Gas Interests - Leases
B-2     Oil and Gas Interests - Wells
C        Oil and Gas Permits - Rights of Way
D        Excluded Rights and Interests
E        Allocated Values
F        Assignment, Assumption Agreement, and Bill of Sale
G        Form of Closing Statement
H        Non-Foreign Person Affidavit
I         Contracts to be Assumed and Assigned with Cure Costs
J         List of Contracts

## Exhibit A

**Section 1.1     Definitions**. The following terms, when used in this Agreement and the attached schedules and exhibits, shall have the meanings given below.

"AAA" is defined in Section 5(f).

"Accounting Referee" is defined in Section 16(b).

"Action" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"Adjustment Escrow Amount" is defined in Section 15(g).

"AFE" means any authorization for expenditure with respect to the Property.

"Affiliate" means, with respect to any specified Person, any other Person that directly or indirectly controls, is controlled by or is under common control with such specified Person. For the purposes of this definition, the term "control," when used with respect to any specified Person, means the power to direct or cause the direction of the management or policies of such Person, directly or indirectly, whether through the ownership of voting securities, by Contract or otherwise; and the terms "controlling" and "controlled" have correlative meanings.

"Aggregate Title Defect Deductible" is defined in Section 5(e).

"Agreement" is defined in the preamble.

"Assignment" means the Assignment, Assumption Agreement, and Bill of Sale attached hereto as Exhibit F.

"Assumed Contracts" is defined in Section 1(b).

"Bankruptcy Case" is defined in Recital A.

"Bankruptcy Code" is defined in Recital A.

"Bankruptcy Court" is defined in Recital A.

"Base Purchase Price" is defined in Section 4(a).

"Business Day" means any day other than a Saturday, a Sunday or other day on which commercial banks in Salt Lake City, Utah are authorized or required by Law to close.

"Buyer" is defined in the preamble.

"Buyer's Assumed Obligations" is defined in Section 19(a).

"Buyer's Knowledge" is defined in Section 7(m).

"Casualty Loss" is defined in <u>Section 13(e)</u>.

"Claims" means a claim as such term is defined in section 101(5) of the Bankruptcy Code, and any and all demands, losses, liabilities, damages, obligations, expenses, fines, penalties, costs, claims, causes of action and judgments for: (a) breaches of Contract; (b) loss or damage to property, injury to or death of persons (including illness and disease), and other tortious injury; or (c) violations of applicable Laws, Orders or any other legal right or duty actionable at law or equity. The term "Claims" also includes reasonable attorneys' fees, court costs, and other reasonable costs resulting from the investigation or defense of any Claim.

"Closing" and "Closing Date" are defined in <u>Section 14</u>.

"Confidentiality Agreement" means that certain Confidentiality Agreement between Seller and Buyer, dated September 7, 2016.

"Contract" means any contract, agreement, indenture, note, bond, loan, lease, sublease, conditional sales contract, mortgage, license, sublicense, franchise agreement, obligation, promise, undertaking, commitment or other binding arrangement (in each case, whether written or oral), but expressly excluding the Leases.

"Critical Mineral Interest Payments Order" means (a) that certain Final Order Authorizing Critical Mineral Interest Payments entered by the Bankruptcy Court on August 17, 2016, and (b) that certain Order Authorizing Additional Critical Mineral Interest Payments entered by the Bankruptcy Court on November 10, 2016, as they may be amended or supplemented by subsequent Orders entered by the Bankruptcy Court.

"Cure Costs" means the amounts and obligations, including pre-petition monetary liabilities, of Seller that must be paid or otherwise satisfied to cure, pursuant to section 365 of the Bankruptcy Code, all of Seller's obligations under each Assumed Contract at the time of the assumption thereof, in each case as determined by the Bankruptcy Court or as agreed by Seller and the non-debtor party to any such Assumed Contract.

"Current Tax Period" is defined in <u>Section 17</u>.

"Defensible Title" means the title which, as of the Effective Date through the Closing and subject to any Permitted Encumbrances: (a) entitles Seller to a Net Revenue Interest for each Well which is not less than the Net Revenue Interest set forth for such Well in <u>Exhibit B-2</u>, except for any decrease (i) caused by Orders of the appropriate Governmental Authority having jurisdiction that are promulgated after the Execution Date that concern pooling, unitization, communization or spacing matters, (ii) caused by Buyer, its successors or assigns, or (iii) caused by any non-consent election made by Seller after the Execution Date with respect to the drilling of a new Well in accordance with this Agreement; (b) obligates Seller for each Well, to bear a Working Interest for such Well which is not more than the Working Interest set forth for such Well in <u>Exhibit B-2</u>, except for any increase (i) caused by Buyer, its successors or assigns, (ii) that also results in at least a proportional increase in the Net Revenue Interest associated with the Well, or (iii) caused by Orders of the appropriate Governmental Authority having jurisdiction that are promulgated after the Execution Date that concern pooling, unitization, communization or spacing matters; and (c) is free and clear of all Encumbrances.

"DIP Facility" means the postpetition financing, which consists of a revolving credit loan facility of up to four million dollars ($4,000,000.00) pursuant to (i) the terms of the Final Order approving DIP Financing filed in the Bankruptcy Case, available at Docket No. 89, (the "Final DIP Order"), and (ii) that certain Post-Petition Superpriority Credit Agreement, dated as of August 17, 2016 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"), by and among the Seller, the DIP Guarantor, Wilmington Trust, National Association as administrative agent and collateral agent (in such capacities, the "DIP Agent"), and the other financial institutions party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined in the Final DIP Order) or Lender Party Swap Obligations (as defined in the Final DIP Order) are owed, the "DIP Secured Parties," each a "DIP Secured Party").

"Easements and Surface Rights" is defined in the definition of "Oil and Gas Interests" in this Exhibit A.

"Effective Date" is defined in the first paragraph following Recital H.

"Environmental Law" means any Law relating to the control of any pollutant or protection of the air, water, land or environment or the release or disposal of hazardous materials, hazardous substances or waste materials.

"Equipment" is defined in the definition of "Oil and Gas Interests" in this Exhibit A.

"Escrow Agent" means Cohne Kinghorn, P.C. IOLTA Trust Account.

"Escrow Agreement" means the Escrow Agreement dated October 27, 2016 between the Seller and Cohne Kinghorn, P.C., as Escrow Agent.

"Escrow Funds" is defined in Section 4(c).

"Excluded Assets" means: (i) all of Seller's corporate minute books and corporate financial records that relate to Seller's business generally; (ii) all trade credits, all accounts, receivables and all other proceeds, income or revenues attributable to the Property with respect to any period of time prior to the Effective Date; (iii) all Claims and causes of action of Seller arising under or with respect to any Contracts included in the Oil and Gas Interests that are attributable to periods of time prior to the Effective Date (including Claims for adjustments or refunds); (iv) all rights and interests of Seller under any policy or agreement of insurance, under any bond, or to any insurance or condemnation proceeds or awards arising, in each case, from acts, omissions or events, or damage to or destruction of property; (v) all Claims of Seller for refunds of, credits attributable to, or loss carry forwards with respect to Taxes attributable to any period (or portion thereof) prior to the Effective Date; (vi) all documents and instruments of Seller that are protected by legal privilege (except for title opinions); (vii) all data and Contracts that cannot be disclosed to Buyer as a result of confidentiality arrangements under agreements with third parties; (viii) all audit rights arising under any of the Contracts or otherwise with respect to any period prior to the Effective Date; (ix) all geophysical and other seismic and related technical data and information relating to the Property; (x) all causes of action under Chapter 5 of the Bankruptcy Code; and (xi) any assets described in Exhibit D.

"<u>Execution Date</u>" is defined in the preamble.

"<u>Final Order</u>" means an Order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any appeal, petition for *certiorari*, reargument, or rehearing shall have been waived in writing in form and substance reasonably satisfactory to Seller and Buyer, or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such Order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such Order was appealed, or *certiorari*, reargument, or rehearing shall have been denied or resulted in no modification of such Order and the time to take any further appeal, petition for *certiorari*, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or applicable state court rules of civil procedure may be, but has not been, filed with respect to such Order shall not cause such Order not to be a Final Order.

"<u>Final Purchase Price</u>" is defined in <u>Section 16(f)</u>.

"<u>Final Settlement Statement</u>" is defined in <u>Section 16(e)</u>.

"<u>First Lien Credit Agreement</u>" means the Credit Agreement dated as of February 19, 2013 among the Seller, the financial institutions party thereto (the "<u>First Lien Lenders</u>"), Citibank N.A. as Syndication Agent and KeyBank National Association as Administrative Agent, later succeeded by Wilmington Trust, National Association as Successor Administrative Agent for the First Lien Lenders (the "<u>First Lien Agent</u>"), as so amended and as the same may be further amended, restated, supplemented or otherwise modified from time to time.

"<u>Free and Clear</u>" means free and clear of all liens, Claims, causes of action, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitations on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in the Bankruptcy Case, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of Seller (and all related expenses and charges) of any type under, among other things, any document, instrument, Contract, affidavit, matter filed of record, cause, or Law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order, to the fullest extent provided by applicable Law.

"<u>Governmental Authority</u>" and "<u>Governmental Authorities</u>" means (a) any federal, provincial, state, local, municipal, national or international government or governmental authority, regulatory or administrative agency, governmental commission, department, board, bureau, agency or instrumentality, court, tribunal, arbitrator or arbitral body (public or private); (b) any self-regulatory organization; (c) any political subdivision of any of the foregoing; (d) or any applicable tribal authority whose consent or approval to a transaction hereunder is required.

"Government Taking" is defined in Section 13(e).

"Hard Consent" is defined in Section 13(j).

"Hydrocarbons" means oil, gas, minerals, and other gaseous and liquid hydrocarbons, or any combination of the foregoing, produced from and attributable to the Oil and Gas Interests.

"Imbalances" means over-production or under-production or over-deliveries or under-deliveries with respect to Hydrocarbons produced from or allocated to the Oil and Gas Interests, regardless of whether such over-production or under-production or over-deliveries or under-deliveries arise at the wellhead, pipeline (taking into account any line fill), gathering system, transportation system, processing plant, or other location.

"Individual Defect Title Deductible" is defined in Section 5(e).

"Law" means any law, statute, ordinance, code, regulation, rule, decree, treaty, directive, policy, Order or other requirement of any Governmental Authority.

"Leases" means (i) all oil, gas and mineral leases in which Seller holds any right, title, or interest of any kind, together with all amendments, extensions, renewals and top leases thereof, (ii) all leasehold, working, carried, force-pooled, non-consent and reversionary interests, operating rights and any interests arising by operation of law, (iii) all fee mineral interests, fee royalty or non-participating royalty interests, overriding royalty interests, net profits interests, production payments and other rights of a similar nature, in each case, including those described in Exhibit B-1, and together with the lands covered thereby or pooled, communitized or unitized therewith.

"Liability" means any and all Claims, rights, demands, causes of action, liabilities (including civil fines), obligations, damages, losses, fines, penalties, sanctions of every kind and character (including reasonable fees and expenses of attorneys, technical experts and expert witnesses), judgments or proceedings of any kind or character whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and whether arising or founded in law, equity, statute, contract, tort, strict liability or voluntary settlement, and all reasonable expenses, costs and fees (including reasonable attorneys' fees) in connection therewith

"Net Revenue Interest" means, for any Well, Seller's aggregate share of the Hydrocarbons produced, saved and marketed therefrom (after satisfaction of all other royalties, overriding royalties, nonparticipating royalties, net profits interests, or other similar burdens on or measured by production of Hydrocarbons).

"non-foreign person" is defined in Section 15(d).

"Oil and Gas Interests" means all of Seller's right, title, and interest in and to the following rights, interests, and assets:

      (i)      The Leases;

(ii)     All rights, obligations and interests in any unit or pooled area in which the Leases or lands are included, including all rights and obligations derived from any unitization, pooling, operating, communitization or other Assumed Contract or from any Order (the "Units")

(iii)    All oil, gas and condensate wells (whether producing, not producing or abandoned), water source, water injection and other injection or disposal wells and systems described on Exhibit B-2 (the "Wells") or located on the Leases or on the lands covered by the Leases or pooled, communitized or unitized therewith, other than leased Equipment located on the Leases;

(iv)     (A) All flow lines, oil, gas, water and other pipelines, gathering systems and related equipment located on the Leases, the Units, or the Permits, Easements and Surface Rights or otherwise associated with the production, gathering, processing or transportation of Hydrocarbons from the Leases, the Wells or the Units, or the gathering, delivery, injection or disposal of water to or from the Leases, the Wells and the Units and (B) all facilities, equipment, compressors, booster stations, field offices, plants, meters, well pads, tank batteries, radio towers, remote terminal units, supervisory control and data acquisition (SCADA) equipment and other similar equipment, personal computer equipment, vehicles, communication equipment, improvements, fixtures, inventory, spare parts, tools, abandoned property and junk and other personal property located on the Leases, the Units, or the Permits, Easements and Surface Rights or otherwise associated with (Y) operations on the Leases, the Units or the Permits, Easements and Surface Rights or (Z) the sale, gathering, compression, processing, transportation of Hydrocarbons from Leases, the Wells and the Units, or the gathering, delivery, injection or disposal of water to or from the Leases, the Wells and the Units, including all off-Lease facilities and other personal property (collectively referred to as the "Equipment");

(v)      All easements, rights-of-way, licenses, permits, servitudes, surface leases, surface use agreements, surface fee tracts, and similar rights, obligations and interests, whether located on the Leases or on other property,  applicable to or used in operating the Leases, Units, Wells, or Equipment (the "Easements and Surface Rights"), including those described on Exhibit C;

(vi)     To the extent transferable, all Permits pertaining to the ownership or operation of the Leases, Units, Wells, Equipment, and Easements and Surface Rights;

(vii)    All lease files, right-of-way files, well files (including well logs), production records, division order files, abstracts, title opinions, and Contract files and reservoir and field studies related to any or all of the Leases, Units, Wells, Equipment, Permits, Easements and Surface Rights, and Assumed Contracts, and all other tangibles, movables, immovables, miscellaneous interests or other assets on the Leases or Units; and

(viii)   To the extent transferable without payment (unless Buyer makes such payment), all (i) seismic, geological, geochemical, or geophysical data (including cores and other physical samples or materials from wells or tests) belonging to Seller or

licensed from third parties, and (ii) interpretations of seismic, geological, geochemical or geophysical data belonging to Seller or licensed from third parties, in each case to the extent pertaining to the Leases, Units or Wells.

"Order" means any writ, judgment, decree, injunction or similar order, writ, ruling directive or other requirement of the Bankruptcy Court or Governmental Authority (in each such case whether preliminary or final).

"Outside Date" is defined in Section 23.

"Party" or "Parties" is defined in Recital C.

"Performance Deposit" is defined in Section 4(c).

"Permits" is defined in Section 6(n).

"Permitted Encumbrances" means:

(a)     any obligations or duties reserved to or vested in any Governmental Authority to regulate or control the Property in any manner;

(b)     the terms and conditions of the Leases and the Assumed Contracts, but only to the extent they do not, individually or in the aggregate, (1) operate to reduce Seller's Net Revenue Interest in any Well below that shown in Exhibit B-2, or increase Seller's Working Interest in any Well above that shown in Exhibit B-2 without a proportionate increase in the Net Revenue Interest, or (2) adversely affect the ownership and/or operation of the affected Oil and Gas Interest in any material respect;

(c)     (i) any consents that do not constitute Hard Consents and (ii) Hard Consents with respect to which waivers or consents have been obtained from the appropriate party;

(d)     Easements and Surface Rights and other similar rights on, over, or in respect of any of the Property;

(e)     lessor's royalties, overriding royalties, production payments, net profits interests, reversionary interests, and similar burdens with respect to a Well if the net cumulative effect of such burdens does not operate to reduce Seller's Net Revenue Interest in such Well below that shown in Exhibit B-2, or increase Seller's Working Interest in such Well above that shown in Exhibit B-2 without a proportionate increase in the Net Revenue Interest;

(f)     liens or other encumbrances for ad valorem, property, production, severance, excise, and similar Taxes that accrue on or after the Effective Date;

(g)     materialman's, mechanic's, repairman's, employee's, contractor's, operator's, and other similar liens or encumbrances arising in the ordinary course of

business for payments or obligations not yet due or that are contained in joint operating agreements covering any Oil and Gas Interest;

(h)     (x) defects in the chain of title arising from the failure to recite marital status, omissions of successors or heirship, or the lack of probate proceedings and (y) defects arising out of lack of corporate or other entity authorization, in each case, unless Buyer provides reasonable evidence that the defect results in a third party's claim of title to the affected Oil and Gas Interest;

(i)     defects or irregularities of title as to which the relevant statute of limitation or prescription would bar any attack or claim against Seller's title;

(j)     conventional rights of reassignment obligating Seller to reassign its interest in any portion of the Leases to a third party upon surrender or abandonment of any Property; and

(k)     subject to Seller's obligations under <u>Section 13(i)</u>, Preferential Purchase Rights.

"<u>Person</u>" means any natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, joint venture, business enterprise, trust or other legal entity, including any Governmental Authority.

"<u>Preferential Purchase Right</u>" means any option, right of first refusal, or similar preferential purchase right burdening any of the Oil and Gas Interests.

"<u>Property</u>" is defined in <u>Section 1</u>.

"<u>Property Costs</u>" means all operating, production, development, and maintenance expenses and capital expenditures directly attributable to the Property incurred in the ordinary course of business, this Agreement and applicable operating agreements and Contracts, including any rentals, royalties, and general, administrative or overhead costs payable to third parties under such operating agreements and Contracts; *provided* that "Property Costs" shall not include (a) any Taxes or Casualty Losses or (b) any general, administrative or overhead costs of Seller (other than costs that can be customarily charged as direct expenses under applicable joint operating agreements), or amounts incurred to cure or attempting to cure any title or environmental defects and, in the case of this clause (b), such costs and expenses shall constitute Seller Retained Obligations.

"<u>Purchase Price</u>" is defined in <u>Section 4(b)</u>.

"<u>Records</u>" is defined in <u>Section 8(a)</u>.

"<u>Retained Purchase Price</u>" is defined in <u>Section 13(f)</u>.

"<u>Royalty Owners</u>" is defined in <u>Section 18(b)</u>.

"Sale Order" means an Order of the Bankruptcy Court approving the transaction contemplated by this Agreement, which Order must be reasonably acceptable in form and substance to the Parties, the First Lien Agent, the First Lien Lenders, and the DIP Secured Parties and not inconsistent with the terms of this Agreement and which (i) approves the Sale Transaction contemplated hereby and the terms and conditions of this Agreement, (ii) finds that notice of the hearing concerning approval of this Agreement and of the Sale Transaction was given in accordance with the Bankruptcy Code and constitutes such notice as is appropriate under the particular circumstances, (iii) finds that Buyer is a "good faith" purchaser entitled to the protections afforded by section 363(m) of the Bankruptcy Code, (iv) provides that the Sale Transaction is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code, and (iii) provides for the vesting of the Property in Buyer, in each case, Free and Clear (except for Permitted Encumbrances and Buyer's Assumed Obligations).

"Sale Transaction" is defined in Recital B.

"Scheduled Consents" is defined in Section 6(d).

"Seller" is defined in the preamble.

"Seller-Operated" means operations by Seller or an Affiliate of Seller.

"Seller Parties"  means Seller and its Affiliates, and the directors, officers, employees, agents and representatives of each of them.

"Seller Retained Obligations" is defined in Section 19(c).

"Seller's Knowledge" is defined in Section 6(l).

 "Suspended Funds" is defined in Section 17(c).

"Title Arbitrator" is defined in Section 5(f).

"Title Defect" is defined in Section 5.

"Title Dispute" is defined in Section 5(f).

"Transfer Taxes" is defined in Section 17(b).

"Taxes" means any income taxes or similar assessments or any sales, excise, occupation, use, ad valorem, property, production, severance, transportation, employment, payroll, franchise, or other tax imposed by any federal, state, or local taxing authority, including any interest, penalties, or additions attributable thereto.

"Units" is defined in the definition of "Oil and Gas Interests" in this Exhibit A.

"Wells" is defined in the definition of "Oil and Gas Interests" in this Exhibit A.

"<u>Working Interest</u>" means, for any Well, that share of costs and expenses associated with the exploration, maintenance, development and operation of such Well that Seller is required to bear and pay.

| Lease Number | Lessor Name | GMA | NMA | WI | Legal Description | County | State | Book | Page | Entry |
|---|---|---|---|---|---|---|---|---|---|---|
| USA UTU-73681 | U.S. Department of Interior | 640 | 360 | 0.562500 | T7S R21E SLM<br>SEC 35: ALL | UINTAH | UTAH | 587 | 800 | 94007719 |
| USA UTU-73684 | U.S. Department of Interior | 380.45 | 214.0031 | 0.562500 | T7S R22E SLM<br>SEC 30: W/2 | UINTAH | UTAH | 587 | 804-807 | 94007720 |
| USA UTU-73680 | U.S. Department of Interior | 1280 | 720 | 0.562500 | T72-R21E SLM<br>SEC 25: ALL<br>SEC 26: ALL | UINTAH | UTAH | 587 | 796 | |
| USA U-16551 | U.S. Department of Interior | 240 | 101.25 | 0.421875 | T7S R21E SLM<br>SEC 34: SE/4NW/4, NE/4NW/4, W/2NE/4<br>SEC 27: S/2SE/4 | UINTAH | UTAH | 274 | 462 | |
| USA UTU-75088 | U.S. Department of Interior | 280 | 106.75 | 0.381250 | T10S R18E SLM<br>SEC 29: SW/4<br>SEC 31: N/2SE/4, SW/4SE/4 | UINTAH | UTAH | | | |
| USA UTU-74971 | U.S. Department of Interior | 1039.99 | 396.4962 | 0.381250 | T10S R18E SLM<br>SEC 6: LOT 4 (39.99 NW/4NW/4), SW/4NW/4, S/2<br>SEC 18: ALL | UINTAH | UTAH | 612 | 642 | |
| USA UTU-74408 | U.S. Department of Interior | 480 | 183 | 0.381250 | T10S R18E SLM<br>SEC 19: E/2<br>SEC 30: NE/4 | UINTAH | UTAH | | | |
| USA UTU-74836 | U.S. Department of Interior | 480 | 183 | 0.381250 | T10S R18E SLM<br>SEC 20: W/2<br>SEC 29: NW/4 | UINTAH | UTAH | 656 | 334 | 97006492 |
| STATE OF UTAH ML-45175 | State of Utah | 640 | 244 | 0.381250 | T10S R18E SLM<br>SEC 16: ALL | UINTAH | UTAH | 520 | 595 | 91007809 |
| USA UTU-74407 | U.S. Department of Interior | 320 | 122 | 0.381250 | T10S R18E SLM<br>SEC 17: ALL | UINTAH | UTAH | 762 | 745 | 2001003666 |
| USA UTU-65632 | U.S. Department of Interior | 1238.88 | 297.2324 | 0.239920 | T10S R17E SLM<br>SEC 29: ALL<br>SEC 30: LOTS 1 (NWNW-39.58), 2 (SWNW-39.63),3 (NWSW-39.67), E/2W/2, E/2 | DUCHESNE | UTAH | | | |
| USA UTU-75085 | U.S. Department of Interior | 640 | 244 | 0.381250 | T10S R17E SLM<br>SEC 28: ALL | DUCHESNE | UTAH | | | |
| USA UTU-75086 | U.S. Department of Interior | 800 | 305 | 0.381250 | T10S R17E SLM<br>SEC 31: NE/4<br>SEC 33: ALL | DUCHESNE | UTAH | | | |
| USA UTU-75081 | U.S. Department of Interior | 2184.58 | 832.8711 | 0.381250 | T10S R17E SLM<br>SEC 5: LOTS 1-4, S/2N/2, S/2<br>SEC 6: LOTS 1-7, SE/4NW/4, E/2SW/4, S/2NE/4, SE/4<br>SEC 7: LOTS 1-4, E/2W/2, E/2<br>SEC 8: N/2N/2, SW/4NW/4, W/2SW/4 | DUCHESNE | UTAH | | | |
| USA UTU-56947 | U.S. Department of Interior | 320 | 61 | 0.190625 | T10S R17E SLM<br>SEC 8: E/2SE/4, SW/4SE/4, S/2NE/4, E/2SW/4, SE/4NW/4 | DUCHESNE | UTAH | | | |
| USA UTU-78215 | U.S. Department of Interior | 1320 | 503.25 | 0.381250 | T10S R17E SLM<br>SEC 25: NW/4NE/4<br>SEC 26: ALL<br>SEC 27: ALL | DUCHESNE | UTAH | | | |
| USA UTU-76482 | U.S. Department of Interior | 359.94 | 137.2271 | 0.381250 | T10S R18E SLM<br>SEC 1: LOTS 3, 4, SW/4NE/4, S/2NW/4, SW/4 | UINTAH | UTAH | | | |
| STATE OF UTAH ML-48928 | State of Utah | 600 | 205.7143 | 0.342857 | T8S R22E SLM<br>SEC 10: SE/4NE/4 | DUCHESNE | UTAH | M298 | 422 | 355695 |
| STATE OF UTAH ML-47058 | State of Utah | 546.73 | 153.7678 | 0.281250 | T10S R18E SLM<br>SEC 36: LOTS 1-8, AKA E/2NE/4, SE/4, E/2SW/4, NW/4, W/2NE/4, N/2SW/4 (ALL) | UINTAH | UTAH | | | |
| STATE OF UTAH ML-47059 | State of Utah | 640 | 360 | 0.562500 | T10S R19E SLB&M<br>SEC 32: ALL | UINTAH | UTAH | 606 | 390 | 95006261 |
| USA UTU-43916 | U.S. Department of Interior | 1360 | 405 | 0.297794 | T8S R22E SLM<br>SEC 26: E/2SW/4<br>SEC 33: ALL<br>SEC 34: ALL | UINTAH | UTAH | 767 | 270 | |
| USA U-059 | U.S. Department of Interior | 880 | 247.5 | 0.281250 | T8S R22E SLM<br>SEC 15: N/2SW/4 | UINTAH | UTAH | | | |
| USA UTU-73456 | U.S. Department of Interior | 1239.79 | 697.3819 | 0.562500 | T9S R24E SLM<br>SEC 5: ALL (LOTS 1-4, S/2N/2, S/2)<br>SEC 6: ALL (LOTS 1-7, S/2NE/4, SE/4NW/4, E/2SW/4, SE/4) | UINTAH | UTAH | 593 | 676 | |
| USA UTU-73182 | U.S. Department of Interior | 320 | 180 | 0.562500 | T9S R24E SLM<br>SEC 9: W/2 | UINTAH | UTAH | | | |

| Lease Number | Lessor Name | GMA | NMA | WI | Legal Description | County | State | Book | Page | Entry |
|---|---|---|---|---|---|---|---|---|---|---|
| USA UTU-68620 | U.S. Department of Interior | 1279.3 | 243.8666 | 0.190625 | T10S R18E SLM<br>SEC 3: LOTS 3, 4, S/2NW/4, SW/4<br>SEC 4: LOTS 3, 4, S/2NW/4, SW/4<br>SEC 9: ALL | UINTAH | UTAH | | | |
| USA UTU-81003 | U.S. Department of Interior | 1199.43 | 674.6794 | 0.562500 | T10S R18E SLM<br>SEC 5: LOTS 1 (NENE-39.71), 3 (NENW-39.83), 4 (NWNW-39.89), S/2NW/4,<br>NE/4SW/4, SW/4SW/4, NE/4SE/4, S/2SE/4<br>SEC 7: NE/4<br>SEC 8: ALL | UINTAH | UTAH | | | |
| USA UTU-73687 | U.S. Department of Interior | 1595.48 | 897.4575 | 0.562500 | T8S R22E SLM<br>SEC 11: ALL<br>SEC 14: LOTS 1-4, N/2, N/2S/2 (ALL)<br>SEC 23: W/2 | UINTAH | UTAH | 587 | 812 | |
| USA UTU-73686 | U.S. Department of Interior | 554.91 | 312.1369 | 0.562500 | T8S R22E SLM<br>SEC 10: LOTS 3, 4, N/2SE/4<br>SEC 15: E/2, S/2SW/4 | UINTAH | UTAH | 587 | 888 | |
| USA UTU-73443 | U.S. Department of Interior | 280 | 157.5 | 0.562500 | T7S R22E SLM<br>SEC 12: NE/4, N/2NW/4, SE/4NW/4 | UINTAH | UTAH | 581 | 516 | |
| USA UTU-75243 | U.S. Department of Interior | 670.1 | 376.9313 | 0.562500 | T7S R22E SLM<br>SEC 1: LOTS 1 - 8, S/2N/2, E/2SW/4, SE/4 | UINTAH | UTAH | 620 | 501 | |
| STATE OF UTAH ML-47046 | State of Utah | 586.47 | 98.9668 | 0.168750 | T9S R24E SL&BM<br>SEC 2: ALL | UINTAH | UTAH | 606 | 402 | |
| USA UTU-75087 | U.S. Department of Interior | 1518.48 | 578.9205 | 0.381250 | T11S R17E SLM<br>SEC 1: ALL<br>SEC 11: ALL<br>SEC 13: NW/4, W/2SW/4 | UINTAH | UTAH | | | |
| USA UTU-72109 | U.S. Department of Interior | 160 | 20.25 | 0.126563 | T8S R25E SLM<br>SEC 4: E/2SW/4<br>SEC 9: N/2NW/4 | UINTAH | UTAH | 344 | 26 | |
| USA UTU-78029 | U.S. Department of Interior | 640 | 306.576 | 0.479025 | T8S R24E<br>SEC 32: ALL | UINTAH | UTAH | 697 | 305 | |
| USA UTU-75116 | U.S. Department of Interior | 1880 | 1057.5 | 0.562500 | T8S R24E SLM<br>SEC 14: SW/4, W/2SE/4, SE/4SE/4<br>SEC 21: ALL<br>SEC 22: S/2<br>SEC 23: SW/4NE/4, S/2NW/4, SW/4, N/2SE/4, SE/4SE/4<br>SEC 24: S/2NW/4, SW/4 | UINTAH | UTAH | 615 | 594 | |
| USA U-058 | U.S. Department of Interior | 80 | 18 | 0.225000 | T8S R22E SLM<br>SEC 15: N/2SW/4 | UINTAH | UTAH | 365 | 750 | |
| USA UTU-43915 | U.S. Department of Interior | 227.6 | 51.21 | 0.225000 | T8S R22E SLM<br>SEC 9: LOT 6 (SWSE), LOT 7 (SESE), NE/4SE/4<br>SEC 10: LOT 1 (SWSW), NW/4SW/4<br>SEC 15: NW/4NW/4 | UINTAH | UTAH | 365 | 750 | |
| USA UTU-28652 | U.S. Department of Interior | 1280 | 666 | 0.520313 | T8S R22E SLM<br>SEC 21: NW/4, NE/4, S/2SW/4, N/2SE/4, SW/4SE/4<br>SEC 22: NE/4, NE/4NW/4, W/2NW/4, NE/4SE/4<br>SEC 27: SW/4, S/2NE/4, N/2SE/4, NE/4NE/4, SE/4SE/4, SW/4NW/4 | UINTAH | UTAH | 254 | 877 | |
| USA UTU-75103 | U.S. Department of Interior | 40 | 9 | 0.225000 | T8S R22E SLM<br>SEC 20: NE/4SE/4 | UINTAH | UTAH | 615 | 590 | |
| USA UTU-75678 | U.S. Department of Interior | 461.58 | 103.8556 | 0.225000 | T8S R22E SLM<br>SEC 3: LOTS 3 - 6, S/2N/2, N/2N/2<br>SEC 4: LOT 1 | UINTAH | UTAH | 627 | 198 | |
| UTU-0803 | U.S. Department of Interior | 1280 | 144 | 0.112500 | T8S R21E SLM<br>SEC 27: ALL<br>SEC 28: ALL | UINTAH | UTAH | | | |
| USA U-69001 | U.S. Department of Interior | 320 | 72 | 0.225000 | T8S R22E SLM<br>SEC 20: N/2 | UINTAH | UTAH | 360 | 272 | |
| STATE OF UTAH ML-22051 | State of Utah | 400 | 90 | 0.225000 | T8S R21E SLM<br>SEC 36: N/2, N/2SW/4 | UINTAH | UTAH | | | |

| Lease Number | Lessor Name | GMA | NMA | WI | Legal Description | County | State | Book | Page | Entry |
|---|---|---|---|---|---|---|---|---|---|---|
| USA U-9613 | U.S. Department of Interior | 1760 | 198 | 0.112500 | T8S R21E SLM<br>SEC 24: S/2SE/4, SE/4SW/4<br>SEC 25: N/2N/2, SE/4NE/4, SW/4NW/4, SW/4, NW/4SE/4, S/2SE/4<br>SEC 26: N/2, SW/4, N/2SE/4, SW/4SE/4<br>SEC 33: S/2NE/4, NW/4, N/2S/2<br>SEC 34: N/2NE/4, SW/4NE/4, NE/4NW/4, S/2NW/4<br>SEC 35: SW/4NE/4 | UINTAH | UTAH | | | |
| UTU-9809 | U.S. Department of Interior | 120 | 27 | 0.225000 | T8S R21E SLM<br>SEC 25: NE/4SE/4<br>SEC 33: SW/4SW/4<br>SEC 34: SE/4NE/4 | UINTAH | UTAH | 698 | 746 | |
| USA U-65276 | U.S. Department of Interior | 480 | 108 | 0.225000 | T8S R22E SLM<br>SEC 17: NE/4NE/4, S/2NE/4, SE/4NW/4, S/2 | UINTAH | UTAH | 360 | 272 | |
| USA UTU-02510-A | U.S. Department of Interior | 907.83 | 204.2618 | 0.225000 | T8S R22E SLM<br>SEC 3: S/2S/2<br>SEC 4: LOTS 2 - 11, S/2NE/4, SE/4NW/4, E/2SW/4, SE/4 | UINTAH | UTAH | | | |
| JAMES R BROWN TRUSTEE | | 40 | 9 | 0.225000 | T8S R22E SLM<br>SEC 30: NE/4SW/4 | UINTAH | UTAH | 562 | 626 | |
| USA UTU-74493 | U.S. Department of Interior | 864.42 | 194.4946 | 0.225000 | T8S R22E SLM<br>SEC 19: LOTS 16, 17<br>SEC 20: S/2SE/4<br>SEC 29: LOTS 1, 3-6, E/2SW/4, E/2<br>SEC 30: LOTS 13, 15 | UINTAH | UTAH | 264 | 836 | |
| USA U-65404 | U.S. Department of Interior | 132.99 | 29.9228 | 0.225000 | T8S R22E SLM<br>SEC 19: LOTS 5, 11, 12 | UINTAH | UTAH | 727 | 700 | |
| USA UTU-74496 | U.S. Department of Interior | 120 | 27 | 0.225000 | T8S R22E SLM<br>SEC 17: NW/4NE/4, NE/4NW/4, SW/4NW/4 | UINTAH | UTAH | 360 | 272 | |
| USA UTU-74494 | U.S. Department of Interior | 576.02 | 129.6045 | 0.225000 | T8S R22E SLM<br>SEC 9: LOTS 1-5, E/2NW/4, NE/4SW/4, NW/4SE/4<br>SEC 10: LOT 2, NE/4SW/4<br>SEC 15: NE/4NW/4, S/2NW/4 | UINTAH | UTAH | 365 | 750 | |
| USA U-0971 | U.S. Department of Interior | 160 | 36 | 0.225000 | T8S R22E SLM<br>SEC 9: NE/4 | UINTAH | UTAH | | | |
| STATE OF UTAH ML-22049 | State of Utah | 640 | 144 | 0.225000 | T8S R22E SLM<br>SEC 16: ALL | UINTAH | UTAH | 586 | 508 | |
| USA U-0971-A | U.S. Department of Interior | 160 | 36 | 0.225000 | T8S R22E SLM<br>SEC 10: N/2N/2 | UINTAH | UTAH | | | |
| USA UTU-74495 | U.S. Department of Interior | 262.55 | 59.0738 | 0.225000 | T8S R22E SLM<br>SEC 18: Lot 5 (NESE, 45.06 acres), Lot 11 (SWSE, 43.83 acres), Lot 12 (SESE, 43.52 acres)<br>SEC 19: LOTS Lot 6 (NWNE, 44.78 acres), Lot 9 (SWNW, 44.13 acres), Lot 10 (SENW, 43.91 acres) | UINTAH | UTAH | 727 | 700 | |
| USA U-43918 | U.S. Department of Interior | 120 | 27 | 0.225000 | T8S R22E SLM<br>SEC 10: S/2NW/4, SW/4NE/4 | UINTAH | UTAH | | | |
| USA U-029649 | U.S. Department of Interior | 40 | 9 | 0.225000 | T8S R22E SLM<br>SEC 10: SE/4NE/4 | UINTAH | UTAH | | | |
| USA UTU-9617 | U.S. Department of Interior | 920.66 | 207.1485 | 0.225000 | T8S R22E SLM<br>SEC 19: LOTS 13-15, 18-20<br>SEC 20: SW/4, NW/4SE/4<br>SEC 29: LOT 2<br>SEC 30: LOTS 3, 5-12, 14 | UINTAH | UTAH | 264 | 836 | |
| STATE OF UTAH ML-3085 | State of Utah | 600 | 67.5 | 0.112500 | T8S R22E USM<br>SEC 32: N/2, N/2S/2, S/2SW/4, SW/4SE/4 | UINTAH | UTAH | A51 | 588 | |
| UTSL-071803-A | U.S. Department of Interior | 238.19 | 100.4864 | 0.421875 | T8S R23E<br>SEC 5: LOTS 2-4 SW/4NE/4, S/2NW/4 | UINTAH | UTAH | 1002 | 329 | 2006011331 |
| USA UTU-78021 | U.S. Department of Interior | 960 | 540 | 0.562500 | T9S R15E SLM<br>SEC 34: E/2<br>SEC 35: ALL | DUCHESNE | UTAH | | | |
| STATE OF UTAH ML-46292 | State of Utah | 320 | 180 | 0.562500 | T7S R21E SLB&M<br>SEC 16: E/2 | UINTAH | UTAH | 571 | 662 | |

| Lease Number | Lessor Name | GMA | NMA | WI | Legal Description | County | State | Book | Page | Entry |
|---|---|---|---|---|---|---|---|---|---|---|
| USA UTU-72634 | U.S. Department of Interior | 1760 | 990 | 0.562500 | T9S R23E SLM<br>SEC 10: N/2, N/2SW/4, SE/4<br>SEC 12: E/2NE/4<br>SEC 17: W/2E/2, W/2<br>SEC 26: ALL | UINTAH | UTAH | 566 | 606 | |
| USA UTU-01089 | U.S. Department of Interior | 640 | 360 | 0.562500 | T8S R22E SLM<br>SEC 35: ALL | UINTAH | UTAH | | | |
| USA U-0629 | U.S. Department of Interior | 560 | 315 | 0.562500 | T8S R22E SLM<br>SEC 25: NW/4, W/2SW/4<br>SEC 26: E/2 | UINTAH | UTAH | | | |
| USA U-43917 | U.S. Department of Interior | 320 | 180 | 0.562500 | T8S-22E SLM<br>SEC 23: SE/4<br>SEC 24: SW/4 | UINTAH | UTAH | | | |
| USA UTU-75102 | U.S. Department of Interior | 40 | 22.5 | 0.562500 | T7S R22E SLM<br>SEC  9: SE/4SW/4 | UINTAH | UTAH | 615 | 586 | |
| USA UTU-71416 | U.S. Department of Interior | 1256.26 | 706.6462 | 0.562500 | T7S R22E SLM<br>SEC  7: LOTS 1 - 8, NE/4, E/2W/2, W/2SE/4<br>SEC  8: W/2NW/4<br>SEC 18: LOTS 1 - 8, W/2E/2, E/2W/2 | UINTAH | UTAH | 544 | 836 | |
| USA UTU-76278 | U.S. Department of Interior | 320 | 180 | 0.562500 | T7S R22E SLM<br>SEC  9: N/2 | UINTAH | UTAH | | | |
| STATE OF UTAH ML-47779 | State of Utah | 736.04 | 414.0225 | 0.562500 | T7S R22E SLB&M<br>SEC  2: LOTS 1-8, S/2N/2, S/2 (AKA ALL) | DUCHESNE | UTAH | 1460 | 769 | 2016000132 |
| USA UTU-74423 | U.S. Department of Interior | 720 | 405 | 0.562500 | T7S R22E SLB&M<br>SEC 10: N/2<br>SEC 11: E/2NE/4, S/2 | DUCHESNE | UTAH | | | |
| STATE OF UTAH ML-47000 | State of Utah | 680 | 136 | 0.200000 | T10S R16E SLB&M<br>SEC  6: SE/4NW/4<br>SEC 16: ALL | DUCHESNE | UTAH | | | |
| USA UTU-74968 | U.S. Department of Interior | 1040 | 396.5 | 0.381250 | T10S R17E SLM<br>SEC 13: ALL<br>SEC 23: W/2NW/4, SE/4NW/4<br>SEC 24: N/2NE/4, NW/4, SE/4SE/4 | UINTAH | UTAH | 612 | 629 | |
| USA UTU-75083 | U.S. Department of Interior | 1917.68 | 731.1155 | 0.381250 | T10S R17E SLM<br>SEC 19: LOTS 1-4, E/2W/2, E/2<br>SEC 20: ALL<br>SEC 21: ALL | DUCHESNE | UTAH | | | |
| USA UTU-75084 | U.S. Department of Interior | 680 | 259.25 | 0.381250 | T10S R17E SLM<br>SEC 22: ALL (DUCHESNE COUNTY)<br>SEC 23: NE/4SE/4 (UINTAH COUNTY) | DUCHESNE, UINTAH | UTAH | | | |
| USA UTU-75079 | U.S. Department of Interior | 1000 | 381.25 | 0.381250 | T10S R17E SLM<br>SEC  1: NW/4SW/4, S/2S/2<br>SEC 12: S/2S/2<br>SEC 14: S/2<br>SEC 15: S/2 | DUCHESNE | UTAH | | | |
| USA UTU-77063 | U.S. Department of Interior | 240 | 91.5 | 0.381250 | T10S R17E SLM<br>SEC 12: N/2SW/4, NE/4 | UINTAH | UTAH | 694 | 305 | 99001351 |
| STATE OF UTAH ML-47056 | State of Utah | 640 | 244 | 0.381250 | T10S R17E SLM<br>SEC 32: ALL | DUCHESNE | UTAH | | | |
| USA UTU-75082 | U.S. Department of Interior | 1276.52 | 486.6732 | 0.381250 | T10S R17E SLM<br>SEC 17: ALL<br>SEC 18: LOTS 1-4, E/2W/2, E/2 | DUCHESNE | UTAH | | | |
| USA UTU-78216 | U.S. Department of Interior | 1280 | 488 | 0.381250 | T10S R17E SLM<br>SEC 34: ALL<br>SEC 35: ALL | DUCHESNE | UTAH | | | |
| STATE OF UTAH ML-47057 | State of Utah | 640 | 244 | 0.381250 | T10S R17E SLM<br>SEC 36: ALL | UINTAH | UTAH | | | |
| USA UTU-74401 | U.S. Department of Interior | 840 | 320.25 | 0.381250 | T10S R17E SLM<br>SEC 23: NE/4, NE/4NW/4, SW/4, W/2SE/4, SE/4SE/4<br>SEC 24: S/2NE/4, SW/4, N/2SE/4, SW/4SE/4 | DUCHESNE | UTAH | | | |
| USA UTU-68387 | U.S. Department of Interior | 40 | 15.25 | 0.381250 | T10S R18E SLM<br>SEC  7: SE/4SW/4 | UINTAH | UTAH | | | |
| USA UTU-74402 | U.S. Department of Interior | 160 | 61 | 0.381250 | T10S R17E SLM<br>SEC 31: SE/4 | DUCHESNE | UTAH | | | |

| Lease Number | Lessor Name | GMA | NMA | WI | Legal Description | County | State | Book | Page | Entry |
|---|---|---|---|---|---|---|---|---|---|---|
| USA UTU-75080 | U.S. Department of Interior | 1199.08 | 457.1492 | 0.381250 | T10S R17E SLM<br>SEC 4: LOTS 1-4,S/2N/2, S/2 (ALL)<br>SEC 9: ALL | DUCHESNE | UTAH | | | |
| USA UTU-78214 | U.S. Department of Interior | 1279.68 | 487.878 | 0.381250 | T10S R17E SLM<br>SEC 3: LOTS 1 - 4, S/2N/2, S/2<br>SEC 10: ALL | DUCHESNE | UTAH | | | |
| USA UTU-063150 | U.S. Department of Interior | 4240 | 848 | 0.200000 | T10S R15E, SLM UT<br>SEC 3: S/2NE/4, SE/4<br>SEC 10: E/2<br>SEC 11: S/2<br>SEC 12, 13, AND 14; ALL<br>SEC 23: E/2E/2<br>SEC 24, 25: ALL | DUCHESNE | UTAH | | | |
| USA UTU-064912 | U.S. Department of Interior | 1120 | 224 | 0.200000 | 10S 16E<br>SEC 23: W/2E/2, W/2<br>SEC 29: ALL | DUCHESNE | UTAH | | | |
| USA UTU-074457 | U.S. Department of Interior | 320 | 64 | 0.200000 | T10S R15E, SLM<br>SEC 15: E/2 | DUCHESNE | UTAH | | | |
| USA UTU-074831 | U.S. Department of Interior | 1229.96 | 245.992 | 0.200000 | T10S R16E<br>SEC 5: S/2, S/2N/2, LOTS 1-4<br>SEC 6: S/2NE/4, E/2SW/4, SE/4, LOTS 1-7 | DUCHESNE | UTAH | | | |
| USA UTU-079824 | U.S. Department of Interior | 640 | 128 | 0.200000 | T10S R16E<br>SEC 24: ALL | DUCHESNE | UTAH | | | |
| USA UTU-079820 | U.S. Department of Interior | 560 | 56 | 0.100000 | T10S R15E SLM<br>SEC 21: N/2, SW/4<br>SEC 28: W/2NE/4 | DUCHESNE | UTAH | | | |
| UTU 086333 | U.S. Department of Interior | 80 | 45 | 0.562500 | T07S R21E<br>SEC 22: SE/4NE/4<br>SEC 23: NW/4SW/4 | UINTAH | UTAH | | | |
| UTU 087580 | U.S. Department of Interior | 40 | 22.5 | 0.562500 | T07S R21E<br>SEC 13: SE/4NE/4 | UINTAH | UTAH | | | |
| USA UTU-82705 | U.S. Department of Interior | 160 | 61 | 0.381250 | T10S R18E SLM<br>SEC 20: NE/4 | UINTAH | UTAH | | | |
| USA UTU-84262 | U.S. Department of Interior | 320 | 122 | 0.381250 | T10S R18E SLM<br>SEC 17: N/2 | UINTAH | UTAH | | | |
| USA UTU-84263 | U.S. Department of Interior | 280 | 106.75 | 0.381250 | T10S R18E SLM<br>SEC 19: NW/4, N2SW/4, SE/4SW/4<br>SEC 30: W/2, SE/4<br>SEC 31: N/2, SW/4 | UINTAH | UTAH | | | |
| USA UTU-84264 | U.S. Department of Interior | 160 | 61 | 0.381250 | T10S R18E SLM<br>SEC 20: SE/4 | UINTAH | UTAH | | | |
| USA UTU-84265 | U.S. Department of Interior | 320 | 122 | 0.381250 | T10S R18E USM<br>SEC 21: N/2 | UINTAH | UTAH | | | |
| USA UTU-88068 | U.S. Department of Interior | 600 | 228.75 | 0.381250 | T10S R17E SLM<br>SEC 25: NE/4NE/4, S/2NE/4, W/2, SE/4 | DUCHESNE | UTAH | | | |
| USA UTU-88069 | U.S. Department of Interior | 440 | 167.75 | 0.381250 | T10S R18E SLM<br>SEC 5: NW/4SW/4, NW/4SE/4<br>SEC 7: S/2NW/4, N/2SW/4, SW/4SW/4, SE/4 | UINTAH | UTAH | | | |
| USA UTU-88072 | U.S. Department of Interior | 800 | 305 | 0.381250 | T10S-R18E<br>SEC. 30: S/2<br>SEC. 31: N/2, SW/4 | UINTAH | UTAH | | | |
| USA UTU-88144 | U.S. Department of Interior | 160 | 61 | 0.381250 | T10S R18E SLM<br>SEC 19: NW/4 | UINTAH | UTAH | | | |
| USA UTU-88204 | U.S. Department of Interior | 200 | 76.25 | 0.381250 | T10S R18E SLM<br>SEC 19: SW/4SW/4<br>SEC 21: W/2SW/4<br>SEC 29: N/2NE/4 | UINTAH | UTAH | | | |
| USA UTU-87585 | U.S. Department of Interior | 160 | 61 | 0.381250 | T9S R16E SLM<br>SEC 35: N/2NE/4, SE/4NE/4, NE/4SE/4 | UINTAH | UTAH | | | |
| USA UTU 088047 | U.S. Department of Interior | 1912.88 | 382.576 | 0.200000 | T10S R16E<br>SEC 19: E/2, E/2W/2, LOTS 1-4<br>SEC 30: E/2, E/2W/2, LOTS 1-4<br>SEC 31: E/2, E/2W/2, LOTS 1-4 | DUCHESNE | UTAH | | | |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---------|-----|-------|----------|-----------|--------|-----|-----|-----|--------|-------|-------|--------|-----------|-----------|
| 6019 | 43047305630000 | GAS | ANADARKO | CONOCO FEDERAL 35-5 | NWNW | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 6015 | 43047306430000 | GAS | ANADARKO | DUNCAN FEDERAL 33-9 | SWSE | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.527344 | 0.527344 |
| 7290 | 43047338740000 | GAS | ANADARKO | FEDERAL 33-177 | NWSW | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.527344 | 0.527344 |
| 7025 | 43047333850000 | GAS | ANADARKO | FEDERAL 33-92 | NESW | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.527344 | 0.527344 |
| 7291 | 43047339810000 | GAS | ANADARKO | FEDERAL 35-152 | SWNW | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7139 | 43047338770000 | GAS | ANADARKO | FEDERAL 35-179 | SWNE | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7140 | 43047339180000 | GAS | ANADARKO | FEDERAL 35-190 | NENW | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7024 | 43047333770000 | GAS | ANADARKO | FEDERAL 35-96 | SENW | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 6021 | 43047332870000 | GAS | ANADARKO | GLEN BENCH 12-36 | NWSW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 4.8094 | 4.8094 |
| 7022 | 43047333810000 | GAS | ANADARKO | OURAY 33-90 | SESE | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.527344 | 0.527344 |
| 7336 | 43047332480000 | GAS | ANADARKO | OURAY 35-174 | NENE | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7023 | 43047330530000 | GAS | ANADARKO | OURAY 35-94 | NWNE | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7019 | 43047333970000 | GAS | ANADARKO | OURAY 36-97 | SESE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 4.8094 | 4.8094 |
| 7082 | 43047345050000 | GAS | ANADARKO | STATE 11-36 | NESW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 7020 | 43047326970000 | GAS | ANADARKO | STATE 35-52 | SENE | 35 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 0 | 0.087892 | 0.087892 |
| 7083 | 43047337180000 | GAS | ANADARKO | TRIBAL 36-43 | SWSW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 7289 | 43047345070000 | GAS | ANADARKO | UTE TRIBAL 36-148 | SWSE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 6038 | 43047306820000 | GAS | ANADARKO | UTE TRIBAL 36-17 | NWSE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 6037 | 43047326950000 | GAS | ANADARKO | UTE TRIBAL 36-53 | SESW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 7016 | 43047332930000 | GAS | ANADARKO | UTE TRIBAL 36-65 | NESE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 5.625 | 19.2375 | 19.2375 |
| 7475 | 43047376310000 | GAS | BADLANDS (GASCO) | DESERT SPRINGS FEDERAL 21-1-10-18 | NENW | 1 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 28.125 | 24.328125 | 24.328125 |
| 7390 | 43047349240000 | GAS | BADLANDS (GASCO) | DESERT SPRINGS FEDERAL 22-30-10-18 | SENW | 30 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 0 | 0.42188 | 0.42188 |
| 7210 | 43047339830000 | GAS | BADLANDS (GASCO) | DESERT SPRINGS FEDERAL 24-7-1 | SESW | 7 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 0 | 0.5625 | 0.5625 |
| 7300 | 43047345510000 | GAS | BADLANDS (GASCO) | DESERT SPRINGS FEDERAL 43-24-3 1 | NESE | 24 | 10S | 17E | UINTAH | UT | UTELAND BUTTE | 0 | 0.703125 | 0.703125 |
| 7209 | 43047342860000 | GAS | BADLANDS (GASCO) | PETES WASH 23-12-1 | NESW | 12 | 10S | 17E | UINTAH | UT | UTELAND BUTTE | 0 | 1.6875 | 1.6875 |
| 7529 | 43013326790000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE FEDERAL 23-29-10-17 | NESW | 29 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 4.746 | 4.1528 | 4.1528 |
| 7415 | 43013330810000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE FEDERAL 24-20-10-17 | SESW | 20 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 7.03125 | 5.838281 | 5.838281 |
| 7417 | 43013327730000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE FEDERAL 31-29-10-17 | NWNE | 29 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 0.67675 | 0.592165 | 0.592165 |
| 7463 | 43013330870000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE FEDERAL 32-20-10-17 | SENE | 20 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 7.03125 | 5.838281 | 5.838281 |
| 7432 | 43013325600000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE FEDERAL 34-17-10-17 | SWSE | 17 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 0 | 0.421875 | 0.421875 |
| 7312 | 43013324470000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE STATE 12-32-10-17 | SWNW | 32 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 0 | 0.84375 | 0.84375 |
| 7412 | 43013326760000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE STATE 24-32-10-17 | SESW | 32 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 7.03125 | 6.433594 | 6.433594 |
| 7413 | 43013326770000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE STATE 31-32-10-17 | NWNE | 32 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 7.03125 | 6.433594 | 6.433594 |
| 7416 | 43013327300000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE STATE 34-16-10-17 | SWSE | 16 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 8.57143 | 7.5 | 7.5 |
| 7414 | 43013326190000 | GAS | BADLANDS (GASCO) | WILKIN RIDGE STATE 44-32-10-17 | SESE | 32 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 7.03125 | 6.433594 | 6.433594 |
| 6018 | 43013312880000 | OIL | COCHRANE RES. | FEDERAL 21-29 | NENW | 29 | 10S | 17E | DUCHESNE | UT | EIGHT MILE FLAT | 9.21462 | 8.062792 | 8.062792 |
| 7396 | 43013303270000 | OIL | COCHRANE RES. | WILKIN RIDGE 22-29 | SENW | 29 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 12.81356 | 11.21187 | 11 21187 |
| 7006 | 43047332730000 | GAS | EOG | FEDERAL (N. CHAPITA) 8-34-8-21 | SENE | 34 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.478126 | 9.478126 |
| 7049 | 43047335820000 | GAS | EOG | NORTH CHAPITA 104-33 | SESW | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7008 | 43047334060000 | GAS | EOG | NORTH CHAPITA 106-32 | SENW | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7021 | 43047336280000 | GAS | EOG | NORTH CHAPITA 110-32 | SWSE | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7027 | 43047336830000 | GAS | EOG | NORTH CHAPITA 112-32 | SWNW | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7046 | 43047336840000 | GAS | EOG | NORTH CHAPITA 125-34 | NESE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7047 | 43047342040000 | GAS | EOG | NORTH CHAPITA 13-26-8-22 | SWSW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7030 | 43047338300000 | GAS | EOG | NORTH CHAPITA 134-32 | NESE | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7050 | 43047336690000 | GAS | EOG | NORTH CHAPITA 136-33 | SWSW | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7035 | 43047338580000 | GAS | EOG | NORTH CHAPITA 151-32 | SESW | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7051 | 43047338520000 | GAS | EOG | NORTH CHAPITA 153-33 | SWSE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7052 | 43047338530000 | GAS | EOG | NORTH CHAPITA 154-33 | NWSE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |
| 7053 | 43047338540000 | GAS | EOG | NORTH CHAPITA 155-33 | NESE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24 046875 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7488 | 43047380410000 | GAS | EOG | NORTH CHAPITA 157-34 | NWNE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7095 | 43047340560000 | GAS | EOG | NORTH CHAPITA 159-34 | NENE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7537 | 43047340570000 | GAS | EOG | NORTH CHAPITA 161-34X | NWSE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7045 | 43047334040000 | GAS | EOG | NORTH CHAPITA 16-34-8-22 | SESE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7034 | 43047338590000 | GAS | EOG | NORTH CHAPITA 190-32 | NWSW | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7315 | 43047352550000 | GAS | EOG | NORTH CHAPITA 195-33 | NESE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7200 | 43047346450000 | GAS | EOG | NORTH CHAPITA 196-33 | SENE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7316 | 43047349950000 | GAS | EOG | NORTH CHAPITA 197-32 | NWNW | 32 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.61875 | 9.61875 |
| 7195 | 43047346360000 | GAS | EOG | NORTH CHAPITA 198-28 | NWNW | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7268 | 43047345930000 | GAS | EOG | NORTH CHAPITA 211-28 | SWSW | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7397 | 43047350000000 | GAS | EOG | NORTH CHAPITA 218-34 | SWSW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7403 | 43047355460000 | GAS | EOG | NORTH CHAPITA 224-28 | SWSE | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7311 | 43047355220000 | GAS | EOG | NORTH CHAPITA 226-33 | SWNE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7552 | 43047514030000 | GAS | EOG | NORTH CHAPITA 232-33 | | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 36 | 30.858749 | 30.858749 |
| 7335 | 43047350020000 | GAS | EOG | NORTH CHAPITA 234-34 | SWNW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7400 | 43047350010000 | GAS | EOG | NORTH CHAPITA 235-34 | SWSE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7382 | 43047349990000 | GAS | EOG | NORTH CHAPITA 236-26 | NWNW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7391 | 43047349960000 | GAS | EOG | NORTH CHAPITA 237-26 | NENW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7363 | 43047349980000 | GAS | EOG | NORTH CHAPITA 238-26 | SWNW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7367 | 43047349970000 | GAS | EOG | NORTH CHAPITA 239-26 | SENW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7194 | 43047348830000 | GAS | EOG | NORTH CHAPITA 240-28 | NWNE | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7404 | 43047352560000 | GAS | EOG | NORTH CHAPITA 241-33 | SESE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7401 | 43047355230000 | GAS | EOG | NORTH CHAPITA 252-33 | NWNE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7310 | 43047355210000 | GAS | EOG | NORTH CHAPITA 253-33 | NENE | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7341 | 43047355240000 | GAS | EOG | NORTH CHAPITA 254-34 | NWNW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7362 | 43047354890000 | GAS | EOG | NORTH CHAPITA 255-28 | SESE | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7309 | 43047354880000 | GAS | EOG | NORTH CHAPITA 256-28 | SESW | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7452 | 43047368350000 | GAS | EOG | NORTH CHAPITA 300-26 (NON-CONSENT) | NWSW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7548 | 43047514090000 | GAS | EOG | NORTH CHAPITA 304-28 | SESW | 28 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 36 | 30.858749 | 30.858749 |
| 7549 | 43047514080000 | GAS | EOG | NORTH CHAPITA 306-33 | NESW | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 36 | 30.858749 | 30.858749 |
| 7493 | 43047380460000 | GAS | EOG | NORTH CHAPITA 331-34 | NENE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7494 | 43047380470000 | GAS | EOG | NORTH CHAPITA 332-34 | NWSE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7495 | 43047380440000 | GAS | EOG | NORTH CHAPITA 333-34 | NESE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7503 | 43047380450000 | GAS | EOG | NORTH CHAPITA 334-34 | SESE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7492 | 43047380400000 | GAS | EOG | NORTH CHAPITA 335-34 | NESW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7496 | 43047380430000 | GAS | EOG | NORTH CHAPITA 336-34 | NENW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7497 | 43047380420000 | GAS | EOG | NORTH CHAPITA 337-34 | SENW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7489 | 43047380590000 | GAS | EOG | NORTH CHAPITA 338-34 | SENE | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7502 | 43047380610000 | GAS | EOG | NORTH CHAPITA 339-34 | NWSW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7467 | 43047380600000 | GAS | EOG | NORTH CHAPITA 340-34 | SWSW | 34 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7519 | 43047394130000 | GAS | EOG | NORTH CHAPITA 341-26 (NON-CONSENT) | SWSW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046874 | 24.046874 |
| 7097 | 43047343040000 | GAS | EOG | NORTH CHAPITA 6-33-8-22 | SENW | 33 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 28.125 | 24.046875 | 24.046875 |
| 7031 | 43047338220000 | GAS | EOG | NORTH DUCK CREEK 101-25 | NWSW | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7239 | 43047341040000 | GAS | EOG | NORTH DUCK CREEK 102-26 | SWNE | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7009 | 43047334350000 | GAS | EOG | NORTH DUCK CREEK 103-27 | SWNW | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7018 | 43047335470000 | GAS | EOG | NORTH DUCK CREEK 106-25 | SESW | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7012 | 43047335050000 | GAS | EOG | NORTH DUCK CREEK 107-25 | SWSE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7010 | 43047334360000 | GAS | EOG | NORTH DUCK CREEK 108-26 | NENW | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7017 | 43047335480000 | GAS | EOG | NORTH DUCK CREEK 119-27 | SESW | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7011 | 43047335060000 | GAS | EOG | NORTH DUCK CREEK 120-28 | NWNE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |

Exhibit B-2
Eastern Uinta Basin Bid Package

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7032 | 43047338290000 | GAS | EOG | NORTH DUCK CREEK 123-33 | SWNW | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 8.4375 | 7.045313 | 7.045313 |
| 7033 | 43047338000000 | GAS | EOG | NORTH DUCK CREEK 132-34 | NWNE | 34 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.478126 | 9.478126 |
| 7080 | 43047343050000 | GAS | EOG | NORTH DUCK CREEK 13W-28-8-21 | SWSW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7038 | 43047338940000 | GAS | EOG | NORTH DUCK CREEK 162-34 | SWNE | 34 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.478125 | 9.478125 |
| 7041 | 43047338950000 | GAS | EOG | NORTH DUCK CREEK 164-28 | SENE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7036 | 43047338960000 | GAS | EOG | NORTH DUCK CREEK 166-26 | SENE | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7040 | 43047338970000 | GAS | EOG | NORTH DUCK CREEK 167-28 | NESE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7037 | 43047338990000 | GAS | EOG | NORTH DUCK CREEK 175-26 | SWSE | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7039 | 43047339000000 | GAS | EOG | NORTH DUCK CREEK 176-27 | SWSW | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7246 | 43047348460000 | GAS | EOG | NORTH DUCK CREEK 193-28 | NESW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7211 | 43047348470000 | GAS | EOG | NORTH DUCK CREEK 203-28 | NENE | 28 | 8S | 21E | UINTAH | UT | WONSITS VALLEY | 11.25 | 9.45 | 9.45 |
| 7242 | 43047345870000 | GAS | EOG | NORTH DUCK CREEK 204-25 | SENE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7208 | 43047349230000 | GAS | EOG | NORTH DUCK CREEK 205-25 | NWSE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7173 | 43047345880000 | GAS | EOG | NORTH DUCK CREEK 206-25 | SESE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7273 | 43047345920000 | GAS | EOG | NORTH DUCK CREEK 207-24 | SESE | 24 | 8S | 21E | UINTAH | UT | WONSITS VALLEY | 11.25 | 9.39375 | 9.39375 |
| 7213 | 43047348480000 | GAS | EOG | NORTH DUCK CREEK 208-28 | NENW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7274 | 43047345950000 | GAS | EOG | NORTH DUCK CREEK 212-26 | NESE | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7174 | 43047345940000 | GAS | EOG | NORTH DUCK CREEK 213-26 | SESW | 26 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.39375 | 9.39375 |
| 7247 | 43047348490000 | GAS | EOG | NORTH DUCK CREEK 215-28 | SWNW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7214 | 43047348500000 | GAS | EOG | NORTH DUCK CREEK 216-28 | NWSW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7248 | 43047348510000 | GAS | EOG | NORTH DUCK CREEK 217-28 | SENW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 7308 | 43047353510000 | GAS | EOG | NORTH DUCK CREEK 244-27 | NWNW | 27 | 8S | 21E | UINTAH | UT | WONSITS VALLEY | 11.25 | 9.45 | 9.45 |
| 7379 | 43047354770000 | GAS | EOG | NORTH DUCK CREEK 247-28 | NWSE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.45 | 9.45 |
| 6032 | 43047305940000 | GAS | EOG | STAGECOACH 14-34 | NENW | 34 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 11.25 | 9.590625 | 9.590625 |
| 6033 | 43047306570000 | GAS | EOG | STAGECOACH 19-33 | NWNW | 33 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 8.4375 | 7.129688 | 7.129688 |
| 7368 | 4.30474E+13 | GAS | MAXIMUM ENERGY | WK 9ML-2-9-24 | NESE | 2 | 9S | 24E | UINTAH | UT | DEVILS PLAYGROUND | 0 | 1.96875 | 1.96875 |
| 7298 | 43047354080000 | OIL | QEP | BBE 15G-16-7-21 | SWSE | 16 | 7S | 21E | UINTAH | UT | BRENNAN BOTTOM | 75 | 64.875 | 64.875 |
| 7543 | 43047511790000 | GAS | QEP | BW 15-18-7-22 | SWSE | 18 | 7S | 22E | UINTAH | UT | KILIMANJARO UNIT | 56.25 | 48.65625 | 48.65625 |
| 7370 | 43047360390000 | OIL | QEP | COY 12ML-24-8-24 | NWSW | 24 | 8S | 24E | UINTAH | UT | COYOTE BASIN | 75 | 64.875 | 64.875 |
| 7505 | 43047373470000 | GAS | QEP | CWD 10D-32-8-24 | NWSE | 32 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22.866969 |
| 7478 | 43047372770000 | GAS | QEP | CWD 14D-32-8-24 | SESW | 32 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22.866969 |
| 7508 | 43047372780000 | GAS | QEP | CWD 16D-32-8-24 | SESE | 32 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22.866969 |
| 7317 | 43047356840000 | GAS | QEP | CWD 4ML-32-8-24 | NWNW | 32 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.86697 | 22.86697 |
| 3785 | 43047331640000 | OIL | QEP | DESERT SPRING 16-19-10-18 | SESE | 19 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 3784 | 43047331620000 | OIL | QEP | DESERT SPRING 3-29-10-18 | NENW | 29 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 3787 | 43047320520000 | OIL | QEP | DESERT SPRINGS 20-1 | NESW | 20 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 6023 | 43047511780000 | OIL | QEP | DS 13G-19-10-18 | SWSW | 19 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 38.125 | 32.125 | 32.125 |
| 7556 | 43047530230000 | OIL | QEP | DS 14G-6-10-18 (GR) | SESW | 6 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 27.23214 | 23.082589 | 23.082589 |
| 7557 | 43047524360000 | OIL | QEP | DS 14G-7-10-18 (GR) | SESW | 7 | 10S | 18E | UINTAH | UT | UNDESIGNATED | 38.125 | 32.959062 | 32.959062 |
| 7555 | 43047524060000 | OIL | QEP | DS 15G-5-10-18 (GR) | SWSE | 5 | 10S | 18E | UINTAH | UT | UNDESIGNATED | 56.25 | 49.21875 | 49.21875 |
| 7386 | 43047512260000 | OIL | QEP | DS 16G-20-10-18 | SESE | 20 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 38.125 | 32.125 | 32.125 |
| 7558 | 43047523680000 | OIL | QEP | DS 2G-6-10-18 (GR) | NWNE | 6 | 10S | 18E | UINTAH | UT | UNDESIGNATED | 19.06631 | 16.447038 | 16.447038 |
| 7383 | 43047511710000 | OIL | QEP | DS 9G-16-10-18 | NESE | 16 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 38.125 | 32.125 | 32.125 |
| 3783 | 43047347600000 | OIL | QEP | DS FEDERAL 7-30-10-18 | SWNE | 30 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 3789 | 43047347670000 | OIL | QEP | DS NORTH STATE 11-16-10-18 | NESW | 16 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 3792 | 43047347660000 | OIL | QEP | DS NORTH STATE 3-16-10-18 | NENW | 16 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 6016 | 43047324930000 | OIL | QEP | EAST COYOTE FED 14-4-8-25 | SESW | 4 | 8S | 25E | UINTAH | UT | COYOTE BASIN | 22.5 | 19.096875 | 19.096875 |
| 6020 | 43047327540000 | OIL | QEP | FLU KNOLLS FED 23-3 | NESW | 3 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 23.75 | 14.882525 | 14.882525 |
| 7484 | 43047387670000 | GAS | QEP | GB 10SG-30-8-22 | NWSE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 1988 | 43047328570000 | OIL | QEP | GB 11-16-8-22 | NESW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 18.94016 | 18.94016 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7229 | 43047349520000 | GAS | QEP | GB 11M-27-8-21 | NESW | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7441 | 43047346910000 | GAS | QEP | GB 11ML-10-8-22 | NESW | 10 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17.963438 |
| 7263 | 43047347690000 | GAS | QEP | GB 12MU-10-8-22 | NWSW | 10 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 17.963438 | 17.963438 |
| 7251 | 43047347140000 | GAS | QEP | GB 12MU-15-8-22 | NWSW | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.01344 | 17.963438 | 17.963438 |
| 7120 | 43047332490000 | GAS | QEP | GB 12W-20-8-22 - Tgr Re-Completion | NWSW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.940157 | 18.940157 |
| 7059 | 43047336510000 | GAS | QEP | GB 13W-3-8-22 | SWSW | 3 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17.963438 |
| 7280 | 43047352480000 | GAS | QEP | GB 14M-28-8-21 (M) | SESW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7523 | 43047396620000 | GAS | QEP | GB 15D-27-8-21 | SWSE | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7224 | 43047348290000 | GAS | QEP | GB 15G-16-8-22 | SWSE | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19.2375 |
| 7116 | 43047345380000 | GAS | QEP | GB 15W-19-8-22 | SWSE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7402 | 43047362600000 | GAS | QEP | GB 16D-28-8-21 | SESE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7459 | 43047376640000 | GAS | QEP | GB 16ML-20-8-22 | SESE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7160 | 43047346880000 | GAS | QEP | GB 16SG-30-8-22 | SESE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7418 | 43047349570000 | GAS | QEP | GB 1D-27-8-21 | NENE | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7480 | 43047389900000 | GAS | QEP | GB 1M-4-8-22R | NENE | 4 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 17.963438 | 17.963438 |
| 7152 | 43047346040000 | GAS | QEP | GB 1W-20-8-22 | NENE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7088 | 43047345280000 | GAS | QEP | GB 1W-30-8-22 | NENE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7061 | 43047339440000 | GAS | QEP | GB 1W-36-8-21 | NENE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 1978 | 43047315550000 | OIL | QEP | GB 2-17 | SESW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.94016 | 18.94016 |
| 6024 | 43047332520000 | OIL | QEP | GB 2-36-8-21 | NWNE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7405 | 43047350800000 | GAS | QEP | GB 2ML-30-8-22 | NWNE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 1973 | 43047314330000 | OIL | QEP | GB 31-20 | NWNE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.94016 | 18.94016 |
| 1976 | 43047310080000 | OIL | QEP | GB 31-30-8-22 | NWNE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.94016 | 18.94016 |
| 7530 | 43047403450000 | GAS | QEP | GB 3D-4-8-22R | LOT6 | 4 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.01344 | 17.78625 | 17.78625 |
| 7380 | 43047349000000 | GAS | QEP | GB 3M-27-8-21 | NENW | 27 | 8S | 21E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.9 | 18.9 |
| 7373 | 43047354570000 | GAS | QEP | GB 3MU-3-8-22 | NENW | 3 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.4625 | 19.4625 |
| 7063 | 43047337510000 | GAS | QEP | GB 3W-16-8-22 | NENW | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 19.2375 | 19.2375 |
| 7217 | 43047348940000 | GAS | QEP | GB 3W-36-8-21 | NENW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 1980 | 43047313990000 | OIL | QEP | GB 45-16-8-22 | NENE | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 18.94016 | 18.94016 |
| 7419 | 43047352460000 | GAS | QEP | GB 4D-28-8-21 | NWNW | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7377 | 43047349260000 | GAS | QEP | GB 4MU-36-8-21 | NWNW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7486 | 43047387640000 | GAS | QEP | GB 4SG-36-8-21 | NWNW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7270 | 43047351550000 | GAS | QEP | GB 5SG-36-8-21 | SWNW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7014 | 43047335140000 | GAS | QEP | GB 5W-17-8-22 | SWNW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7235 | 43047349250000 | GAS | QEP | GB 5W-36-8-21 | SWNW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 6027 | 43047330380000 | GAS | QEP | GB 6-36-8-21 | SENW | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7112 | 43047345430000 | GAS | QEP | GB 6W-17-8-22 | SENW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7067 | 43047341210000 | GAS | QEP | GB 6W-25-8-21 | SENW | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.921094 | 18.921094 |
| 7364 | 43047352470000 | GAS | QEP | GB 7M-28-8-21 | SWNE | 28 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7378 | 43047348930000 | GAS | QEP | GB 7MU-36-8-21 | SWNE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7485 | 43047387650000 | GAS | QEP | GB 7SG-36-8-21 | SWNE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7069 | 43047341220000 | GAS | QEP | GB 7W-25-8-21 | SWNE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.921094 | 18.921094 |
| 1985 | 43047324760000 | OIL | QEP | GB 8-19-8-22 | SENE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.94016 | 18.94016 |
| 6028 | 43047330370000 | GAS | QEP | GB 8A-36-8-21 | SENE | 36 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7472 | 43047376650000 | GAS | QEP | GB 8D-20-8-22 | SENE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7169 | 43047345750000 | GAS | QEP | GB 8W-29-8-22 | SENE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7464 | 43047349560000 | GAS | QEP | GB 9D-27-8-21 | NESE | 27 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18.9 |
| 7458 | 43047379440000 | GAS | QEP | GB 9ML-16-8-22 | NESE | 16 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19.2375 |
| 7042 | 43047339600000 | GAS | QEP | GB 9W-25-8-21 | NESE | 25 | 8S | 21E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.4625 | 19.4625 |
| 9003 | 43013338330000 | OIL | QEP | GD 16G-35-9-15 | SESE | 35 | 9S | 15E | DUCHESNE | UT | GILSONITE DRAW | 56.25 | 48.65625 | 48.65625 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9002 | 43013338270000 | OIL | QEP | GD 1G-34-9-15 | NENE | 34 | 9S | 15E | DUCHESNE | UT | GILSONITE DRAW | 75 | 64.875 | 64 875 |
| 6053 | 43047313550000 | OIL | QEP | GLEN BENCH UNIT 13-20 | NWSW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.94016 | 18.94016 |
| 6063 | 43047315560000 | OIL | QEP | GLEN BENCH UNIT 3-17 | SESE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 20.09673 | 20.09673 |
| 7398 | 43047391800000 | OIL | QEP | JB 4G-27-7-21 | NWNW | 27 | 7S | 21E | UINTAH | UT | Johnson Bottom | 7.875 | 7.39375 | 7.39375 |
| 7513 | 43047393490000 | GAS | QEP | NBE 10CD-17-9-23 | NWSE | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7473 | 43047366200000 | GAS | QEP | NBE 10D-26-9-23 | NWSE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7357 | 43047356500000 | GAS | QEP | NBE 10ML-10-9-23 | NWSE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7410 | 43047366170000 | GAS | QEP | NBE 10ML-17-9-23 | NWSE | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7422 | 43047365940000 | GAS | QEP | NBE 11ML-10-9-23 | NESW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7355 | 43047354660000 | GAS | QEP | NBE 11ML-17-9-23 | NESW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7345 | 43047356650000 | GAS | QEP | NBE 11ML-26-9-23 | NESW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7325 | 43047353330000 | GAS | QEP | NBE 12ML-10-9-23 | NWSW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7337 | 43047356520000 | GAS | QEP | NBE 12ML-17-9-23 | NWSW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7450 | 43047366210000 | GAS | QEP | NBE 12ML-26-9-23 | NWSW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7281 | 43047353340000 | GAS | QEP | NBE 13ML-17-9-23 | SWSW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7453 | 43047366220000 | GAS | QEP | NBE 13ML-26-9-23 | SWSW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7411 | 43047366180000 | GAS | QEP | NBE 14ML-17-9-23 | SESW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7425 | 43047366230000 | GAS | QEP | NBE 14ML-26-9-23 | SESW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7442 | 43047365950000 | GAS | QEP | NBE 15ML-10-9-23 | SWSE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7358 | 43047354630000 | GAS | QEP | NBE 15ML-17-9-23 | SWSE | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7343 | 43047356660000 | GAS | QEP | NBE 15ML-26-9-23 | SWSE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7423 | 43047361000000 | GAS | QEP | NBE 16ML-10-9-23 | SESE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7451 | 43047366240000 | GAS | QEP | NBE 16ML-26-9-23 | SESE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7462 | 43047365890000 | GAS | QEP | NBE 1ML-26-9-23 | NENE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7435 | 43047376190000 | GAS | QEP | NBE 2ML-10-9-23 | NWNE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7406 | 43047366140000 | GAS | QEP | NBE 2ML-17-9-23 | NWNE | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7461 | 43047365900000 | GAS | QEP | NBE 2ML-26-9-23 | NWNE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7436 | 43047363560000 | GAS | QEP | NBE 3ML-10-9-23 | NENW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7324 | 43047354650000 | GAS | QEP | NBE 3ML-17-9-23 | NENW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7460 | 43047365910000 | GAS | QEP | NBE 3ML-26-9-23 | NENW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7509 | 43047393480000 | GAS | QEP | NBE 4DD-17-9-23 | NWNW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7434 | 43047360980000 | GAS | QEP | NBE 4ML-10-9-23 | NWNW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7407 | 43047366150000 | GAS | QEP | NBE 4ML-17-9-23 | NWNW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7323 | 43047353350000 | GAS | QEP | NBE 4ML-26-9-23 | NWNW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7510 | 43047393460000 | GAS | QEP | NBE 5DD-10-9-23 | SWNW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7421 | 43047363530000 | GAS | QEP | NBE 5ML-10-9-23 | SWNW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7408 | 43047369410000 | GAS | QEP | NBE 5ML-17-9-23 | SWNW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7447 | 43047365920000 | GAS | QEP | NBE 5ML-26-9-23 | SWNW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7356 | 43047356510000 | GAS | QEP | NBE 6ML-10-9-23 | SENW | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7409 | 43047366160000 | GAS | QEP | NBE 6ML-17-9-23 | SENW | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7354 | 43047356640000 | GAS | QEP | NBE 6ML-26-9-23 | SENW | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7437 | 43047363550000 | GAS | QEP | NBE 7ML-10-9-23 | SWNE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7322 | 43047354640000 | GAS | QEP | NBE 7ML-17-9-23 | SWNE | 17 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7448 | 43047365870000 | GAS | QEP | NBE 7ML-26-9-23 | SWNE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7511 | 43047393510000 | GAS | QEP | NBE 8BD-26-9-23 | SENE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7512 | 43047393410000 | GAS | QEP | NBE 8CD-10-9-23 | SENE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7438 | 43047360990000 | GAS | QEP | NBE 8ML-10-9-23 | SENE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7465 | 43047361430000 | GAS | QEP | NBE 8ML-12-9-23 | SENE | 12 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7449 | 43047365880000 | GAS | QEP | NBE 8ML-26-9-23 | SENE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7439 | 43047365930000 | GAS | QEP | NBE 9ML-10-9-23 | NESE | 10 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QRTRTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7426 | 43047366190000 | GAS | QEP | NBE 9ML-26-9-23 | NESE | 26 | 9S | 23E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7540 | 43047372370000 | GAS | QEP | NBZ 13ML-29-8-24 | SWSW | 29 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22.866969 |
| 7500 | 43047372380000 | GAS | QEP | NBZ 8D-31-8-24 | SENE | 31 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22.866969 |
| 7278 | 43047372310000 | GAS | QEP | NBZ 8ML-30-8-24 | SENE | 30 | 8S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.86697 | 22.86697 |
| 7167 | 43047346250000 | GAS | QEP | OU GB 10W-17-8-22 | NWSE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7105 | 43047345350000 | GAS | QEP | OU GB 10W-19-8-22 | NWSE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7176 | 43047346310000 | GAS | QEP | OU GB 10W-20-8-22 | NWSE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7170 | 43047345770000 | GAS | QEP | OU GB 10W-29-8-22 | NWSE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7028 | 43047339470000 | GAS | QEP | OU GB 10W-30-8-22 | NWSE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7186 | 43047346510000 | GAS | QEP | OU GB 10W-9-8-22 | NWSE | 9 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17 963438 |
| 7250 | 43047346480000 | GAS | QEP | OU GB 11W-15-8-22 | NESW | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.01344 | 17.963438 | 17 963438 |
| 7055 | 43047337540000 | GAS | QEP | OU GB 11W-16-8-22 | NESW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7175 | 43047345530000 | GAS | QEP | OU GB 11W-17-8-22 | NESW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7087 | 43047345170000 | GAS | QEP | OU GB 11W-19-8-22 | NESW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7056 | 43047340390000 | GAS | QEP | OU GB 11W-20-8-22 | NESW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7132 | 43047343500000 | GAS | QEP | OU GB 11W-29-8-22 | NESW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7057 | 43047343920000 | GAS | QEP | OU GB 11W-30-8-22 | NESW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.4625 | 19.4625 |
| 7178 | 43047346170000 | GAS | QEP | OU GB 12W-16-8-22 | NWSW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7113 | 43047345420000 | GAS | QEP | OU GB 12W-17-8-22 | NWSW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7058 | 43047339480000 | GAS | QEP | OU GB 12W-19-8-22 | NWSW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7043 | 43047336700000 | GAS | QEP | OU GB 12W-30-8-22 | NWSW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7201 | 43047347620000 | GAS | QEP | OU GB 12W-4-8-22 | NWSW | 04 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.78625 | 17.78625 |
| 7149 | 43047346680000 | GAS | QEP | OU GB 12WX-29-8-22 | NWSW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7222 | 43047347540000 | GAS | QEP | OU GB 13W-10-8-22 | SWSW | 10 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17.963438 |
| 7164 | 43047346180000 | GAS | QEP | OU GB 13W-16-8-22 | SWSW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7147 | 43047345440000 | GAS | QEP | OU GB 13W-17-8-22 | SWSW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7104 | 43047345360000 | GAS | QEP | OU GB 13W-19-8-22 | SWSW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7121 | 43047343480000 | GAS | QEP | OU GB 13W-20-8-22 | SWSW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7125 | 43047345470000 | GAS | QEP | OU GB 13W-29-8-22 | SWSW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7187 | 43047346540000 | GAS | QEP | OU GB 13W-9-8-22 | SWSW | 09 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963016 | 17 963016 |
| 7313 | 43047346190000 | GAS | QEP | OU GB 14MU-16-8-22 | SESW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7271 | 43047347430000 | GAS | QEP | OU GB 14SG-29-8-22 | SESW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7262 | 43047347680000 | GAS | QEP | OU GB 14W-10-8-22 (W) | SESW | 10 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 17.963438 | 17.963438 |
| 7114 | 43047345500000 | GAS | QEP | OU GB 14W-17-8-22 | SESW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7106 | 43047345370000 | GAS | QEP | OU GB 14W-19-8-22 | SESW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7122 | 43047343490000 | GAS | QEP | OU GB 14W-20-8-22 | SESW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7134 | 43047345540000 | GAS | QEP | OU GB 14W-29-8-22 | SESW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7188 | 43047346490000 | GAS | QEP | OU GB 14W-9-8-22 | SESW | 09 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17.963438 |
| 7007 | 43047333640000 | GAS | QEP | OU GB 15-18-8-22 | SWSE | 18 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 18 | 14.67 | 14.67 |
| 7158 | 43047346220000 | GAS | QEP | OU GB 15W-16-8-22 | SWSE | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7151 | 43047346010000 | GAS | QEP | OU GB 15W-17-8-22 | SWSE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7153 | 43047346320000 | GAS | QEP | OU GB 15W-20-8-22 | SWSE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7157 | 43047345780000 | GAS | QEP | OU GB 15W-29-8-22 | SWSE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7172 | 43047346780000 | OIL | QEP | OU GB 15W-9-8-22 (W) | SWSE | 09 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 17.963438 | 17.963438 |
| 7219 | 43047347440000 | GAS | QEP | OU GB 16SG-29-8-22 | SESE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7252 | 43047346550000 | GAS | QEP | OU GB 16W-16-8-22 | SESE | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7168 | 43047346020000 | GAS | QEP | OU GB 16W-17-8-22 | SESE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7115 | 43047345630000 | GAS | QEP | OU GB 16W-18-8-22 | SESE | 18 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 18 | 14.67 | 14.67 |
| 7100 | 43047345220000 | GAS | QEP | OU GB 16W-19-8-22 | SESE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 7159 | 43047346030000 | GAS | QEP | OU GB 16W-29-8-22 | SESE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QRTQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7216 | 43047346790000 | GAS | QEP | OU GB 16W-9-8-22 | SESE | 9 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17 963438 |
| 7081 | 43047345060000 | GAS | QEP | OU GB 16WX-30-8-22 | SESE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19.0125 |
| 2678 | 43047346960000 | OIL | QEP | OU GB 1G-19-8-22 | NENE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.94016 | 18.94016 |
| 7319 | 43047346560000 | GAS | QEP | OU GB 1MU-16-8-22 | NENE | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 19.2375 | 19.2375 |
| 7165 | 43047346230000 | GAS | QEP | OU GB 1W-17-8-22 | NENE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7084 | 43047345120000 | GAS | QEP | OU GB 1W-19-8-22 | NENE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 17.8875 | 17 8875 |
| 7154 | 43047345730000 | GAS | QEP | OU GB 1W-29-8-22 | NENE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7206 | 43047346570000 | GAS | QEP | OU GB 2W-16-8-22 | NWNE | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 19.2375 | 19.2375 |
| 7136 | 43047345590000 | GAS | QEP | OU GB 2W-17-8-22 | NWNE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18 3375 |
| 7085 | 43047345130000 | GAS | QEP | OU GB 2W-19-8-22 | NWNE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 17.8875 | 17 8875 |
| 7145 | 43047345990000 | GAS | QEP | OU GB 2W-20-8-22 | NWNE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19 2375 |
| 7183 | 43047346000000 | GAS | QEP | OU GB 2W-29-8-22 | NWNE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7013 | 43047335130000 | GAS | QEP | OU GB 3W-17-8-22 | NENW | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18 3375 |
| 7117 | 43047335260000 | GAS | QEP | OU GB 3W-20-8-22 | NENW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19 2375 | 19 2375 |
| 7221 | 43047346860000 | OIL | QEP | OU GB 3W-21-8-22 (W) | NENW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18 5875 | 18 5875 |
| 7123 | 43047345460000 | GAS | QEP | OU GB 3W-29-8-22 | NENW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7126 | 43047345290000 | OIL | QEP | OU GB 3W-30-8-22 (W) | NENW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7230 | 43047346850000 | OIL | QEP | OU GB 4G-21-8-22 | NWNW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.5875 | 18 5875 |
| 7234 | 43047347130000 | OIL | QEP | OU GB 4W-15-8-22 (GB) | NWNW | 15 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17 963438 |
| 7150 | 43047345980000 | GAS | QEP | OU GB 4W-16-8-22 | NWNW | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 19.2375 | 19 2375 |
| 7118 | 43047340430000 | GAS | QEP | OU GB 4W-20-8-22 | NWNW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19 2375 |
| 7135 | 43047345480000 | GAS | QEP | OU GB 4W-29-8-22 | NWNW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7029 | 43047339450000 | GAS | QEP | OU GB 4W-30-8-22 | NWNW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7190 | 43047346950000 | OIL | QEP | OU GB 5G-19-8-22 | SWNW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.3375 | 18.3375 |
| 7249 | 43047347150000 | GAS | QEP | OU GB 5M-15-8-22 | SWNW | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.01344 | 17.963438 | 17 963438 |
| 7065 | 43047337520000 | GAS | QEP | OU GB 5W-16-8-22 | SWNW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7101 | 43047345140000 | GAS | QEP | OU GB 5W-19-8-22 | SWNW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 18 | 14.67 | 14.67 |
| 7066 | 43047342090000 | GAS | QEP | OU GB 5W-20-8-22 | SWNW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.9 | 18 9 |
| 7226 | 43047346900000 | OIL | QEP | OU GB 5W-21-8-22 | SWNW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.5875 | 18 5875 |
| 7124 | 43047345490000 | GAS | QEP | OU GB 5W-29-8-22 | SWNW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7089 | 43047340250000 | GAS | QEP | OU GB 5W-30-8-22 | SWNW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7285 | 43047347550000 | GAS | QEP | OU GB 6MU-21-8-22 | SENW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 18.5875 | 18 5875 |
| 7162 | 43047346580000 | GAS | QEP | OU GB 6W-16-8-22 | SENW | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7107 | 43047345340000 | GAS | QEP | OU GB 6W-19-8-22 | SENW | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 17.8875 | 17 8875 |
| 7119 | 43047340180000 | GAS | QEP | OU GB 6W-20-8-22 | SENW | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19 2375 |
| 7131 | 43047345450000 | GAS | QEP | OU GB 6W-29-8-22 | SENW | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7090 | 43047345300000 | GAS | QEP | OU GB 6W-30-8-22 | SENW | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7068 | 43047340100000 | GAS | QEP | OU GB 6W-9-8-22 | SENW | 9 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17 963438 | 17 963438 |
| 7220 | 43047346590000 | GAS | QEP | OU GB 7W-16-8-22 | SWNE | 16 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 22.5 | 19.2375 | 19 2375 |
| 7137 | 43047345600000 | GAS | QEP | OU GB 7W-17-8-22 | SWNE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18 3375 |
| 7102 | 43047345150000 | GAS | QEP | OU GB 7W-19-8-22 | SWNE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 18 | 14.619991 | 14.619991 |
| 7181 | 43047347050000 | GAS | QEP | OU GB 7W-20-8-22 | SWNE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.2375 | 19 2375 |
| 7155 | 43047345740000 | GAS | QEP | OU GB 7W-29-8-22 | SWNE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7091 | 43047345310000 | GAS | QEP | OU GB 7W-30-8-22 | SWNE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7086 | 43047345160000 | GAS | QEP | OU GB 8W-19-8-22 | SENE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 18 | 14.67 | 14.67 |
| 7128 | 43047345320000 | GAS | QEP | OU GB 8W-30-8-22 | SENE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7166 | 43047346240000 | GAS | QEP | OU GB 9W-17-8-22 | NESE | 17 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 22.5 | 18.3375 | 18.3375 |
| 7015 | 43047335160000 | GAS | QEP | OU GB 9W-18-8-22 | NESE | 18 | 8S | 22E | UINTAH | UT | WONSITS VALLEY | 18 | 14.67 | 14.67 |
| 7070 | 43047339460000 | GAS | QEP | OU GB 9W-19-8-22 | NESE | 19 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7148 | 43047346300000 | GAS | QEP | OU GB 9W-20-8-22 | NESE | 20 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.4625 | 19.4625 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7156 | 43047345760000 | GAS | QEP | | OU GB 9W-29-8-22 | NESE | 29 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7092 | 43047345330000 | GAS | QEP | | OU GB 9W-30-8-22 | NESE | 30 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.5 | 19.0125 | 19 0125 |
| 7196 | 43047347190000 | GAS | QEP | | OU SG 10M-15-8-22 | NWSE | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7254 | 43047347100000 | GAS | QEP | | OU SG 14W-15-8-22 | SESW | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7244 | 43047347110000 | GAS | QEP | | OU SG 15W-15-8-22 | SWSE | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7240 | 43047347840000 | GAS | QEP | | OU SG 16W-10-8-22 | SESE | 10 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7255 | 43047347120000 | GAS | QEP | | OU SG 16W-15-8-22 | SESE | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7283 | 43047350760000 | GAS | QEP | | OU SG 5MU-14-8-22 | SWNW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7253 | 43047347170000 | GAS | QEP | | OU SG 8W-15-8-22 | SENE | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7215 | 43047347830000 | GAS | QEP | | OU SG 9W-10-8-22 | NESE | 10 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7236 | 43047347180000 | GAS | QEP | | OU SG 9W-15-8-22 | NESE | 15 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7177 | 43047346810000 | GAS | QEP | | OU WIH 10W-21-8-22 | NWSE | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 7225 | 43047346460000 | GAS | QEP | | OU WIH 13W-21-8-22 | SWSW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 7207 | 43047346640000 | GAS | QEP | | OU WIH 14W-21-8-22 | SESW | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 7286 | 43047346340000 | GAS | QEP | | OU WIH 15MU-21-8-22 | SWSE | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 7284 | 43047346930000 | GAS | QEP | | OU WIH 1MU-21-8-22 | NENE | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 30.9375 | 25.557813 | 25 557813 |
| 7203 | 43047346890000 | GAS | QEP | | OU WIH 7W-21-8-22 | SWNE | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 3786 | 43047341340000 | OIL | QEP | | PENDRAGON FED 2-20-10-18 | NWNE | 20 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 7197 | 43047343840000 | GAS | QEP | | PURDY 14M-30-7-22 | SESW | 30 | 7S | 22E | UINTAH | UT | WONSITS VALLEY | 56.25 | 48.65625 | 48.65625 |
| 7347 | 43047359330000 | OIL | QEP | | RB DS FED 14G-8-10-18 | SESW | 8 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 48.19288 | 35.458569 | 35.458569 |
| 7346 | 43047359320000 | OIL | QEP | | RB DS FED 1G-7-10-18 | NENE | 7 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 48.19288 | 35.458569 | 35.458569 |
| 3788 | 43047337120000 | OIL | QEP | | RB DS FEDERAL 14-17-10-18 | SESW | 17 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 7454 | 43047373080000 | GAS | QEP | | RWS 10ML-5-9-24 (GR) | NWSE | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7424 | 43047356530000 | GAS | QEP | | RWS 10ML-6-9-24 | NWSE | 6 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7443 | 43047373090000 | GAS | QEP | | RWS 12ML-5-9-24 | NWSW | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7469 | 43047373120000 | GAS | QEP | | RWS 12ML-6-9-24 | NWSW | 6 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7515 | 43047373100000 | GAS | QEP | | RWS 14D-5-9-24 | SESW | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7498 | 43047374140000 | GAS | QEP | | RWS 14D-6-9-24 | SESW | 06 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7455 | 43047373350000 | GAS | QEP | | RWS 16ML-6-9-24 | SESE | 6 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7468 | 43047373060000 | GAS | QEP | | RWS 2ML-5-9-24 | NWNE | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7420 | 43047354830000 | GAS | QEP | | RWS 3ML-9-9-24 | NENW | 9 | 9S | 24E | UINTAH | UT | BIG VALLEY | 75 | 64.125 | 64.125 |
| 7477 | 43047373510000 | GAS | QEP | | RWS 4ML-5-9-24 | NWNW | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7476 | 43047374120000 | GAS | QEP | | RWS 4ML-6-9-24 | NWNW | 06 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7482 | 43047373500000 | GAS | QEP | | RWS 6D-5-9-24 | SENW | 5 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7481 | 43047374130000 | GAS | QEP | | RWS 6D-6-9-24 | SENW | 6 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 7457 | 43047373520000 | GAS | QEP | | RWS 8D-6-9-24 | SENE | 6 | 9S | 24E | UINTAH | UT | BIG VALLEY | 26.55531 | 22.866969 | 22 866969 |
| 6031 | 43047327460000 | GAS | QEP | | SAGE GROUSE FEDERAL 6-14-8-22 | SENW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 47.25 | 47 25 |
| 7394 | 43047353820000 | GAS | QEP | | SG 10MU-11-8-22 | NWSE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7223 | 43047347640000 | GAS | QEP | | SG 10W-10-8-22 | NWSE | 10 | 8S | 22E | UINTAH | UT | WHITE RIVER | 56.25 | 48.65625 | 48.65625 |
| 7277 | 43047352570000 | GAS | QEP | | SG 11M-23-8-22 MV | NESW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7351 | 43047358290000 | GAS | QEP | | SG 11MU-14-8-22 | NESW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7266 | 43047350990000 | GAS | QEP | | SG 11SG-23-8-22 | NESW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7243 | 43047350780000 | GAS | QEP | | SG 12MU-14-8-22 | NWSW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7318 | 43047351880000 | GAS | QEP | | SG 12MU-23-8-22 | NWSW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7294 | 43047350790000 | GAS | QEP | | SG 13MU-14-8-22 | SWSW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7306 | 43047351900000 | GAS | QEP | | SG 13MU-23-8-22 | SWSW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7352 | 43047359500000 | GAS | QEP | | SG 14MU-14-8-22 | SESW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7295 | 43047351170000 | GAS | QEP | | SG 14MU-23-8-22 | SESW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7353 | 43047353280000 | GAS | QEP | | SG 15MU-14-8-22 | SWSE | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7320 | 43047353750000 | GAS | QEP | | SG 1MU-11-8-22 | NENE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7374 | 43047353810000 | GAS | QEP | SG 2MU-11-8-22 | NWNE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7276 | 43047347210000 | GAS | QEP | SG 2MU-15 8-22 | NWNE | 15 | 8S | 22E | UINTAH | UT | WHITE RIVER | 56.25 | 48.65625 | 48.65625 |
| 7392 | 43047353790000 | GAS | QEP | SG 3MU-11-8-22 | NENW | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7348 | 43047369400000 | GAS | QEP | SG 3MU-23-8-22 | SESW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7349 | 43047357580000 | GAS | QEP | SG 4MU-23-8-22 | NWNW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7350 | 43047351150000 | GAS | QEP | SG 5MU-23-8-22 | SWNW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7393 | 43047350730000 | GAS | QEP | SG 6ML-11-8-22 | SENW | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7293 | 43047350770000 | GAS | QEP | SG 6MU-14-8-22 | SENW | 14 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7302 | 43047351160000 | GAS | QEP | SG 6MU-23-8-22 | SENW | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 48.65625 | 48.65625 |
| 7375 | 43047353740000 | GAS | QEP | SG 7MU-11-8-22 | SWNE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7265 | 43047347220000 | GAS | QEP | SG 7MU-15-8-22 | SWNE | 15 | 8S | 22E | UINTAH | UT | WHITE RIVER | 56.25 | 48.65625 | 48.65625 |
| 7376 | 43047353800000 | GAS | QEP | SG 8MU-11-8-22 | SENE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 7267 | 43047350910000 | GAS | QEP | SG 9MU-11-8-22 | NESE | 11 | 8S | 22E | UINTAH | UT | KENNEDY WASH | 56.25 | 48.65625 | 48.65625 |
| 3790 | 43047338070000 | OIL | QEP | STATE 1-16-10-18 | NENE | 16 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 7445 | 43047361360000 | GAS | QEP | SU BW 14M-7-7-22 | SESW | 7 | 7S | 22E | UINTAH | UT | HORSESHOE BEND | 56.25 | 48.65625 | 48.65625 |
| 7238 | 43047348370000 | GAS | QEP | SU BW 6M-7-7-22 | SENW | 7 | 7S | 22E | UINTAH | UT | HORSESHOE BEND | 75 | 64.875 | 64.875 |
| 7093 | 43047343800000 | OIL | QEP | SU PURDY 7W-34-7-21 | SWNE | 34 | 7S | 21E | UINTAH | UT | WONSITS VALLEY | 52.5 | 44.3625 | 44.3625 |
| 7504 | 43047389950000 | GAS | QEP | TU 3-35-7-21 | NENW | 35 | 7S | 21E | UINTAH | UT | TAPADERO | 56.25 | 48.65625 | 48.65625 |
| 7340 | 43047360600000 | GAS | QEP | WIH 1AMU-21-8-22 | NENE | 21 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 46.468751 | 46.468751 |
| 7561 | 43013519130000 | OIL | QEP | WR 11G-5-10-17 | NESW | 5 | 10S | 17E | DUCHES | UT | EIGHT MILE FLAT | 33.35938 | 30.47563 | 30.47563 |
| 7538 | 43013503700000 | OIL | QEP | WR 16G-32-10-17 | SESE | 32 | 10S | 17E | DUCHESNE | UT | WILKIN RIDGE | 38.125 | 32.0421 | 32.0421 |
| 6049 | 43047313540000 | OIL | QEP | WR 43-16-8-22 | NENW | 16 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 19.2375 | 19.2375 |
| 7387 | 4.30135E+13 | OIL | QEP | WR 4G-35-10-17 | NWNW | 35 | 10S | 17E | DUCHESNE | UT | UNDESIGNATED | 38.125 | 32.125 | 32.125 |
| 7560 | 4.30135E+13 | OIL | QEP | WR 6G-32-10-17 | SENW | 32 | 10S | 17E | DUCHESNE | UT | EIGHT MILE FLAT | 38.125 | 32.125 | 32.125 |
| 7553 | 4.30135E+13 | OIL | QEP | WR 9G-5-10-17 | NESE | 5 | 10S | 17E | DUCHESNE | UT | EIGHT MILE FLAT | 38.125 | 32.21563 | 32.21563 |
| 6041 | 43013320570000 | OIL | QEP | WRB 16-17-10-17 | SESE | 17 | 10S | 17E | DUCHESNE | UT | EIGHT MILE FLAT | 38.125 | 31.843906 | 31.843906 |
| 7096 | 43047342100000 | GAS | QEP | WRU 13WX-35-8-22 | SWSW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.0560355 | 43.0560355 |
| 7328 | 43047351870000 | GAS | QEP | WRU EIH 10ML-23-8-22 (ML) | NWSE | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.96795 | 32.96795 |
| 7279 | 43047351200000 | GAS | QEP | WRU EIH 10MU-26-8-22 | NWSE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 44.367188 | 44.367188 |
| 7232 | 43047350460000 | GAS | QEP | WRU EIH 10W-35-8-22 | NWSE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.889415 | 43.889415 |
| 7430 | 43047373000000 | GAS | QEP | WRU EIH 11B-ML-35-8-22 | NESW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 42.222656 | 42.222656 |
| 7330 | 43047358050000 | GAS | QEP | WRU EIH 11ML-24-8-22 (W) | NWSW | 24 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.9679495 | 32.9679495 |
| 7233 | 43047348360000 | GAS | QEP | WRU EIH 11MU-26-8-22 | NESW | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.03359 | 44.53963 | 44.53963 |
| 7205 | 43047347080000 | GAS | QEP | WRU EIH 11W-35-8-22 | NESW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7331 | 43047354250000 | GAS | QEP | WRU EIH 12ML-24-8-22 (ML) | NWSW | 24 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.9679495 | 32.9679495 |
| 7321 | 43047356010000 | GAS | QEP | WRU EIH 12MU-25-8-22 | NWSW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 44.128301 | 44.128301 |
| 7138 | 43047333930000 | GAS | QEP | WRU EIH 12W-35-8-22 | NWSW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7332 | 43047357930000 | GAS | QEP | WRU EIH 13ML-24-8-22 (W) | SESW | 24 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.7992 | 32.7992 |
| 7314 | 43047353290000 | GAS | QEP | WRU EIH 13MU-25-8-22 | SWSW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 44.367187 | 44.367187 |
| 7333 | 43047354260000 | GAS | QEP | WRU EIH 14ML-24-8-22 (W) | SESW | 24 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.9679495 | 32.9679495 |
| 7381 | 43047356670000 | GAS | QEP | WRU EIH 14MU-35-8-22 | SESW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.0560355 | 43.0560355 |
| 6045 | 43047330610000 | GAS | QEP | WRU EIH 15-35-8-22 | SWSE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7326 | 43047353870000 | GAS | QEP | WRU EIH 15ML-23-8-22 (W) | SWSE | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.9679495 | 32.9679495 |
| 7259 | 43047350480000 | GAS | QEP | WRU EIH 15MU-26-8-22 (W) | SWSE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.889415 | 43.889415 |
| 7287 | 43047351210000 | GAS | QEP | WRU EIH 15MU-35-8-22 | SWSE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.889415 | 43.889415 |
| 7329 | 43047358040000 | GAS | QEP | WRU EIH 16ML-23-8-22 (W) | SWSE | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.299975 | 32.96795 | 32.96795 |
| 7305 | 43047351910000 | GAS | QEP | WRU EIH 16MU-26-8-22 | SESE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.05469 | 43.889415 | 43.889415 |
| 7297 | 43047351940000 | GAS | QEP | WRU EIH 16MU-35-8-22 | SESE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.889415 | 43.889415 |
| 7307 | 43047351180000 | GAS | QEP | WRU EIH 1MU-26-8-22 | NENE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.889415 | 43.889415 |
| 7278 | 43047350490000 | GAS | QEP | WRU EIH 1MU-35-8-22 | NENE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |

**Exhibit B-2**
**Eastern Uinta Basin Bid Package**

| PGEI_NO | API | MAJOR | OPERATOR | WELL NAME | QTRQTR | SEC | TWN | RNG | COUNTY | STATE | FIELD | III_WI | III_O_NRI | III_G_NRI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7301 | 43047351920000 | GAS | QEP | WRU EIH 2MU-26-8-22 | NWNE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.05469 | 44.128301 | 44.128301 |
| 7256 | 43047350520000 | GAS | QEP | WRU EIH 2MU-35-8-22 | NWNE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7427 | 43047374650000 | GAS | QEP | WRU EIH 3D-ML-35-8-22 | SENW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 42.222656 | 42.222656 |
| 7338 | 43047353890000 | GAS | QEP | WRU EIH 3MU-25-8-22 | NENW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 44.367187 | 44.367187 |
| 7142 | 43047340440000 | GAS | QEP | WRU EIH 3W-35-8-22 | NENW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7516 | 43047386360000 | GAS | QEP | WRU EIH 4AD-25-8-22 (MV) | NWNW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 41.29102 | 34.991894 | 34.991894 |
| 7339 | 43047353880000 | GAS | QEP | WRU EIH 4MU-25-8-22 | NWNW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7127 | 43047340420000 | GAS | QEP | WRU EIH 4W-35-8-22 | NWNW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7334 | 43047354320000 | GAS | QEP | WRU EIH 5MU-25-8-22 | SWNW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.889415 | 43.889415 |
| 7146 | 43047345720000 | GAS | QEP | WRU EIH 5W-35-8-22 | SWNW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.069 | 43.889415 | 43.889415 |
| 7429 | 43047372990000 | GAS | QEP | WRU EIH 6B-ML-35-8-22 (20 ACRE WELL) | SWNW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.0560355 | 43.0560355 |
| 7499 | 43047389940000 | GAS | QEP | WRU EIH 6D-5-8-23 | SENW | 5 | 8S | 23E | UINTAH | UT | EAST IRON HORSE | 41.51514 | 33.486328 | 33.486328 |
| 7507 | 43047386400000 | GAS | QEP | WRU EIH 6DD-35-8-22 | SENW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 42.222656 | 42.222656 |
| 7440 | 43047354310000 | GAS | QEP | WRU EIH 6MU-25-8-22 | SENW | 25 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.889415 | 43.889415 |
| 7257 | 43047346840000 | GAS | QEP | WRU EIH 6MU-35-8-22 (40 ACRE WELL) | SENW | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.889415 | 43.889415 |
| 7517 | 43047386370000 | GAS | QEP | WRU EIH 7AD-26-8-22 | SWNE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 44.367187 | 44.367187 |
| 7479 | 43047386410000 | GAS | QEP | WRU EIH 7AD-35-8-22 | SWNE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 56.25 | 42.222656 | 42.222656 |
| 7428 | 43047374660000 | GAS | QEP | WRU EIH 7D-ML-35-8-22 | SWNE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 42.222656 | 42.222656 |
| 7303 | 43047351190000 | GAS | QEP | WRU EIH 7MU-26-8-22 | SENE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.05469 | 43.889415 | 43.889415 |
| 7258 | 43047350510000 | GAS | QEP | WRU EIH 7MU-35-8-22 (MU) | SWNE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.0560355 | 43.0560355 |
| 7304 | 43047351930000 | GAS | QEP | WRU EIH 8MU-26-8-22 | SENE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.05469 | 44.128301 | 44.128301 |
| 7296 | 43047351950000 | GAS | QEP | WRU EIH 8MU-35-8-22 | SENE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.889415 | 43.889415 |
| 7506 | 43047386490000 | GAS | QEP | WRU EIH 9CD-26-8-22 | NESE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 44.247744 | 44.247744 |
| 7327 | 43047351890000 | GAS | QEP | WRU EIH 9ML-23-8-22 (ML) | NESE | 23 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 27.53085 | 22.046484 | 22.046484 |
| 7288 | 43047350470000 | GAS | QEP | WRU EIH 9MU-26-8-22 (W) | NESE | 26 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.0691 | 43.889415 | 43.889415 |
| 7275 | 43047350500000 | GAS | QEP | WRU EIH 9MU-35-8-22 | NESE | 35 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 55.08984 | 43.0560355 | 43.0560355 |
| 7522 | 43047397920000 | OIL | QEP | WRU GB 13G-3-8-22 | SWSW | 3 | 8S | 22E | UINTAH | UT | NATURAL BUTTES | 22.01344 | 17.940958 | 17.940958 |
| 7064 | 43047342080000 | OIL | QEP | WRU GB 4WRG-9-8-22 | NWNW | 9 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.940958 | 17.940958 |
| 7365 | 43047347530000 | GAS | QEP | WRU GB 5M-9-8-22 | SWNW | 09 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.01344 | 17.963438 | 17.963438 |
| 7282 | 43047346500000 | GAS | QEP | WRU GB 9MU-9-8-22 | NESE | 09 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | 17.963438 | 17.963438 |
| 7533 | 43047398900000 | GAS | XTO ENERGY INC | KC 6-36D | SWNW | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 0.457031 | 0.457031 |
| 7535 | 43047398910000 | GAS | XTO ENERGY INC | KC 7-36D | SWNE | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 0.457031 | 0.457031 |
| 7536 | 43047398920000 | GAS | XTO ENERGY INC | KC 8-36D | SWNE | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 0.457031 | 0.457031 |
| 7466 | 43047366670000 | GAS | XTO ENERGY INC | KINGS CANYON 10-36D | NWSE | 36 | 10S | 18E | UINTAH | UT | KINGS CANYON | 9.84375 | 8.627344 | 8.627344 |
| 7524 | 43047400240000 | OIL | XTO ENERGY INC | KINGS CANYON 11-36DX | NESW | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 8.627344 | 8.627344 |
| 7433 | 43047366660000 | GAS | XTO ENERGY INC | KINGS CANYON 1-32E | NENE | 32 | 10S | 19E | UINTAH | UT | KINGS CANYON | 19.6875 | 18.675001 | 18.675001 |
| 7491 | 43047382610000 | GAS | XTO ENERGY INC | KINGS CANYON 2-32E | NWNE | 32 | 10S | 19E | UINTAH | UT | NATURAL BUTTES | 19.6875 | 18.675001 | 18.675001 |
| 7521 | 43047387790000 | GAS | XTO ENERGY INC | KINGS CANYON 5-36D | SWNW | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 8.627344 | 8.627344 |
| 7470 | 43047376590000 | GAS | XTO ENERGY INC | KINGS CANYON 8-32E | SENE | 32 | 10S | 19E | UINTAH | UT | KINGS CANYON | 19.6875 | 18.675001 | 18.675001 |
| 7518 | 43047376600000 | GAS | XTO ENERGY INC | KINGS CANYON 9-36D | SESE | 36 | 10S | 18E | UINTAH | UT | NATURAL BUTTES | 9.84375 | 8.627344 | 8.627344 |
| 7098 | 43047344030000 | OIL | QEP | BASER WASH 15W-18-7-22 | SWSE | 18 | 7S | 22E | UINTAH | UT | UNDESIGNATED | 56.25 | 48.65625 | 48.65625 |
| 7202 | 43047341350000 | WINJ | QEP | DESERT SPRINGS FEDERAL 9-17-10-18 | NESE | 17 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 43.29166 | 0 | 0 |
| 7269 | 43047332450000 | WINJ | QEP | FEDERAL 5-20-10-18 | SWNW | 20 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 35.44186 | 35.44186 |
| 7218 | 43047332440000 | WSW | QEP | DS FEDERAL 7-19-10-18 | SWNE | 19 | 10S | 18E | UINTAH | UT | UTELAND BUTTE | 42.32917 | 29.88 | 29.88 |
| 7525 | 43047400970000 | WINJ | QEP ENERGY COMPANY | WRU GB 14G-4-8-22 | SESW | 4 | 8S | 22E | UINTAH | UT | WHITE RIVER | 22.5 | | |

**Exhibit C**
**Oil & Gas Permits – Rights of Way**

**Eastern Uinta Basin Bid Package:**

1.  None.

**EXHIBIT D**
**Excluded Rights and Interests**

- There are no additional Excluded Assets.

**Exhibit E**
**Allocated Values**
Reserved

## Exhibit F

(Attached to and made part of that certain Purchase and Sale Agreement dated November __, 2016, between III Exploration II, LP , as Seller, and Crescent Point Energy U.S. Corp., as Buyer)

**When Recorded, Return To:**
Crescent Point Energy U.S. Corp.
555 17th Street, Suite 1800
Denver, Colorado 80202
Attention: _____

## Assignment and Bill of Sale

      **THIS ASSIGNMENT AND BILL OF SALE** (this "**Assignment**"), dated as of _____, 2016, at 12:01 a.m., Mountain time, (the "**Effective Date**"), is from III Exploration II, LP, an Idaho limited partnership ("**Assignor**"), with an address of 960 Broadway Ave., Suite 500, Boise, Idaho to Crescent Point Energy U.S. Corp., a Delaware corporation ("**Assignee**"), with an address of 555 17th Street, Suite 1800, Denver, Colorado 80202.  Assignor and Assignee are each a "**Party**," and collectively, are the "**Parties**."

      For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which Assignor hereby acknowledges, Assignor has sold, transferred, assigned, conveyed, and delivered, and does hereby sell, transfer, assign and convey to Assignee, effective as of the Effective Date, all of its right, title and interest in, and all privileges and obligations appurtenant to, the following described property rights, interests, privileges, and obligations (such property rights, interest, privileges, and obligations, SAVE and EXCEPT the Excluded Assets, are hereafter referred to collectively as the "**Property**") Free and Clear (except for Permitted Encumbrances and Assignee's Assumed Obligations):

      (a)     All of the Oil and Gas Interests ; and

      (b)     All Contracts, including Contracts with Cure Costs, set forth on <u>Exhibit I</u> attached to the Purchase Agreement (the Contracts set forth on such Schedule as may be amended pursuant to <u>Section 2</u> of the Purchase Agreement, collectively, the "<u>Assumed Contracts</u>"), including all rights, obligations and interests in all such Assumed Contracts and applicable to the other rights, titles and interests included in this definition of the term "Property."

NOTWITHSTANDING THE FOREGOING, the Property shall not include, and there is hereby excepted, reserved, and excluded from the sale, transfer, and assignment contemplated hereby, the following excluded properties, rights, and interests (collectively, the "**Excluded Assets**"):

(1) all of Assignor's corporate minute books and corporate financial records that relate to Assignor's business generally;

(2) all trade credits, all accounts, receivables and all other proceeds, income or revenues attributable to the Property with respect to any period of time prior to the Effective Date;

(3) all claims and causes of action of Assignor arising under or with respect to any Contracts included in the Oil and Gas Interests that are attributable to periods of time prior to the Effective Date (including Claims for adjustments or refunds);

(4) all rights and interests of Assignor under any policy or agreement of insurance, under any bond, or to any insurance or condemnation proceeds or awards arising, in each case, from acts, omissions or events, or damage to or destruction of property;

(5) all Claims of Assignor for refunds of, credits attributable to, or loss carry forwards with respect to Taxes attributable to any period (or portion thereof) prior to the Effective Date;

(6) all documents and instruments of Assignor that are protected by legal privilege (except for title opinions);

(7) all data and Contracts that cannot be disclosed to Assignee as a result of confidentiality arrangements under agreements with third parties;

(8) all audit rights arising under any of the Contracts or otherwise with respect to any period prior to the Effective Date;

(9) all geophysical and other seismic and related technical data and information relating to the Property;

(10) all causes of action under Chapter 5 of the Bankruptcy Code; and

(11) any assets described in Exhibit C;

TO HAVE AND TO HOLD, the Property unto Assignee, its successors and assigns, forever, subject to the terms and other provisions herein stated.

This Assignment is made and accepted subject to the following terms and conditions:

1.      Definitions.  As used herein, the following terms shall have the meanings ascribed to them below:

(a)      "**Oil and Gas Interests**" means all of Assignor's right, title, and interest in and to the following rights, interests, and assets:

(i)      The Leases;

(ii)      All rights, obligations and interests in any unit or pooled area in which the Leases or lands are included, including all rights and obligations derived from any unitization, pooling, operating, communitization or other Assumed Contract or from any Order (the "**Units**")

(iii)      All oil, gas and condensate wells (whether producing, not producing or abandoned), water source, water injection and other injection or disposal wells and systems described on <u>Exhibit A-2</u> (the "**Wells**") or located on the Leases or on the lands covered by the Leases or pooled, communitized or unitized therewith, other than leased equipment located on the Leases;

(iv)      (A) All flow lines, oil, gas, water and other pipelines, gathering systems and related equipment located on the Leases, the Units, or the Permits, Easements and Surface Rights or otherwise associated with the production, gathering, processing or transportation of Hydrocarbons from the Leases, the Wells or the Units, or the gathering, delivery, injection or disposal of water to or from the Leases, the Wells and the Units and (B) all facilities, equipment, compressors, booster stations, field offices, plants, meters, well pads, tank batteries, radio towers, remote terminal units, supervisory control and data acquisition (SCADA) equipment and other similar equipment, personal computer equipment, vehicles, communication equipment, improvements, fixtures, inventory, spare parts, tools, abandoned property and junk and other personal property located on the Leases, the Units, or the Permits, Easements and Surface Rights or otherwise associated with (Y) operations on the Leases, the Units or the Permits, Easements and Surface Rights or (Z) the sale, gathering, compression, processing, transportation of Hydrocarbons from Leases, the Wells and the Units, or the gathering, delivery, injection or disposal of water to or from the Leases, the Wells and the Units, including all off-Lease facilities and other personal property (collectively referred to as the "**Equipment**");

(v)     All easements, rights-of-way, licenses, permits, servitudes, surface leases, surface use agreements, surface fee tracts, and similar rights, obligations and interests, whether located on the Leases or on other property, applicable to or used in operating the Leases, Units, Wells, or Equipment (the "**Easements and Surface Rights**"), including those described on <u>Exhibit B</u>;

(vi)     To the extent transferable, all Permits pertaining to the ownership or operation of the Leases, Units, Wells, Equipment, Easements and Surface Rights;

(vii)     All lease files, right-of-way files, well files (including well logs), production records, division order files, abstracts, title opinions, and Contract files and reservoir and field studies related to any or all of the Leases, Units, Wells, Equipment, Permits, Easements and Surface Rights, and Assumed Contracts, and all other tangibles, movables, immovables, miscellaneous interests or other assets on the Leases or Units; and

(viii)     To the extent transferable without payment (unless Assignee makes such payment), all (i) seismic, geological, geochemical, or geophysical data (including cores and other physical samples or materials from wells or tests) belonging to Assignor or licensed from third parties, and (ii) interpretations of seismic, geological, geochemical or geophysical data belonging to Assignor or licensed from third parties, in each case to the extent pertaining to the Leases, Units or Wells.

(b)     "**Leases**" means the (i) oil, gas and mineral leases, together with all amendments, extensions, renewals and top leases thereof, (ii) leasehold, working, carried, force-pooled, non-consent and reversionary interests, operating rights and any interests arising by operation of law, (iii) fee mineral interests, fee royalty or non-participating royalty interests, overriding royalty interests, net profits interests, production payments and other rights of a similar nature, in each case, described in <u>Exhibit A-1</u>, and together with the lands covered thereby or pooled, communitized or unitized therewith.

2.    <u>Purchase and Sale Agreement</u>. This Assignment is subject to the Purchase and Sale Agreement dated November __, 2016, between the Parties ("**Purchase Agreement**"). This Assignment is intended to evidence the consummation of the sale by Assignor and the purchase by Assignee of the Property, and the assignment by Assignor and the assumption by the Assignee of the Assumed Contracts contemplated by the Purchase Agreement. Assignor and Assignee, by their execution of this Assignment, each hereby acknowledge and agree that neither the representations and warranties nor the rights and remedies of any Party under the Purchase Agreement shall be deemed to be enlarged, modified or altered in any way by this Assignment.

Any inconsistencies or ambiguities between this Assignment and the Purchase Agreement shall be resolved in favor of the Purchase Agreement.

3. <u>Assumed Obligations</u>. Except to the extent discharged by the Sale Order and the conveyance of Assignor's assets to Assignee thereunder Free and Clear (except for Permitted Encumbrances and Assignee's Assumed Obligations), upon and after Closing, Assignee will assume, pay, and perform only the following Liabilities and none others (collectively, the "<u>Assignee's Assumed Obligations</u>") (i) all Liabilities with respect to ownership and (if applicable) operation of the Property arising on or after the Effective Date, (ii) all Liabilities arising under the Assumed Contracts, (iii) all Liabilities to pay and deliver royalties, overriding royalties, non-participating royalties, and other burdens on Hydrocarbon production produced and marketed before or after the Effective Date, (iv) all Liabilities necessary to comply with all Laws with respect to the Property that arise after the Effective Date, including the lawful plugging and abandonment of oil and gas wells and the restoration of the surface of the land, or any governmental request or other requirement to abandon any pipeline or facility or take any clean-up, remedial, or other action with respect to the Property, but in each case, only to the extent such Liabilities arise after the Effective Date, (v) all Liabilities relating to Taxes attributable to the Property, other than Transfer Taxes, for the portion of the Current Tax Period after the Effective Date as well as any and all tax periods beginning on or after the Effective Date, and (vi) all Liabilities related to administration and payment of the Suspended Funds.

4. <u>Title Waiver</u>. THE PROPERTY IS CONVEYED AND TRANSFERRED WITHOUT ANY REPRESENTATION, WARRANTY, OR COVENANT OF TITLE OF ANY KIND OR NATURE, EITHER EXPRESS, IMPLIED, OR STATUTORY.

5. <u>Defects</u>. THE PROPERTY IS CONVEYED AND ASSIGNED TO AND ACCEPTED BY ASSIGNEE IN ITS "AS IS, WHERE IS" CONDITION AND STATE OF REPAIR, AND WITH ALL FAULTS AND DEFECTS, WITHOUT ANY REPRESENTATION, WARRANTY, OR COVENANT OF ANY KIND OR NATURE, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MARKETABILITY, QUALITY, CONDITION, CONFORMITY TO SAMPLES, MERCHANTABILITY, AND/OR FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE EXPRESSLY DISCLAIMED BY ASSIGNOR AND WAIVED BY ASSIGNEE. ASSIGNEE RECOGNIZES THAT THE PROPERTY HAS BEEN USED FOR OIL AND GAS DRILLING, PRODUCTION, GATHERING, PIPELINE, TRANSPORTATION, STORAGE, AND RELATED OPERATIONS. PHYSICAL CHANGES IN THE PROPERTY AND IN THE LANDS BURDENED THEREBY MAY HAVE OCCURRED AS A RESULT OF SUCH USES. THE PROPERTY ALSO MAY INCLUDE BURIED PIPELINES AND OTHER EQUIPMENT, THE LOCATIONS OF WHICH MAY NOT BE KNOWN BY ASSIGNOR OR READILY APPARENT BY A PHYSICAL INSPECTION OF THE PROPERTY. IT IS UNDERSTOOD AND AGREED THAT ASSIGNEE HAS INSPECTED PRIOR TO CLOSING (OR SHALL BE DEEMED TO HAVE WAIVED ITS RIGHT TO INSPECT) THE LEASES, EQUIPMENT, PIPELINES, AND THE ASSOCIATED PREMISES AND SATISFIED ITSELF AS TO THEIR PHYSICAL AND ENVIRONMENTAL CONDITION, BOTH SURFACE AND SUBSURFACE, AND THAT ASSIGNEE ACCEPTS ALL OF THE SAME IN THEIR "AS IS, WHERE IS" CONDITION AND STATE OF REPAIR, AND WITH ALL FAULTS AND DEFECTS, INCLUDING, BUT

NOT LIMITED TO, THE PRESENCE OF NATURALLY OCCURRING RADIOACTIVE MATERIAL AND MAN-MADE MATERIAL FIBERS.

6.     Subrogation.  To the extent permitted by law, Assignee shall be subrogated to Assignor's rights in and to representations, warranties and covenants given with respect to the Property.  Assignor hereby grants and transfers to Assignee, its successors and assigns, to the extent so transferable, the benefit of and the right to enforce the covenants, representations and warranties, if any, which Assignor is entitled to enforce with respect to the Property, but only to the extent not enforced by Assignor.

7.     Further Assurances.  Assignor and Assignee agree to execute and deliver all such other and additional instruments, and other documents and to do all such other and further acts and things as may be necessary to more fully and effectively grant, convey and assign to Assignee the Property conveyed hereby or intended to be conveyed hereby.

8.     No Third-Party Beneficiaries.  This Assignment is intended only to benefit the Assignor and Assignee and their respective successors and assigns.

9.     Binding Effect.  This Assignment and the provisions contained herein shall be covenants running with the land and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

10.     Governing Law.  This Assignment shall be governed by and construed according to the laws of the state of Utah, excluding any conflict-of-law rule or principle that might apply the law of another jurisdiction.

11.     Defined Terms.  All capitalized terms not defined herein shall have the meaning provided in the Purchase Agreement.

12.     Exhibits.  All exhibits attached hereto are made a part hereof and incorporated herein by this reference.  References in such exhibits to instruments on file in the public records are made for all purposes.  Unless provided otherwise, all recording references in such exhibits are to the appropriate records of the county in which the Property is located.

13.     Counterparts.  This Assignment may be executed by Assignor and Assignee in counterparts, each of which shall be deemed an original instrument, but both of which together shall constitute but one and the same instrument.

*Signature Page Follows.*

EXECUTED on the date set forth in the acknowledgments below to be effective for all purposes as of the Effective Date.

**ASSIGNOR:**

III EXPLORATION II, LP
By: Petroglyph Energy, Inc., its general partner


By: _____
   Paul R. Powell, President




**ASSIGNEE:**

CRESCENT POINT ENERGY U.S. CORP.


By: _____
Name: _____
Title: _____

**Acknowledgement of III Exploration II, LP**

STATE OF _____ )

                               ) ss.

COUNTY OF _____       )

The foregoing instrument was acknowledged before me this _____ day of _____, 2016 by Paul R. Powell, as President of Petroglyph Energy, Inc., in its capacity as general partner of III Exploration II, LP, an Idaho limited partnership.

Witness my hand and official seal.

_____

Notary Public

      My commission expires: _____

**Acknowledgement of Crescent Point Energy U.S. Corp.**

STATE OF _____ )

                               ) ss.

COUNTY OF _____       )

      The foregoing instrument was acknowledged before me this _____ day of _____, 2016 by _____, as _____ of Crescent Point Energy U.S. Corp., a corporation, on behalf of said corporation.

      Witness my hand and official seal.

                              _____

                              Notary Public

      My commission expires: _____

9337317_1

# EXHIBIT A-1

<u>Leases</u>

**EXHIBIT A-2**

<u>Wells</u>

## EXHIBIT B

Permits, Easements, and Surface Rights

**EXHIBIT C**

<u>Excluded Assets</u>

**Exhibit G**
**Closing Statement**

Sale of Properties from III Exploration II LP ("Seller") to Crescent Point Energy U.S. Corp. ("Buyer)
Pursuant to the Purchase and Sale Agreement ("PSA") dated November ___, 2016
Preliminary Settlement Statement
Effective Date:  December 1, 2016
Closing Date:  _____ , 2016

**Purchase Price:**

| | | |
|---|---|---|
| Base Purchase Price | $ | 3,500,000.00 |

**Upward Adjustments:**

| | |
|---|---|
| Value of liquid Hydrocarbons in storage on the Effective Date | $ |
| Property Costs which are paid by or on behalf of Seller | $ |

**Downward Adjustments:**

| | |
|---|---|
| Amount received by Seller for production from and after Effective Date | $ |
| Amount of Suspended Funds | $ |
| Amount of all Property Costs which are paid by or on behalf of Buyer | $ |
| Casualty loss or Government Taking amount | $ |
| Amount allocated for exercised Preferential Rights | $ |
| Allocated amount for Hard Consents not obtained or waived prior to Closing | $ |
| Amount of Cure Costs to be paid by Buyer for Assumed Contracts | $ |
| Amount allocated to Title Defects | $ |
| Amount agreed upon in writing by the Parties | $ |

| | | |
|---|---|---|
| | $ | |
| **Purchase Price due to Seller** | **$** | |
| | | 4,500,000.00 |
| Escrow Funds Less Purchase Price | $ | |
| **Purchase Price due to Seller** | **$** | |

"Seller"                                                   "Buyer"
III Exploration II LP                          Crescent Point Energy U.S. Corp.
By: Petroglyph Energy, Inc., its general partner

By:_____        By:_____
Name: Paul R. Powell                               Name:_____
Title: President                                      Title:_____

520934 000003 18806864.1

### Exhibit H

**AFFIDAVIT OF NON-FOREIGN STATUS**

Section 1445 of the Internal Revenue Code of 1986, as amended, provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform Crescent Point Energy U.S. Corp. ("**Transferee**") that withholding of tax is not required upon the disposition of a U.S. real property interest by III Exploration II, LP (hereinafter "**III Exploration**"), the undersigned hereby certifies the following on behalf of **III Exploration**:

1.  III Exploration is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.  III Exploration's U.S. employer identification number is _____; and

3.  III Exploration's office address is 960 Broadway Ave., Suite 500, Boise, Idaho 83706.

III Exploration understands that this certification may be disclosed to the Internal Revenue Service by Transferee and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury, I declare that I have examined this certification and to the best of my knowledge and belief, it is true, correct and completed, and I further declare that I have authority to sign this document on behalf of III Exploration.

III Exploration II, LP

By: Petroglyph Energy, Inc.,
     its general partner

By: _____
Name: Paul R. Powell
Title:  President

**Exhibit 1 Assumed Contracts**
**Eastern Uintah Basin Bid Package**

| Contract | Counter Party | Date | Description | Cure Amounts |
|---|---|---|---|---|
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 4/2/1953 | Brennan Bottom Unit (UTU-063017X) | $    - |
| Unit Operating Agreement | QEP Energy Company | 2/26/1957 | White River Unit (UTU-063021X) | $    - |
| Communitization Agreement, as amended | Kerr-McGee Oil & Gas Onshore LP | 5/1/1978 | T8S-R21E: Section 36 S/2 (CA 9C-205) | $    - |
| Joint Operating Agreement | EOG Resources, Inc. | 5/16/1979 | T8S-R21E and 22E, SLM; as further defined | $    - |
| Joint Operating Agreement | Kerr-McGee Oil & Gas Onshore LP/Anadarko | 3/12/1980 | T8S-R21E: Section 36 S/2 | $    - |
| Joint Operating Agreement | EOG Resources, Inc. | 11/19/1983 | T8S-R22E: Section 16: N/2 | $    - |
| Joint Operating Agreement | EOG Resources, Inc. | 10/10/1984 | T8S-R22E: Section 10: S/2SW, Section 15: NW/4 | $    - |
| Joint Operating Agreement | QEP Energy Company | 4/1/1997 | T8S-R22E SLC | $    - |
| Unit Operating Agreement (Ratification and Joinder) | Gasco Energy, Inc. | 2/6/2004 | Wilkin Ridge (Deep) Unit Area (UTU-81153) | $    - |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 5/1/2004 | Big Valley Unit (UTU-81308X) | $    - |
| Unit Operating Agreement | QEP Energy Company | 8/31/2004 | Uteland Butte (UTU-081306X) | $    - |
| Unit Agreement and Plan of Unitization | Mar/Reg Oil Company | 10/20/2004 | East Brennan Bottom Unit | $    - |
| Joint Operating Agreement | XTO Energy | 8/24/2005 | T10S-R18E, SLM; as further defined | $    - |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 4/27/2010 | Nautilus (Green River) Unit (UTU-87716X) | $    - |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 8/5/2010 | Nemo (Green River) Unit (UTU-87719X) | $    - |
| Unit Operating Agreement | QEP Energy Company | 11/22/2010 | Kilimanjaro (Deep) Unit (UTU-88205X) | $    - |
| Unit Operating Agreement | Wapiti Operating, LLC | 2/26/2014 | Deseret Unit (UTU-89823X) | $    - |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 01/01/2009, 9/1/2008 | Johnson Bottom (UTU-86617X) | $    - |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 11/01/2011, 2/14/2012 | Scylla (Green River) Unit (UTU-88573X) | $    - |

**Exhibit 1 - List of Contracts**
**Eastern Uintah Basin Bid Package**

| Contract | Counter Party | Date | Description |
|---|---|---|---|
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 4/2/1953 | Brennan Bottom Unit (UTU-063017X) |
| Unit Operating Agreement | QEP Energy Company | 2/26/1957 | White River Unit (UTU-063021X) |
| Communitization Agreement, as amended | Kerr-McGee Oil & Gas Onshore LP | 5/1/1978 | T8S-R21E: Section 36 S/2 (CA 9C-205) |
| Joint Operating Agreement | EOG Resources, Inc. | 5/16/1979 | T8S-R21E and 22E, SLM; as further defined |
| Joint Operating Agreement | Kerr-McGee Oil & Gas Onshore LP/Anadarko | 3/12/1980 | T8S-R21E: Section 36 S/2 |
| Joint Operating Agreement | EOG Resources, Inc. | 11/19/1983 | T8S-R22E: Section 16: N/2 |
| Joint Operating Agreement | EOG Resources, Inc. | 10/10/1984 | T8S-R22E: Section 10: S/2SW, Section 15: NW/4 |
| Joint Operating Agreement | QEP Energy Company | 10/16/1992 | Those lands associated with the October 16, 1992, Joint Venture Agreement, as amended, between Chandler & Associates, Inc., and III Exploration Company |
| Joint Operating Agreement | QEP Energy Company | 4/1/1997 | T8S-R22E SLC |
| Unit Operating Agreement (Ratification and Joinder) | Gasco Energy, Inc. | 2/6/2004 | Wilkin Ridge (Deep) Unit Area (UTU-81153) |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 5/1/2004 | Big Valley Unit (UTU-81308X) |
| Unit Operating Agreement | QEP Energy Company | 8/31/2004 | Uteland Butte (UTU-081306X) |
| Unit Agreement and Plan of Unitization | Mar/Reg Oil Company | 10/20/2004 | East Brennan Bottom Unit |
| Joint Operating Agreement | XTO Energy | 8/24/2005 | T10S-R18E, SLM; as further defined |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 4/27/2010 | Nautilus (Green River) Unit (UTU-87716X) |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 8/5/2010 | Nemo (Green River) Unit (UTU-87719X) |
| Unit Operating Agreement | QEP Energy Company | 11/22/2010 | Kilimanjaro (Deep) Unit (UTU-88205X) |
| Unit Operating Agreement | Wapiti Operating, LLC | 2/26/2014 | Deseret Unit (UTU-89823X) |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 01/01/2009, 9/1/2008 | Johnson Bottom (UTU-86617X) |
| Unit Agreement and Unit Operating Agreement | QEP Energy Company | 11/01/2011, 2/14/2012 | Scylla (Green River) Unit (UTU-88573X) |
| | | | |

**QEP Energy Company**
Contracts with QEP Energy Company may be subject to Claims as described on Schedule 6(i).

**Schedule 6(d)**
**Scheduled Consents**


**Eastern Uinta Basin Bid Package:**

1. None.  Court approved rejection of contract with QEP Energy Company that previously contained a preferential right regarding some leases in this package.
2. Out of an abundance of caution the Debtor will send written notice to QEP Energy that the period to exercise its preferential right as they relate to the properties (if any) has commenced.

**Schedule 6(h)**
**Tax Partnerships**

- There are no tax partnerships

**Schedule 6(i)**
**Actions**

- On 10/24/2016 QEP filed liens totaling $2,062,485.61.  The Debtor disputes the amount claimed in the filed lien and QEP Energy's right to assert its lien in this bankruptcy case. The Seller and Buyer intend to ask the Court to approve the sale of assets free and clear of QEP Energy's lien.

**Schedule 6(j)**
**Production Matters**
**Oil & Gas Interest Encumbrances**

- None

**Schedule 6(I)**
**Seller's Knowledgeable Personnel**

| Name | Title |
|------|-------|
| Paul Powell | President |
| Michael Rich | Executive Vice President & CFO |
| Marshall Murrin | Vice President & Treasurer |
| Kevin Dickey | Vice President, Operations |
| Nicole Colby | Land Consultant |

**Schedule 6(o)**
**Plug and Abandon Notice**

- None

**Schedule 6(p)**
**Imbalances**

-    There are no gas imbalances

**Schedule 6(q)**
**AFE's in Excess of $50,000**

- PLG-00242 – P&A of SU BW 15W-18-7-22 – Net remaining and unbilled of $27,392 as of September 30, 2016.

- PLG-00243 – P&A of RWS 3ML-9-9-24 – Net remaining and unbilled of $41,084 as of September 30, 2016.

**Schedule 6(s)**
**Preferential Purchase Rights**

**Eastern Uinta Basin Bid Package:**

1. Court approved rejection of the 1992 contract with QEP Energy Company that previously contained a preferential right regarding some leases in this package.

   a. Out of an abundance of caution the Debtor will send written notice to QEP Energy that the period to exercise its preferential right as they relate to the properties covered under the 1992 QEP JV agreement (if any) has commenced.

2. White River Unit (UTU-063021X) – Unit Operating Agreement.

3. Brennan Bottom Unit (UTU-063017X) – Unit Agreement and Unit Operating Agreement.

**Schedule 6(t)**
**Non-Consent Operations**


**Eastern Uinta Basin Bid Package**
- XTO operated wells
  - Lease: ML-47058; Township 10 South, Range 18 East, SLM, Section 36: All
  - Related Wells: Recompletion of KC 11-36DX and KC 5-36D in Green River Formation

**Payment of Expense / Pay Status**
**SCHEDULE 6(u)**

| CONTRACT | COUNTERPARTY | TYPE OF ACTION | DESCRIPTION OF CLAIM |
|---|---|---|---|
| **Eastern Uinta Basin Bid Package** | | | |
| Joint Operating Agreement | QEP Resources, Inc. | Suspended JIB payments | The Debtor started to withhold payment of JIB's billed by QEP Resources immediately after QEP Resources stopped payment of monthly revenues to the Debtor.  Detail of suspended funds is below. |

|  | Amount | Description of JIB |
|---|---|---|
| $ | 70,515.00 | JIB for July 2016 expenses, customarily paid in September, total JIB was $364,328 however Debtor deemed only $70,515 was for post petition costs. |
|  | 416,714.00 | JIB for August 2016 expenses, customarily paid in October. |
|  | 507,378.00 | JIB for September 2016 expenses, customarily paid in November. |
| $ | 994,607.00 | Total Suspended Funds (1) |

(1) - In addition to the Debtor's unpaid expenses above of $994,607, QEP Resources has suspended revenue owed to seller since June, totaling approximately $1,408,264 through September 30, 2016.  Sellers position is the unpaid JIB amounts are not cure costs that must be paid in connection with assumption and assignment of the contracts.

**Schedule 6(v)**
**Suspended Funds**

**Eastern Uinta Basin Bid Package**
- N/A.  Seller is not operator of assets being sold and therefore has no suspended funds.

**Schedule 7(m)**
**Buyer's Knowledgeable Personnel**
Reserved

**Schedule 9**
**Pre-Closing Operations**

- None

**Schedule 39**
**Bonds**

- There are no bonds held by working interest partner.